# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE BOSTON CONSULTING GROUP, INC.,
a Massachusetts corporation,

        Plaintiff,

      v.

GAMESTOP CORPORATION, a Delaware
corporation,

        Defendant.

C.A. No. 1:22-00363-CJB

## DEFENDANT GAMESTOP CORP.'S OPENING
## BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Trey Cox
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Tel: (214) 698-3256
tcox@gibsondunn.com

Dated:  June 10, 2022

ABRAMS & BAYLISS LLP
John M. Seaman (#3868)
E. Wade Houston (#6289)
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
Tel: (302) 778-1000
seaman@abramsbayliss.com
houston@abramsbayliss.com

*Attorneys for Defendant GameStop Corp.*

## TABLE OF CONTENTS

**PAGE**

I.     NATURE AND STAGE OF PROCEEDINGS .................................................. 1

II.    SUMMARY OF ARGUMENT ....................................................................... 2

III.   STATEMENT OF FACTS ............................................................................. 3

    A.    BCG and GameStop execute a Statement of Work ............................... 3

    B.    The SOW leaves open to future agreements determinations of how much
        GameStop's profits would improve as a result of BCG's work .......................... 4

    C.    BCG demands variable fees even though the parties never agreed on
        corresponding profit improvements ..................................................................... 4

IV.    ARGUMENT ................................................................................................ 5

    A.    BCG fails to sufficiently plead a claim for breach of contract ............................. 5

        1.    BCG fails to allege facts showing breach of the SOW ............................. 5

            a.    BCG seeks fees that depend on "agreed-upon projected profits,"
                yet BCG never alleges the parties agreed on any projected profits. 5

            b.    Insofar as BCG claims the SOW required GameStop to agree on
                projected profits, BCG relies on an unenforceable obligation ........ 7

            c.    BCG fails to identify any contractual obligation GameStop
                breached by allegedly demanding lower fees ................................ 8

        2.    BCG fails to allege facts showing that cancelled meetings caused its
            purported damages ..................................................................................... 9

        3.    BCG fails to allege that purported late payments caused any damages. . 10

    B.    BCG fails to sufficiently plead a claim for breach of the implied covenant of good
        faith and fair dealing .............................................................................................. 11

        1.    BCG's implied-covenant claim fails because the SOW governs
            GameStop's alleged conduct ..................................................................... 11

        2.    BCG fails to identify any implied obligation that the law recognizes ..... 13

        3.    BCG fails to allege facts showing breach of any implied obligations ..... 14

V.    CONCLUSION ................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**Cases**

*Anderson v. Wachovia Mortg. Corp.*,
    497 F. Supp. 2d 572 (D. Del. 2007)..................................................................8, 9

*Arunachalam v. Pazuniak*,
    2016 WL 748005 (D. Del. Feb. 24, 2016)................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................ *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................5, 14

*Blaustein v. Lord Baltimore Cap. Corp.*,
    2012 WL 2126111 (Del. Ch. May 31, 2012).............................................................13

*Buck v. Viking Holding Mgmt. Co. LLC*,
    2021 WL 673459 (Del. Super. Feb. 22, 2021)...........................................................12

*Cartel Media Grp. LLC v. Barone*,
    2021 WL 3673215 (Del. Super. Aug. 16, 2021).........................................................14

*Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*,
    170 F. App'x 805 (3d Cir. 2006) ........................................................................6

*Conley v. Gibson*,
    355 U.S. 41 (1957).....................................................................................16

*Cornell Univ. v. Illumina, Inc.*,
    2012 WL 1885129 (D. Del. May 23, 2012)..............................................................10

*Doe v. Univ. of Delaware*,
    2020 WL 6060476 (D. Del. Oct. 14, 2020) .............................................................13

*FinancialApps, LLC v. Envestnet, Inc.*,
    2020 WL 4569466 (D. Del. July 30, 2020) ...........................................................8, 9

*Hydrogen Master Rts., Ltd. v. Weston*,
    228 F. Supp. 3d 320 (D. Del. 2017)...................................................................5, 10

*Kuroda v. SPJS Holdings, L.L.C.*,
    971 A.2d 872 (Del. Ch. 2009).........................................................................14

*Midwest Railcar Corp. v. Everest Railcar Servs., Inc.*,
  2017 WL 1383765 (S.D.N.Y. Apr. 13, 2017)................................................14, 15

*Miller v. Pa.*,
  588 F. App'x 96 (3d Cir. 2014) .....................................................................15

*Modular Steel Sys. Inc. v. Westfield Ins.*,
  2022 WL 832048 (3d Cir. Mar. 21, 2022)......................................................7

*Omega Cap. Mgmt. P'rs, LLC v. Schrage*,
  2021 WL 2036672 (D. Del. May 21, 2021)..........................................7, 8, 15

*Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*,
  202 A.3d 482 (Del. 2019) .............................................................................11

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993)..........................................................................4

*S. Track & Pump, Inc. v. Terex Corp.*,
  623 F. Supp. 2d 558 (D. Del. 2009)..............................................11, 12, 13, 14

*Sharma v. Trizetto Corp.*,
  2016 WL 4764821 (D. Del. Sept. 12, 2016)...............................................14, 15

*Starling v. JPMorgan Chase Bank, N.A.*,
  2013 WL 4494525 (N.D. Tex. Aug. 22, 2013)..................................................4

*Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*,
  738 F. Supp. 2d 505 (D. Del. 2010)...............................................................10

*Talley v. Christiana Care Health Sys.*,
  2018 WL 4938566 (D. Del. Oct. 11, 2018) ......................................................6

*Truinject Corp. v. Nestle Skin Health, S.A.*,
  2020 WL 70981 (D. Del. Jan. 7, 2020)...........................................11, 12, 13, 14

*United Med., LLC v. Aetna Life Ins. Co.*,
  2021 WL 2915050 (D. Del. July 12, 2021) .......................................................7

*vMedex, Inc. v. TDS Operating, Inc.*,
  2020 WL 4925512 (D. Del. Aug. 21, 2020) .....................................11, 12, 14

*Winfield v. Eloxx Pharm., Inc.*,
  2020 WL 340567 (D. Del. Jan. 21, 2020)....................................................12, 13

**Other Authorities**

Charles A. Wright, Arthur R. Miller et al., FEDERAL PRACTICE AND PROC.
  (3d ed. & Supp. Apr. 2021).............................................................................6

## I.   NATURE AND STAGE OF PROCEEDINGS

Boston Consulting Group, Inc. ("BCG") has sued GameStop Corp. ("GameStop") on mistaken premises and fails to plead any viable claims.  The parties agreed in a statement of work (the "SOW") that GameStop would pay a fixed fee for BCG to perform consulting services.  The SOW also provided for potential "variable," performance-based fees; any calculation or payment of such fees required further agreement between the parties.

The crux of BCG's lawsuit is that GameStop owes millions more in variable fees because BCG determined—by itself—that BCG "overachieved" on developing strategies that would improve profits for GameStop.  Compl. ¶ 11.  BCG admits that the parties never agreed on how much, if anything, GameStop would ultimately pay in performance-based fees.  Instead, its complaint is that the parties were supposed to agree but never did.  On this faulty theory, BCG seeks to extract at least another $30 million from GameStop.  That's nearly twice the $16.5 million actually required under the parties' contract and which GameStop has already paid.[1]

BCG's hodgepodge of other complaints fares no better.  Its allegation that GameStop "improperly" demanded discounts is untethered to any contractual obligation requiring GameStop to accept BCG's fee proposals as *ipse dixit*.  Compl. ¶ 33.  BCG's argument about GameStop cancelling meetings has a similar problem.  The cancellations allegedly prevented the parties from agreeing on fees.  But the contract language BCG quotes doesn't require GameStop to agree on fees at such meetings.  And BCG doesn't allege any other facts showing GameStop would have agreed to the fees that BCG seeks if only those allegedly cancelled meetings had occurred.  That leaves BCG's claim that GameStop made late payments; BCG pleads zero facts about how any late payments caused its claimed damages.

---

[1] GameStop has already paid BCG approximately $22.5 million in fees, including $16.5 million in fixed fees agreed to in the contract plus $6 million in discretionary, performance-based variable fees.

BCG's fallback position is that GameStop breached the implied covenant of good faith and fair dealing, but that too fails because it simply duplicates BCG's breach-of-contract claim. Written contract terms govern each issue BCG complains about. And BCG doesn't identify any gap in the contract necessitating the extraordinary remedy of implying obligations that don't appear anywhere in the contract. These defects are fatal. Moreover, the types of terms BCG might argue are implied—for example, requiring GameStop to accept BCG's unilateral fee proposals or forbidding discount requests—would simply rewrite the contract to impose one-sided terms BCG could have bargained for but didn't. That's not how the implied covenant works. Even if BCG could somehow overcome these defects, its generalized allegations about GameStop being "unreasonable" and cancelling meetings don't raise any inference of bad-faith negotiations.

Thus, BCG doesn't plead plausible claims. There is no plausible breach of contract where the parties never agreed on the amount of fees BCG seeks, GameStop had no obligation to refrain from seeking lower fees, GameStop had no obligation to agree to the fees at any meetings allegedly cancelled, and BCG wasn't damaged by any purported late payments. Nor is there a plausible breach of the implied covenant where the contract's written terms plainly govern these issues, and BCG doesn't even try to allege implicit obligations that *both* parties would have put in the contract if only they had the foresight. For these reasons and as further outlined below, the Complaint should be dismissed in its entirety.

## II.  SUMMARY OF ARGUMENT

1.     BCG complains GameStop owes fees that depend on profit projections the parties were supposed to agree on, but never did. Taking BCG's allegations as true, GameStop didn't breach any obligation to pay such fees. GameStop only owes the fees if both parties agree on corresponding profit projections, and the parties didn't so agree.

2.     Insofar as BCG contends GameStop breached an agreement to agree on the profit projections, it relies on a legally unenforceable obligation.

3.      BCG claims that GameStop breached the parties' contract by asking for lower fees, but BCG fails to identify any contract provision that bars GameStop from doing so.

4.      BCG can't recover based on GameStop's alleged cancellation of meetings because BCG pleads no facts showing that, but for GameStop's purported cancellations, the parties would have agreed on the fees BCG seeks or on the profit projections required to determine those fees.

5.      BCG complains GameStop made late payments, but it doesn't allege any facts showing damages from such late payments.

6.      BCG's claim for breach of the implied covenant of good faith and fair dealing fails because BCG merely recycles its breach-of-contract allegations.  Written contract terms govern each issue BCG complains about, and implied terms can't override express terms.

7.      BCG repeatedly fails to allege any implied obligation that GameStop allegedly breached.  And any implied obligations BCG could theoretically assert would simply rewrite the contract to impose one-sided terms BCG could have bargained for but didn't.

8.      Even if BCG could overcome its failure to properly allege implied obligations, its implied-covenant claim still fails because BCG hasn't adequately alleged any breach.  Its reliance on generalized allegations and vague grievances doesn't suffice.

### III. STATEMENT OF FACTS

**A.      BCG and GameStop execute a Statement of Work.**

In 2019, GameStop began working with BCG to develop ways to improve its business. Compl. ¶ 5.  After working together for several months, the parties memorialized their relationship by executing a Statement of Work (the "SOW") on August 20, 2019.  *Id.* ¶¶ 5, 7, 18. The SOW's express purpose was to "define a *framework* regarding the services to be provided

by BCG to GameStop . . . as well as the fees to be paid by GameStop to BCG for those services." Ex. 1, at 1 (SOW introductory paragraphs) (emphasis added); *see also* Compl. ¶¶ 7–9.[2]

**B.    The SOW leaves open to future agreements determinations of how much GameStop's profits would improve as a result of BCG's work.**

For BCG's services, the SOW provided that BCG would receive a "fixed fee" of $16.5 million, unless it earned more in "variable fee[s] based upon projected profit improvement." Compl. ¶¶ 9, 24; Ex. 1, §§ 2.3, 3.2.  "BCG's variable fee was not predetermined . . ."  Compl. ¶ 9.  Rather, the variable fees—"if any"—that BCG would receive were "tied . . . to the anticipated profit improvements resulting from its work."  *Id.*; Ex. 1, § 3.3; *see also* Compl. ¶ 24; Ex. 1, § 2.3.

Importantly, the anticipated profit improvements resulting from BCG's work were to be "agreed upon" by the parties before BCG could receive any variable fees.  Compl. ¶¶ 21, 23, 25, 29(d), 34; Ex. 1, §§ 2.3, 4.1.  The parties set a framework for estimating profit improvements. Compl. ¶ 25; Ex. 1, §§ 4.2.5–4.2.6.  But they expressly left open to future agreements the actual amounts by which GameStop's profits were expected to improve as a result of BCG's work. Compl. ¶ 25; *see also* Ex. 1, §§ 3.3, 4.2.1–4.2.3, 4.2.7, 4.2.13.  Indeed, the SOW required that any "predictions of the dollar amount of contributions of a proposed initiative or profit improvement lever . . . culminate[] in [a] written agreement."  Ex. 1, § 4.2.13.

**C.    BCG demands variable fees even though the parties never agreed on corresponding profit improvements.**

BCG admits the parties never agreed on relevant "profit improvement estimates and BCG's resulting fees."  Compl. ¶ 13; *see also id.* ¶¶ 29(c)–(d), 34, 37.  Nonetheless, BCG claims entitlement to not only the $16.5 million in fixed fees GameStop has already paid under the

---

[2]  GameStop has attached the SOW to its motion to dismiss given the SOW's centrality to BCG's claims.  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Starling v. JPMorgan Chase Bank, N.A.*, 2013 WL 4494525, at *2 (N.D. Tex. Aug. 22, 2013).

contract.  Compl. ¶ 24; Ex. 1, § 3.2.  BCG also claims it's entitled to millions more in variable fees that were never guaranteed under the SOW and that are based solely on BCG's own unilateral determinations about the value of its work.  Compl. ¶¶ 29(a), 34, 38; Ex. 1, §§ 2.3, 3.2, 3.3.

## IV.  ARGUMENT

When reviewing a motion to dismiss for failure to state a claim, courts accept well-pleaded facts as true, disregard any conclusory assertions, and then determine whether the facts alleged are sufficient to show the plaintiff has a "plausible claim for relief."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  That means a plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  Further, a plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

**A.      BCG fails to sufficiently plead a claim for breach of contract.**

To state a claim for breach of contract under Delaware law, plaintiffs must allege facts plausibly demonstrating: "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff."  *Hydrogen Master Rts., Ltd. v. Weston*, 228 F. Supp. 3d 320, 333 (D. Del. 2017) (internal quotation marks omitted) (applying Delaware law).[3]

**1.      BCG fails to allege facts showing breach of the SOW.**

**a.      *BCG seeks fees that depend on "agreed-upon projected profits," yet BCG never alleges the parties agreed on any projected profits.***

BCG alleges that GameStop breached the SOW by not paying "variable fees." Compl. ¶¶ 29(a), 32–34.  Such fees "were to be assessed based upon *agreed-upon* projected profits that

---

[3]  The SOW contains a provision establishing that it is "governed by and construed in accordance with the laws of the State of Delaware."  *See* Ex. 1 (BCG Standard Terms), § 9.6.

GameStop was anticipated to achieve against agreed-upon baselines." *Id.* ¶ 25 (emphasis added) (emphasis in original omitted).

That means any variable fees BCG is entitled to depend on BCG and GameStop agreeing on how much GameStop's profits would improve because of strategies BCG helped develop. *Id.* ¶¶ 13, 21, 23, 25, 29(d), 34. Yet, as to the variable fees BCG seeks here, BCG fails to allege any facts showing the parties ever agreed on the "projected profits that GameStop was anticipated to achieve." *Id.* ¶ 25. Instead, BCG alleges facts showing just the opposite—that the parties didn't agree. *Id.* ¶¶ 13, 29(c)–(d), 34, 37 (alleging GameStop sought fee reductions and didn't attend meetings needed to determine projected profits and fees).

BCG's vague reference to its "unequivocal satisfaction of the agreed-upon profit improvements" doesn't suffice. *Id.* ¶ 29(c). It's not only a conclusory assertion, but also directly contradicted by BCG's various other allegations that the parties never agreed on projected profits. *See Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 170 F. App'x 805, 807–08 (3d Cir. 2006) (dismissing contract claim where plaintiff failed to allege facts showing existence of agreement, such as "that a document was signed [and] . . . called for certain performance"); *Talley v. Christiana Care Health Sys.*, 2018 WL 4938566, at *5 n.4 (D. Del. Oct. 11, 2018) ("[T]he Court . . . need not accept allegations . . . contradicted by other allegations in the [complaint]."); *see also* 5C Charles A. Wright, Arthur R. Miller et al., FEDERAL PRACTICE AND PROC. § 1363 (3d ed. & Supp. Apr. 2021); *cf.* Ex. 1, § 4.2.13 (recognizing that agreed-upon profit projections must be in writing).

No less conclusory are BCG's allegations that there was "no legitimate dispute over BCG's full performance and the fees coming due," and that GameStop's reasons for not paying variable fees were "spurious and unsupported." Compl. ¶¶ 13, 29(c). Taking BCG's non-conclusory allegations as true, GameStop need only pay variable fees that "were to be assessed based upon *agreed-upon* projected profits that GameStop was anticipated to achieve," and BCG does not allege that there were any "agreed-upon projected profits." *Id.* ¶ 25 (emphasis added) (emphasis in original omitted).

BCG therefore fails to state a claim based on GameStop's alleged failure to pay owed variable fees.  Absent allegations that the parties agreed on how much GameStop's profits would improve because of BCG's work, it's implausible GameStop breached the SOW by not paying variable fees that are "based upon agreed-upon projected profits."  Compl. ¶ 25 (emphasis in original omitted); *see also Modular Steel Sys. Inc. v. Westfield Ins.*, 2022 WL 832048, at *2 (3d Cir. Mar. 21, 2022) (affirming dismissal of contract claim where "complaint d[id] not indicate that [defendant's] obligations were triggered"); Compl. ¶¶ 13, 21, 23, 25, 29(d), 34.

### b.      *Insofar as BCG claims the SOW required GameStop to agree on projected profits, BCG relies on an unenforceable obligation.*

BCG also fails to state a claim insofar as its complaint is that GameStop breached the SOW by not ultimately reaching an agreement with BCG on "projected profits that GameStop was anticipated to achieve."  Compl. ¶ 25 (emphasis in original omitted); *see also* Compl. ¶ 13 (alleging GameStop took "unreasonable positions" and "demand[ed] discounts"); *id.* ¶¶ 29(c), 33.  At best, the Complaint claims breach of an unenforceable agreement to agree.

"[A]greement[s] to agree in the future without any reasonably objective controlling standards [are] unenforceable."  *Omega Cap. Mgmt. P'rs, LLC v. Schrage*, 2021 WL 2036672, at *2–3 (D. Del. May 21, 2021) (applying Delaware law) (quoting *Centreville Veterinary Hosp., Inc. v. Butler-Baird*, 2007 WL 1965538, at *8 (Del. Ch. July 6, 2007) (dismissing contract claim where "plain language of . . . [contract] indicates . . . negotiations have not concluded")); *cf. United Med., LLC v. Aetna Life Ins. Co.*, 2021 WL 2915050, at *1 (D. Del. July 12, 2021) (applying Delaware law and dismissing unjust enrichment claim where the parties "had not completed their negotiations" regarding price for services (internal quotation marks omitted)).

BCG appears to complain that it and GameStop were supposed to reach an agreement on projected profits to determine BCG's variable fees, but that they never did so.  Compl. ¶¶ 21, 23, 25.  Thus, BCG's own allegations show GameStop "had not . . . committed to," any profit projections that could be used to calculate variable fees that BCG seeks.  *Omega*, 2021 WL 2036672, at *3; *see also* Ex. 1, § 4.1 ("Parties will agree . . . on the predicted dollar amount of

contributions of a proposed initiative . . . at the time the Parties agree to execute on such proposed initiative . . .”); Ex. 1, §§ 3.3, 4.3.9, 4.2.13.  Accordingly, BCG fails to state a breach-of-contract claim based on GameStop not ultimately agreeing with BCG on projected profit improvements or the amount of variable fees BCG would receive.  *See Omega*, 2021 WL 2036672, at *3.

### c.    *BCG fails to identify any contractual obligation GameStop breached by allegedly demanding lower fees.*

BCG fares no better with its claim that GameStop breached the SOW by “demand[ing] various unsupported reductions to BCG’s fees.”  Compl. ¶ 29(c); *see also id.* ¶¶ 13, 33.  BCG never alleges the existence of any contract provision prohibiting GameStop from asking BCG to reduce its fees.  That is for good reason—nothing in the SOW purports to forbid GameStop from doing so and, in fact, the opposite is true. Ex. 1, §§ 4.1, 4.2.7, 4.2.13 (contemplating the need for parties to agree on profit projections and baselines); Compl. ¶¶ 25, 29(d) (alleging SOW contemplates parties “engaging in discussions” over variable fees).

BCG’s failure to identify any express contractual obligation for GameStop not to ask for lower fees is fatal.  *See Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007) (“[P]laintiffs ‘[have] not identified any express contract provision that was breached.’ As a result, . . . plaintiffs have failed to satisfy the second prong of the breach of contract analysis. . . .” (quoting *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006))); *FinancialApps, LLC v. Envestnet, Inc.*, 2020 WL 4569466, at *3 (D. Del. July 30, 2020) (“Courts applying Delaware law to breach of contract claims have dismissed claims that fail to identify the express contract provision that was breached, and why such a provision was breached.”).[4]

---

[4] Insofar as BCG relies on an express contract obligation that it contends imposes some general standard of conduct on GameStop concerning fee negotiations, it hasn’t adequately pled it or provided fair notice of its grounds.  *See Iqbal*, 556 U.S. at 698–99.

BCG, therefore, fails to state a breach-of-contract claim based on GameStop allegedly seeking lower fees.  It hasn't pled a relevant contractual obligation, and its vague and conclusory allegations also don't give "fair notice of what the . . . claim is and the grounds upon which it rests."  *Iqbal*, 556 U.S. at 698–99 (quoting *Twombly*, 550 U.S. at 555).

### 2.   BCG fails to allege facts showing that cancelled meetings caused its purported damages.

Nor can BCG recover the variable fees it seeks based on GameStop's alleged cancellation of, or refusal to participate in, meetings with BCG.  Compl. ¶¶ 29(d), 33–34.  That is because BCG fails to allege facts showing plausibly that, but for GameStop's purported cancellations, the parties would have agreed on "the anticipated profit improvement . . . which would determine BCG's [variable] fees."  *Id.* ¶ 25 (emphasis in original omitted).

Although BCG claims the SOW required GameStop to participate in meetings "to confirm profit improvement estimates and BCG's resulting fees," the provision BCG quotes in its Complaint says no such thing.  *Id.* ¶ 13; *see also id.* ¶¶ 25, 29(d), 34.

Rather, BCG relies on a provision providing that the parties would "hold regular sessions: (i) to address validation, approvals, testing and commencement and execution of the various initiatives so that all of the foregoing can be handled in a timely manner and (ii) to address financial target and planning coordination."  *Id.* ¶ 25.  Nothing in that provision's plain text requires GameStop to agree on profit improvement estimates, or corresponding variable fees, during meetings held under that provision.  GameStop therefore could have attended such meetings and still not "confirm[ed] profit improvement estimates and BCG's resulting fees."[5]  *Id.* ¶ 13.

---

[5]  To the extent BCG claims GameStop had such a duty based on some other written contract provision, as with BCG's complaint about GameStop allegedly demanding discounts, BCG hasn't adequately pled such a duty or provided fair notice of its grounds.  *See Iqbal*, 556 U.S. at 698–99; *Anderson*, 497 F. Supp. 2d at 578, 581; *FinancialApps*, 2020 WL 4569466, at *3–4.

9

The pleading thus raises no reasonable inference that, if only GameStop hadn't supposedly cancelled meetings, GameStop would have agreed to pay the variable fees BCG seeks or to the profit projections required to determine those fees.  BCG's complaints about cancelled meetings don't raise a right to relief above the speculative level.  *See Cornell Univ. v. Illumina, Inc.*, 2012 WL 1885129, at *5 n.67 (D. Del. May 23, 2012) ("'[A] court is not to strain to find inferences favorable' to the non-moving party." (quoting *Redden v. Smith & Nephew, Inc. C.A.*, 2010 WL 2944598, at *3 (N.D. Tex. July 26, 2010))); *Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*, 738 F. Supp. 2d 505, 510 (D. Del. 2010) ("[F]acts that are 'merely consistent with' . . . liability, 'stop[] short of . . . plausibility . . .'" (quoting *Twombly*, 550 U.S. at 556–57)).

### 3.  <u>BCG fails to allege that purported late payments caused any damages.</u>

BCG also complains that GameStop breached the SOW by making late payments.  Compl. ¶ 29(b).  "No part of the [C]omplaint, however, alleges any facts plausibly showing damages" to BCG caused by the alleged late payments.  *Hydrogen Master*, 228 F. Supp. 3d at 333.

Instead, BCG alleges in conclusory fashion that, "[a]s a . . . result of GameStop's failure to perform its obligations . . . , BCG has been harmed."  Compl. ¶ 34.  "This is insufficient to state a claim."  *Hydrogen Master*, 228 F. Supp. 3d at 333 (granting motion to dismiss where complaint alleges in conclusory fashion that "[plaintiff] HMR has been damaged").

Nor does the vague contention that GameStop "failed . . .  to pay BCG the full amount owed under the SOW, including variable fees," Compl. ¶ 29(a), give BCG "fair notice of what the . . . claim is and the grounds upon which it rests."  *Iqbal*, 556 U.S. at 698–99 (quoting *Twombly*, 550 U.S. at 555); *see also Arunachalam v. Pazuniak*, 2016 WL 748005, at *7 (D. Del. Feb. 24, 2016) (applying Delaware law and concluding that "[Plaintiff] needs to state specifically the amounts that were due, when they were due [and] why they were due . . . .").

10

### B. BCG fails to sufficiently plead a claim for breach of the implied covenant of good faith and fair dealing.

To plead breach of the implied covenant, a plaintiff must allege (1) "a specific implied contractual obligation," (2) "breach of that obligation by the defendant," and (3) "resulting damage to the plaintiff." *S. Track & Pump, Inc. v. Terex Corp.*, 623 F. Supp. 2d 558, 562 (D. Del. 2009) (internal quotation marks omitted) (applying Delaware law).

"Delaware's implied duty of good faith and fair dealing is not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to a contract. Rather, the covenant is a limited and extraordinary legal remedy." *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019) (internal quotation marks omitted). Application of the implied covenant is thus "rarely invoked successfully," and "only where it is clear that the parties would have agreed to the [implied] obligation had they considered the issue." *Truinject Corp. v. Nestle Skin Health, S.A.*, 2020 WL 70981, at \*13–14 (D. Del. Jan. 7, 2020) (applying Delaware law).

### 1. BCG's implied-covenant claim fails because the SOW governs GameStop's alleged conduct.

BCG's implied-covenant claim fails at the outset because written contract terms govern each issue BCG complains about. *See id.* at \*13 ("The implied covenant cannot be used when the contract already speaks to the obligation at issue."); *vMedex, Inc. v. TDS Operating, Inc.*, 2020 WL 4925512, at \*8 (D. Del. Aug. 21, 2020) ("The implied covenant 'only applies where a contract lacks specific language governing an issue' and where the implied term does not override the express terms of a contract." (quoting *Haney v. Blackhawk Network Holdings, Inc.*, 2016 WL 769595, at \*8 (Del. Ch. Feb. 26, 2016))).

BCG claims that GameStop breached the implied covenant by failing to pay "the full amount owed *under the SOW*, including variable fees." Compl. ¶ 29(a) (emphasis added); *see also id.* ¶¶ 23, 38. Thus, BCG acknowledges that GameStop's obligation to pay the fees BCG seeks is governed by the SOW as written, not by any provision that should be implied "to deal

with unanticipated developments or to fill gaps in [the] contract's provisions." *Truinject*, 2020 WL 70981, at *13 (quotation marks and citation omitted); *see also* Ex. 1, §§ 2.3, 3.2, 3.3 (establishing framework for fees).

BCG's complaint about GameStop's allegedly "unsupported" or "spurious" requests for lower fees has the same problem. Compl. ¶¶ 29(c), 37. The SOW sets out how BCG's variable fees are "calculated" and "assessed." *Id.* ¶¶ 23, 25; Ex. 1, §§ 2.3, 3.2, 3.3; *see also id.* §§ 4.1– 4.3.9 (describing the framework for determining corresponding predicted profit improvements). The SOW, therefore, governs whether GameStop's alleged requests for lower fees were "unsupported."

No less defective are BCG's claims based on alleged late payments and cancelled meetings. Compl. ¶¶ 29(b), 29 (d), 37. Any payments couldn't be "late" unless the parties' contract set deadlines for them, and indeed it does.[6] Compl. ¶¶ 24, 26; Ex. 1, §§ 3.2, 3.5. BCG also candidly relies on a written contract provision in complaining about GameStop allegedly cancelling meetings. Compl. ¶¶ 13, 25, 32; *see also* Ex. 1, § 4.2.9.

Therefore, "[t]he implied covenant cannot be used," as "the contract already speaks to the obligation[s] at issue." *Truinject*, 2020 WL 70981, at *13. BCG's attempt to "merely repackage[] [its] breach of contract claim" into an implied-covenant claim can't survive dismissal. *Buck v. Viking Holding Mgmt. Co. LLC*, 2021 WL 673459, at *5 (Del. Super. Feb. 22, 2021); *see also vMedex*, 2020 WL 4925512, at *8 ("[A] complaint claiming breach of the implied covenant of good faith and fair dealing must allege facts different from those underlying a related breach of contract claim."); *Winfield v. Eloxx Pharm., Inc.*, 2020 WL 340567, at *7 (D. Del. Jan. 21, 2020) (dismissing implied-covenant claim that "mirror[ed]" breach-of-contract

---

[6] BCG also can't recover the variable fees it seeks based on alleged late payments and cancelled meetings because BCG hasn't pled facts showing that GameStop's purported late payments and cancellation of meetings caused such damages. *S. Track & Pump*, 623 F. Supp. 2d at 562; *see supra* at 12–14.

claim); Compl. ¶ 29 ("GameStop, however, has breached *both* the SOW and the implied covenant of good faith and fair dealing in multiple ways . . . ." (emphasis added)).

### 2. BCG fails to identify any implied obligation that the law recognizes.

Since written contract terms govern BCG's complaints, it's unsurprising that BCG fails to allege "a specific *implied* contractual obligation" that GameStop supposedly breached. *S. Track & Pump*, 623 F. Supp. 2d at 562 (emphasis added). For example, BCG doesn't allege any implied obligation to pay a particular amount of variable fees; any implied deadline for payments; any implied standard of conduct for variable fee negotiations, such as an obligation not to ask for lower fees; or any implied obligation to attend meetings or to agree to BCG's fee proposals or profit estimates at those meetings.

This deficiency is fatal. *Truinject*, 2020 WL 70981, at *14–15 (dismissing implied covenant claim where pleading didn't allege implied contract term, as "allegation that Defendants failed to act in good faith . . . is not enough"); *Winfield*, 2020 WL 340567, at *6 ("[T]hat the implied covenant of good faith and fair dealing attaches to every contract . . . does not excuse a plaintiff from identifying 'a specific implied contractual obligation and alleg[ing] how the violation of that obligation denied the plaintiff the fruits of the contract.'" (second alteration in original) (quoting *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009))); *Doe v. Univ. of Delaware*, 2020 WL 6060476, at *7 (D. Del. Oct. 14, 2020) ("The essence of Plaintiff's allegations are [sic] that UD treated him unfairly, but that is insufficient. . . .").

Nor could BCG allege any viable implied obligation. The types of implied obligations BCG might assert—for example, requiring GameStop to accept BCG's unilateral fee proposals, or forbidding discount requests—would simply rewrite the contract to impose one-sided terms BCG could have bargained for but didn't. *See, e.g.*, *Blaustein v. Lord Baltimore Cap. Corp.*, 2012 WL 2126111, at *5 (Del. Ch. May 31, 2012) ("Susan's claimed right to put her shares to Lord Baltimore at a specific price would contradict Section 7(d) . . . . [which] provides that Lord

13

Baltimore and any stockholder seeking a repurchase of her Lord Baltimore shares must agree on the purchase price."). Implied covenants aren't a talisman for imposing "contractual protections that [BCG] failed to secure for [itself] at the bargaining table." *S. Track & Pump*, 623 F. Supp. 2d at 563 (quoting *Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697, 707 (Del. Ch. 2004)); *see also Kuroda*, 71 A.2d at 888 ("The implied covenant cannot be invoked to override the express terms of the contract.").

Because BCG alleges no specific implied obligation that the Court should read into the SOW—let alone any implied obligation governing "unanticipated event[s] that may not have or could not have been considered prior to executing the contract"—BCG fails to allege facts showing this is the "rare[]" case where the parties "clear[ly] . . . would have agreed" to obligations that don't appear in the contract. *See Truinject*, 2020 WL 70981, at *13–14; *Cartel Media Grp. LLC v. Barone*, 2021 WL 3673215, at *5 (Del. Super. Aug. 16, 2021).

### 3. <u>BCG fails to allege facts showing breach of any implied obligations.</u>

Even assuming, arguendo, BCG could somehow overcome its failure to allege obligations that "were so fundamental that the parties would not have needed to negotiate or memorialize [them]," *vMedex*, 2020 WL 4925512 at *8, its implied-covenant claim still fails because it hasn't adequately alleged breach of any implied covenant.

BCG doesn't allege any facts to support its conclusory assertion that GameStop's requests for discounts were "improper," "unreasonabl[e]," or "unsupported." Compl. ¶¶ 13, 29(c), 33, 37. BCG, for example, never alleges GameStop sought discounts after the parties agreed on fee amounts. Nor does BCG offer quantitative benchmarks for gauging any requested discounts. Rather than make "a showing," BCG relies to no avail on "blanket assertion[s] of entitlement to relief." *See Twombly*, 550 U.S. at 555 & n.3; *Sharma v. Trizetto Corp.*, 2016 WL 4764821, at *3 (D. Del. Sept. 12, 2016) (dismissing claim for failure to negotiate in good faith where plaintiff didn't explain why alleged conduct was unreasonable); *Midwest Railcar Corp. v. Everest Railcar Servs., Inc.*, 2017 WL 1383765, at *5 (S.D.N.Y. Apr. 13, 2017) ("[A] plaintiff

14

must allege the specific instances or acts that amounted to the breach; generalized allegations and grievances will not suffice." (internal quotation marks omitted)).

Equally conclusory is BCG's contention that "GameStop's cancellation of . . . meetings prevented the parties from engaging in discussions to confirm fees owed to BCG."  Compl. ¶ 29(d).  For example, BCG doesn't allege any unrequited attempts to reschedule, or that GameStop stymied all other avenues for discussing BCG's estimated profit improvements or variable fees. Its passing assertion that GameStop refused to "furnish the data necessary to determine certain profit improvements," Compl. ¶ 34, is yet another "bald assertion[]"; no allegations reveal what data was purportedly withheld or why it was necessary.  *See Omega*, 2021 WL 2036672, at *2 (internal quotation marks omitted); *Iqbal*, 556 U.S. at 698–99.

Accordingly, BCG fails to sufficiently plead breach of an implied obligation to properly negotiate BCG's variable fees or the profit projections used to calculate them.  *See Sharma*, 2016 WL 4764821, at *3 (recognizing that refusal to disclose requested information didn't show failure to negotiate in good faith where contract didn't require specific disclosures and plaintiff "essentially" alleged defendant "did not, upon first request, turn over all of the information"); *Midwest Railcar*, 2017 WL 1383765, at *4–5 (failure to negotiate for five months didn't raise inference of failure to negotiate in good faith).

## V.   CONCLUSION

For the foregoing reasons, GameStop respectfully requests that the Complaint be dismissed, and that the Court grant such other relief as may be appropriate.  Because permitting amendment of the Complaint would be futile, GameStop respectfully requests that this Court dismiss this case with prejudice.  *See Miller v. Pa.*, 588 F. App'x 96, 97 (3d Cir. 2014).

OF COUNSEL:

Trey Cox
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Tel: (214) 698-3256
tcox@gibsondunn.com

Dated:  June 10, 2022

*/s/  John M. Seaman*
John M. Seaman (#3868)
E. Wade Houston (#6289)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
Tel: (302) 778-1000
seaman@abramsbayliss.com
houston@abramsbayliss.com

*Attorneys for Defendant GameStop Corp.*