## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE BOSTON CONSULTING GROUP, INC., a Massachusetts corporation, | |
| Plaintiff, | |
| v. | C.A. No. 22-00363-CJB |
| GAMESTOP CORP., a Delaware corporation, | |
| Defendant. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER

Plaintiff The Boston Consulting Group, Inc. ("BCG") hereby responds to the Motion to Transfer Venue filed by Defendant GameStop Corp. ("GameStop") (D.I. 18) as follows.

Dated: July 26, 2022

Edward Totino (*pro hac vice*)
Nancy Nguyen Sims (*pro hac vice*)
Michael T. Boardman (*pro hac vice*)
BAKER & MCKENZIE LLP
10250 Constellation Blvd.
Suite 1850
Los Angeles, California 90067
Tel: (310) 201-4728
Fax: (310) 201-4721
edward.totino@bakermckenzie.com
nancy.sims@bakermckenzie.com
michael.boardman@bakermckenzie.com

*/s/ Joseph L. Christensen*
Thomas A. Uebler (#5074)
Joseph L. Christensen (#5146)
MCCOLLOM D'EMILIO SMITH UEBLER LLC
2751 Centerville Road, Suite 401
Wilmington, Delaware 19808
Tel: (302) 468-5960
tuebler@mdsulaw.com
jchristensen@mdsulaw.com
awaskie@mdsulaw.com

*Attorneys for Plaintiff*
*The Boston Consulting Group, Inc.*

1

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 5

SUMMARY OF ARGUMENT ............................................................................... 5

STATEMENT OF FACTS ..................................................................................... 8

    A.  BCG and GameStop Signed a Written Agreement, Governed by Delaware Law ............... 8

    B.  GameStop Breached the Agreement and BCG Commenced This Action ............................ 8

    C.  The Parties Consented to This Court's Jurisdiction ................................................. 9

    D.  GameStop Thereafter Files a Motion to Transfer Venue; the Parties Agree on a Case Management Order and Protective Order in This Court ................................................. 9

ARGUMENT .................................................................................................. 10

    A.  The Private *Jumara* Factors Do Not Favor Transfer .............................................. 10

        1.  BCG's Choice of Forum Is Paramount and Should Not Be Disturbed ........................... 10

        2.  The Parties' Relative Size and Financial Condition Do Not Favor Transfer ................. 13

        3.  Convenience of the Witnesses Does Not Favor Transfer ..................................... 15

        4.  The Location of Books and Records Does Not Favor Transfer ............................... 18

        5.  BCG's Claims Did Not Arise in Texas Such that Litigation Would Be More Appropriate There ........................................................................... 18

    B.  The Public Interest Factors Either Do Not Favor Transfer or Are Neutral and Should Be Disregarded .................................................................................. 20

        1.  This Court Can Enter an Enforceable Judgment .......................................... 20

        2.  The Northern District of Texas Is Not Better Equipped to Apply Delaware Law .......... 20

        3.  Litigating in Texas Would Not Make Trial Easy, Expeditious, or Inexpensive. ............ 20

        4.  Judicial Economy Does not Support Transfer ............................................. 20

        5.  There Is No Local Interest in Deciding This Action in Texas ............................... 21

        6.  There Are No Public Policies Favoring Resolution in Texas ................................ 21

CONCLUSION ................................................................................................ 21

MDSU W0310814.v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affymetrix, Inc. v. Synteni, Inc.*,
   28 F. Supp. 2d 192 (D. Del. Nov. 18, 1998) ........................................................................16

*Cellectis S.A. v. Precision Biosciences, Inc.*,
   858 F. Supp. 2d 376 (D. Del. May 3, 2012) .........................................................................13

*Cypress Semiconductor Corp. v. Integrated Circuit Sys.*,
   2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186 (D. Del. Nov. 28, 2001) ...................11, 15

*David & Lily Penn, Inc. v. TruckPro, LLC*,
   2019 U.S. Dist. LEXIS 163785 (D. Del. Sept. 25, 2019) ......................................................19

*Express Mobile, Inc. v. Web.com Group, Inc.*,
   2020 WL 3971776 (D. Del. Jul. 14, 2020) ............................................................................13

*Fuisz Pharma LLC v. Theranos, Inc.*,
   2012 U.S. Dist. LEXIS 69835 (D. Del. May 18, 2012.) ........................................................17

*Genedics, LLC v. Meta Company*,
   2018 WL 417950 (D. Del. Jan. 12, 2018) ...................................................................... *passim*

*Graphics Props. Holdings v. Asus Computer Int'l, Inc.*,
   964 F. Supp. 2d 320 (D. Del. Jun. 28, 2013) ............................................................14, 15, 18

*Human Genome Scis., Inc. v. Genentech, Inc.*,
   2011 U.S. Dist. LEXIS 77740 (D. Del. Jul. 18, 2011.) .........................................................19

*Human Genome Scis., Inc. v. Genentech, Inc.*,
   C.A. No. 11–082–LPS, 2011 WL 2911797 (D. Del. July 18, 2011) ......................................15

*Ivoclar Vivadent AG v. 3M Co.*,
   2012 U.S. Dist. LEXIS 86934 (D. Del. Jun. 22, 2012.) ...................................................17, 18

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ..................................................................................... *passim*

*Magnacross LLC v. GE MDS LLC*,
   2020 U.S. Dist. LEXIS 210124 (D. Del. Nov. 10, 2020) .................................................13, 16

*Memory Integrity, LLC v. Intel Corp.*,
   2015 WL 632036 (D. Del. Feb. 13, 2015) .............................................................................14

MDSU W0310814.v1

*In re NAHC Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002) ................................................................14

*Realtime Data LLC v. Egnyte, Inc.*,
   2018 U.S. Dist. LEXIS 187073 (D. Del.Nov. 1, 2018) ............................13

*Rosebud LMS, Inc. v. Salesforce.com, Inc.*,
   Civil Action No. 17-1712-CFC, 2018 U.S. Dist. LEXIS 197307
   (D. Del. Nov. 20, 2018) ..........................................................................13

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (3d. Cir. 1970) .........................................................6, 11, 13

**Statutes**

28 U.S.C. § 636(c) ............................................................................................10

28 U.S.C. § 1404(a) .................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. Proc. 26 ..........................................................................................8

Fed. R. Civ. Proc. 73 ........................................................................................10

Fed. R. Civ. Proc. 32 ..................................................................................18, 21

Federal Rule of Evidence 201 ..........................................................................14

MDSU W0310814.v1

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff The Boston Consulting Group, Inc. ("BCG") commenced this action to recover amounts that Defendant GameStop Corp. ("GameStop") owes, but has refused to pay, under the parties' written contract. BCG's First Amended Complaint ("FAC"), filed on July 1, 2022, asserts claims for breach of contract and breach of the covenant of good faith and fair dealing. (D.I. 28.) GameStop's response to the FAC is due on August 15, 2022. (D.I. 30.) On June 10, 2022, GameStop filed the present motion to transfer this action to the Northern District of Texas for convenience pursuant to 28 U.S.C. § 1404(a). (D.I. 18-19.) Prior to that time, the parties consented to Magistrate Judge Burke of this Court serving as the judge for all purposes in this case. (D.I. 10 and 11.) The parties also stipulated to a Scheduling Order, which the Court entered on July 15, 2022, including an agreement to conduct discovery electronically pursuant to the Court's ESI Guidelines. (D.I. 32.) Pursuant to that schedule, the parties submitted a proposed protective order, which the Court has entered. (D.I. 36.) The parties will have served initial disclosures and BCG will have served written discovery requests prior to the date this Motion is heard. BCG now submits its answering brief in opposition to GameStop's motion to transfer.

## SUMMARY OF ARGUMENT

The law in this Circuit is well-defined that a plaintiff's choice of forum is of paramount consideration and should not be disturbed lightly. To override BCG's forum choice, GameStop must make a clear showing that "the balance of convenience of the parties is *strongly* in favor of defendant." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d. Cir. 1970) (emphasis in original). GameStop fails to meet that high burden.

In determining whether the movant has met its high burden of proof, courts consider twelve private and public factors, as articulated in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The private factors include:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be

5

unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Public factors, intended to reflect the interests of justice, include:

[7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80.  GameStop has failed to even come close to meeting its high burden to warrant overriding BCG's choice of forum and transfer this contract action to the Northern District of Texas under 28 U.S.C. § 1404(a).  In fact, eleven of the twelve relevant factors either favor retaining jurisdiction in this Court or are neutral and cannot tip the balance toward transfer at all. The one remaining factor, GameStop's forum preference, deserves little or no weight.  Therefore, the Court should deny GameStop's motion.

BCG chose this forum specifically because the contract at issue (the "SOW") is governed by Delaware law and key third-party witnesses who can testify regarding the meaning and intent of the SOW and the parties' course of dealing are located in the Delaware area within the subpoena power of this Court.  Others witnesses are located in Europe and on the East Coast and travel to Delaware would be convenient and substantially easier from Philadelphia, Washington D.C., Boston, and Europe, where key witnesses are located, than travelling to Texas.  To ease any burden on witnesses, the parties have stipulated that written discovery will be conducted electronically and depositions will take place at locations convenient for the witnesses.  To the extent any out-of-state witness is actually unavailable at trial, deposition transcripts or videos could be used consistent with the Rules of Evidence and Civil Procedure.  GameStop cannot claim that proceeding in Delaware is prejudicial as it is a Delaware corporation and therefore is at home in Delaware.  In fact, GameStop's Bylaws provide that Delaware shall be the exclusive jurisdiction for GameStop to litigate corporate disputes.

In short, litigating this dispute is proper and convenient in this District.  Indeed, GameStop has stipulated to litigating this case before this Court, and the case has already moved forward in

6

this venue, with the parties conducting a Rule 26(f) conference, and the Court setting a trial date and entering a Scheduling Order and Protective Order.

Nothing in GameStop's motion supports transferring this case and revisiting GameStop's consent to jurisdiction or the litigation activities that have already taken place in this Court.  Far from making a showing with competent evidence that the balance of private and public factors strongly supports litigating this dispute in Texas, GameStop's Motion offers nothing but speculation that certain former employees—who GameStop claims are located in Texas "on information and belief"—"might" be unavailable at trial.  The law, however, requires that a party seeking to transfer a case on this ground present evidence that these former employees would *actually* be unavailable.  GameStop has failed to do so.

In fact, GameStop fails to present any declarations or other evidence on ***any*** relevant factor, relying entirely on speculation and attorney argument.[1]  For example, the law also requires a party seeking transfer for convenience of its own employee-witnesses to present evidence of actual hardship in light of the parties' "relative physical and financial condition."  GameStop has failed to present any support for such hardship.  Such a failure is not surprising, given that GameStop is an international public company that is incorporated in Delaware and has over a dozen retail locations in this district.  Litigating in Delaware is not unreasonable or unnecessarily inconvenient. In fact, according to its bylaws, GameStop prefers to litigate in Delaware.  GameStop also contends that Texas has a stronger interest in litigating this matter because "[t]he operative facts at issue in this matter arose primarily within the Northern District of Texas," but while some meetings between the parties took place in Texas, this is not a local dispute.  Adjudication of this action requires interpreting a contract that is governed by Delaware law, covers nearly every aspect of GameStop's multi-national business, was to be performed by the parties across the globe including through BCG principals in Paris and London, and required payment of fees to BCG in Boston.

---

[1] GameStop submitted one declaration, attesting only that certain individuals are no longer employees of GameStop.

Considering all of the relevant circumstances, each of the *Jumara* factors other than GameStop's own preference weighs in favor of this action remaining in this Court or is neutral. GameStop has therefore failed to make a strong (or any) showing in favor of transfer. The Court should deny the motion.

## STATEMENT OF FACTS

### A.      BCG and GameStop Signed a Written Agreement, Governed by Delaware Law

In 2018 and going into 2019, GameStop, a public company incorporated in Delaware, was in a downward financial spiral. To reverse its fortunes, GameStop hired BCG to help engineer a dramatic return to profitability. (D.I. 28 at ¶5.) After working together for multiple months, the parties executed a Statement of Work in August 2019 (the "SOW"), which included detailed plans as to specific workstreams and initiatives through which BCG was expected to help GameStop dramatically increase its profitability in 2019 and going forward. (*Id*. at ¶7; D.I. 26.) The SOW is governed by Delaware law and is enforceable in any court of competent jurisdiction. (D.I. 26 at Terms, Section 9.6, 9.3.[2])

Under the SOW, BCG would be paid the greater of a fixed fee or a variable fee, which was calculated as a percentage of expected profit improvement. (D.I. 28 at ¶9; D.I. 26 at Section 2.3.) Initially, GameStop paid BCG the scheduled installments on its fixed fee. GameStop also made payments toward BCG's variable fee, acknowledging that BCG had exceeded the fixed fee threshold under the SOW. (D.I. 19 at n. 1.)

### B.      GameStop Breached the Agreement and BCG Commenced This Action

GameStop eventually began defaulting on its obligations to provide BCG with necessary financial and operational data and refused to attend contractually-required meetings at which the parties were to confirm profit improvement predictions and BCG's resulting fees. (D.I. 28 at ¶13.) GameStop also stopped paying BCG the variable fees owed. To date, GameStop has failed to pay substantial sums owed to BCG under the SOW without any viable excuse. (*Id*. at ¶14.)

---

[2] A redacted version of the SOW is filed as D.I. 29.

BCG initiated this lawsuit in this Court on March 22, 2022.  BCG chose Delaware as the forum to resolve this dispute for multiple reasons, including:  (i) GameStop is incorporated in Delaware, taking advantage of Delaware's laws and protections; (ii) the SOW is governed by Delaware law; (iii) the SOW was primarily negotiated for GameStop by its former General Counsel and Chief Technology Officer, Daniel Kaufman, and Michael Friedman, GameStop's outside counsel at Troutman Pepper Hamilton Sanders LLP, both of whom reside in Philadelphia and are within this Court's subpoena power; (iv) until his departure, Mr. Kaufman also managed the transformation project on behalf of GameStop; (v) Delaware is closer and more convenient to BCG's headquarters in Boston than Texas; (vi) multiple high-level BCG witnesses who negotiated and oversaw the performance of the SOW on BCG's behalf are located not far from Delaware in the Washington D.C. metropolitan area; and (vii) other key high-level BCG Partners are located in Europe, which is closer and more convenient to Delaware. (Harris Decl. ¶¶3-9.)

### C.      The Parties Consented to This Court's Jurisdiction

On May 27, 2022, the parties submitted a Notice of Consent to Proceed in this Court before the Honorable Christopher J. Burke, stating that "[t]he parties have reached an agreement to consent to have [Judge Burke] conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings."  (D.I. 10).  On May 31, 2022, the Court issued an Order approving the parties' stipulation and stating that "[t]his case is referred to United States Magistrate Judge Christopher J. Burke to conduct all proceedings and the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73." (D.I. 11).

### D.      GameStop Thereafter Files a Motion to Transfer Venue; the Parties Agree on a Case Management Order and Protective Order in This Court

Two weeks after stipulating to have Judge Burke of this Court conduct trial, GameStop filed a motion to transfer venue.  (D.I. 18.)[3]  Thereafter, pursuant to the Court's order, the parties submitted a joint scheduling order and this Court has set trial before Judge Burke for April 15,

---

[3] GameStop also filed a motion to dismiss (D.I. 21), which has been mooted by the FAC.

9

2024.  (D.I. 32.)  The parties have also negotiated and submitted a proposed Protective Order, which the Court has entered.  (D.I. 35, 36.)  Litigation is now proceeding in this Court.

## ARGUMENT

GameStop brings its Motion pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The burden of establishing the need for transfer rests with the movant and "unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail."  *Shutte*, 431 F.2d at 25 (emphasis in original).  GameStop has failed to meet its substantial burden to show that the relevant circumstances strongly favor transfer and its motion should be denied.

### A.    The Private *Jumara* Factors Do Not Favor Transfer

#### 1.    BCG's Choice of Forum Is Paramount and Should Not Be Disturbed

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal citations and quotations omitted). A plaintiff's choice of forum will receive deference as long as the plaintiff has "some legitimate reason" for selecting the forum. *Cypress Semiconductor Corp. v. Integrated Circuit Sys.*, 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) (internal citations omitted).

Here, BCG's selection of Delaware as the forum for this litigation is legitimate for several reasons, including:

- GameStop chose to incorporate in Delaware, thus availing itself of the advantage of Delaware's laws and protections for 22 years since its formation in 2000;

- The parties agreed that the SOW is governed by Delaware law (D.I. 26 at Terms, Section 9.6);

10

- The SOW was primarily negotiated over the course of many months for GameStop by its former General Counsel and Chief Transformation Officer, Daniel Kaufman, and GameStop's outside counsel, both of whom reside in Philadelphia and within this Court's subpoena power (D.I. 28 at ¶6; Harris Decl., ¶4);

- After negotiating the SOW, Mr. Kaufman then took over the role of Chief Transformation Officer, serving as the primary operational manager under the SOW for GameStop until his departure from the company (*Id.* at ¶¶6, 12; Harris Decl., ¶5);

- Multiple high-level BCG Partners who negotiated and oversaw the performance of the SOW on BCG's behalf are located in the Washington D.C. metropolitan area (Harris Decl. at ¶3).  These critical BCG witnesses in the Washington D.C. area include Brian Harris and David Welch, both of whom were listed in the signature block of the SOW on behalf of BCG.  (D.I. 26 at 19.)  The SOW also specifically noted that Mr. Harris and Mr. Welsh were key participants in the project, identifying them by name and requiring that each of them "devote at least 50% of his client working time on this engagement [by GameStop]."  (*Id.* at Section 5.3.2).  Raamin Mostaghimi, another BCG Partner who was intimately involved in the performance of the Services under the SOW and supervised much of the work, is also based in BCG's Washington D.C. office.  (Harris Decl. at ¶9);

- One of BCG's key negotiators of the SOW, Frank Petruzielo, is also located in the Philadelphia area (Harris Decl. at ¶3); and

- The project at issue also included work by dozens of other BCG consultants, who are based in multiple offices across the country and in Europe, and did substantial amounts of work from home given travel restrictions due to the COVID-19 pandemic.  (*Id.* at ¶6.)

11

GameStop tries to downplay the "black letter law" of this Circuit by arguing that the plaintiff's choice of venue is "*a* paramount consideration" in the analysis, as if it were one of many such "paramount" factors.  (D.I. 19 at 12.)  GameStop's semantic game-playing does not change the analysis or the law.  There can be only one paramount factor, and this Court has routinely affirmed that it is the plaintiff's choice of forum.  *See, e.g., Express Mobile, Inc. v. Web.com Group, Inc*., 2020 WL 3971776, *2 (D. Del. Jul. 14, 2020) ("By 'paramount,' I understand the Court of Appeals to indicate that the plaintiff's choice is the most important factor. That is the law."); *Rosebud LMS, Inc. v. Salesforce.com, Inc*., Civil Action No. 17-1712-CFC, 2018 U.S. Dist. LEXIS 197307, at *10 (D. Del. Nov. 20, 2018) (following *Shutte* and giving plaintiff's choice "paramount consideration in balancing the *Jumara* factors"); *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. May 3, 2012) ("the court declines to disregard the privilege of choosing a venue that has historically been accorded plaintiffs").

Notwithstanding the Third Circuit's decree that plaintiff's choice of venue is the most important factor, GameStop argues that this factor should actually be treated as only "minimally against transfer" because BCG does not reside in Delaware.  This is contrary to well-established law.  In *Realtime Data LLC v. Egnyte, Inc.*, 2018 U.S. Dist. LEXIS 187073, *5 (D. Del. Nov. 1, 2018), this Court noted the defendant's argument that "certain opinions issued by district court and magistrate judges in the Third Circuit . . . appear to assign less weight to a plaintiff's forum choice when the forum is not the plaintiff's 'home forum,'" but explicitly rejected that argument because the Court was "not . . . persuaded that these opinions are consistent with *Shutte*."  Numerous other cases agree.  *See, e.g., Magnacross LLC v. GE MDS LLC*, 2020 U.S. Dist. LEXIS 210124, *12 (D. Del. Nov. 10, 2020) ("The Court agrees with Plaintiff. Although Plaintiff's choice of forum is not dispositive, the Court will 'not discount Plaintiff[s''] choice of forum based on a lack of physical ties to Delaware.'" (*quoting Abraxis Bioscience, LLC v. HBT Labs, Inc.*, No. 18-2019 (RGA), 2019 U.S. Dist. LEXIS 88752, 2019 WL 2270440, at *2 (D. Del. May 28, 2019)); *Express Mobile, Inc*., 2020 WL 3971776 at *2 ("Thus, [plaintiff's choice of forum] is still the most important factor

12

when a plaintiff has a principal place of business outside Delaware or has no connection to Delaware other than its choice to sue here . . . .").

### 2. The Parties' Relative Size and Financial Condition Do Not Favor Transfer

GameStop seeks transfer because it would be more convenient for it to litigate near its own headquarters. But "[t]his factor requires the Court to consider the convenience to *both* parties," and GameStop entirely ignores the benefits and conveniences to BCG of litigating in its chosen forum. *Graphics Props. Holdings v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 329 (D. Del. Jun. 28, 2013) (emphasis added). As explained above, BCG chose to litigate in Delaware in part because it is more convenient for the relevant witnesses. Indeed, Daniel Kaufman is a key third-party witness with firsthand knowledge of both the SOW and its performance. (Harris Decl. at ¶¶4-5.) He is located in Philadelphia, within the subpoena power of this Court. Frank Petruzielo, a Director at BCG who was involved in negotiating the SOW with Mr. Kaufman, is also based in the Philadelphia area. (*Id*. at ¶3.) Delaware is also a closer and far more efficient place to travel than Texas for all but one of the critical BCG Partners named in the SOW: Brian Harris and David Welch are each in the Washington, D.C. area; Patrick Ducasse is in Paris, France; Andy Veitch is in London, England; and Kristy Ellmer works in Boston. (*Id*. at ¶¶3, 7-8; *see* D.I. 26 at Section 5.3.2.) Raamin Mostaghimi, BCG's other primary partner assigned to the matter, is also located in the Washington D.C. area, near Delaware. (Harris Decl. at ¶9.)

To overcome BCG's choice a party must demonstrate—with supporting evidence—a hardship with litigating in Delaware "in light of its size and financial wherewithal." *Memory Integrity, LLC v. Intel Corp.*, 2015 WL 632036 at *4 (D. Del. Feb. 13, 2015). GameStop does not and cannot do so. GameStop is a multi-national public corporation that is incorporated in Delaware and includes thirteen stores in Delaware. (Boardman Decl., Ex. A at 2.)[4] Argument by GameStop

---

[4] BCG respectfully requests that the Court take judicial notice of Exhibit A and Exhibit B to the Boardman Declaration pursuant to Federal Rule of Evidence 201(b)(2) as they are filings by GameStop with the Securities and Exchange Commission and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See In re NAHC Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (taking judicial notice of SEC filings).

that it would be inconvenient to litigate in Delaware should be given little credence, given that GameStop has chosen Delaware as the *exclusive* forum for GameStop to defend against multiple types of lawsuits.  (*Id*. at Ex. B [Fifth Amended and Restated Bylaws of GameStop Corp.] at Article XII.)

Moreover, the reality of this litigation negates any potential hardship on GameStop or its employees.  The parties have stipulated that depositions will be conducted near where witnesses are located and that document discovery will be done from the parties' respective repositories and produced electronically.  (D.I. 30 at 2; 32 at Section 6(e)(2).)  Such practices will minimize any inconvenience or expense involved in conducting trial in Delaware because discovery will proceed in the same manner regardless of the trial forum. *See, e.g., Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 328–29 (D. Del. 2013) ("[A]s a practical matter, regardless of the trial venue, most of the discovery will take place in California or other locations mutually agreed to by the parties."); *Human Genome Scis., Inc. v. Genentech, Inc.*, C.A. No. 11–082–LPS, 2011 WL 2911797, at *7 (D. Del. July 18, 2011) (noting that the likelihood that few case events would occur in Delaware —particularly few if the case did not go to trial—weighed against transfer, as did technological advances that allow traveling employees to more easily interact with their office while away); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*, 2001 U.S. Dist. LEXIS 20803, at *10 (D. Del. Nov. 28, 2001) ("[C]onvenience based on expense is uncompelling especially when the practical realities are that discovery will likely take place in [another forum] regardless of the trial venue.").

In short, GameStop has no credible claim that it will be inconvenienced or prejudiced by litigating in Delaware, its state of incorporation, and both GameStop and BCG have the resources and ability to litigate in Delaware without undue hardship.  GameStop's argument is only that it would prefer to litigate this particular case in Texas, even though it has publicly declared its desire to litigate other cases in Delaware.  GameStop's preference is not enough to meet its high burden to transfer this action.

14

### 3.    Convenience of the Witnesses Does Not Favor Transfer

The core of GameStop's transfer argument is that Texas would be more convenient for witnesses.  (D.I. 19 at 7 (arguing that "this factor raises the strongest grounds for transfer").)  But this factor, too, does not actually support transfer.  The fact that GameStop hangs its hat on this factor as "the strongest" only highlights the weaknesses present in the other factors.

GameStop lists individuals that it claims "on information and belief" are located in Texas, but the fact that GameStop can identify a handful individuals with *some* connection to the case from among the hundreds who worked under the SOW does not support transfer.  Indeed, GameStop offers only vague allusions as to what information the individuals it names may have or what testimony they might provide.[5]  As explained above, the key third-party witnesses involved in the negotiation of the SOW and the management of the project in fact reside in Philadelphia, within the subpoena power of the Court.  (Harris Decl. at ¶3-4.)[6]  GameStop points heavily at Jim Bell, its former CFO, as a witness located in Texas but Mr. Bell joined the project when it was already in progress and is far less critical to the issues in dispute than Mr. Kaufman and others who negotiated the SOW.  (Harris Decl. ¶4.)

In any event, GameStop's arguments fail as a matter of law because GameStop fails to present evidence suggesting that any of its potential witnesses—most of whom are former employees—would actually be unavailable for trial.  "[I]n order for the movant to convincingly argue that this factor squarely favors transfer the movant must provide specificity as to: (1) the particular witness to whom it is referring; (2) what that person's testimony might have to do with a trial in this case; and (3) what reason there is to think that the person will "actually" be unavailable for trial (as opposed to the proffer of a guess or speculation on that front)."  *Genedics,*

---

[5] Many of the potential witnesses GameStop identifies are its own employees, which cannot support transfer under 28 U.S.C. § 1404(a).  *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. Nov. 18, 1998) ("witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial.").

[6] GameStop misidentifies Christopher Cromer as a former employee of BCG.  Mr. Cromer remains a partner of BCG.

*LLC v. Meta Company*, 2018 WL 417950, *7 (D. Del. Jan. 12, 2018).   The convenience of witnesses factor applies "***only*** to the extent that the witnesses may *actually* be unavailable for trial in one of the fora[.]"  *Id*. at *6 (2018 (*citing Jumara*, 55 F.3d at 879.); *Magnacross LLC v. GE MDS LLC*, 2020 U.S. Dist. LEXIS 210124, *21 (D. Del. Nov. 10, 2020) (a showing that a potential witness would actually be unavailable is "the paramount consideration under this *Jumara* factor").  GameStop merely claims that certain witnesses are former employees or are outside the subpoena power of this Court and therefore "the parties might not be able to secure their testimony at trial." (D.I. 19 at 8.)  Such attorney speculation and argument are insufficient to establish inconvenience. *See Genedics, LLC*, 2018 WL 417950 at *7 (finding that where "the record as to third-party witnesses who may actually be unavailable for trial in either fora is limited . . . [i]t does not meaningfully favor either side. For that reason, this factor is neutral.")

Requiring *evidence* of actual unavailability is all the more important here because the potential third-party witnesses GameStop identifies are not entirely neutral; they are former employees of a party.  This Court has repeatedly recognized that "former colleagues or business associates . . . [are] the kind of persons who might well be expected to voluntarily testify on behalf of the parties."  *Fuisz Pharma LLC v. Theranos, Inc.*, 2012 U.S. Dist. LEXIS 69835, *48-49 (D. Del. May 18, 2012.); *see also Ivoclar Vivadent AG v. 3M Co*., 2012 U.S. Dist. LEXIS 86934, *36-37 (D. Del. Jun. 22, 2012.) (same).  Therefore, "absent some concrete evidentiary showing that these individuals would be unlikely to testify, neither side can credibly claim that this factor should turn in its favor."  *Fuisz Pharma LLC,* 2012 U.S. Dist. LEXIS 69835, *48-49.  BCG currently has no reason to believe that any of its former employees would refuse to appear at trial, and GameStop has not offered any such reason as to its former employees, much less provided a "concrete evidentiary showing" that any of them would be unavailable.  GameStop's motion provides nothing but speculation as to what "might" happen.  (D.I. 19 at 8.)[7]  Such speculation is especially

---

[7] For example, GameStop fails to explain why Mr. Bell, a highly compensated former executive and shareholder of the company who may still be receiving severance benefits, would not voluntarily appear for trial.

unpersuasive here, given that GameStop does not even provide any evidence as to where the relevant witnesses are actually located.  Instead, the potential witnesses are listed by GameStop as being located in Texas "on information and belief."  (D.I. 19 at 4-5.)

Finally, even assuming that GameStop had presented some evidence showing that the individuals on its list have critical information, that such witnesses cannot be compelled by law to attend trial, and that they would refuse to appear voluntarily, GameStop still would not meet its high burden of establishing that transfer would be proper because this factor is not dispositive or even as important as GameStop suggests.  Rather, this Court recognizes that convenience of witnesses is not a critical factor in the transfer analysis because "the practical impact of this factor is limited by the fact that few civil cases proceed to trial, and at trial, few fact witnesses testify live." *Ivoclar Vivadent AG*, 2012 U.S. Dist. LEXIS 86934 at *35 (citing *Cellectis*, 2012 U.S. Dist. LEXIS 61868, 2012 WL 1556489, at *6 & n.6; *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 2012 U.S. Dist. LEXIS 70653, 2012 WL 297720, at *10 (D. Del. Jan. 23, 2012) (same).)  As such, even assuming that this dispute is not resolved prior to trial, and assuming that certain witnesses may actually be unavailable, witness testimony could be—and frequently is—presented by deposition testimony.  *See* Fed. R. Civ. Proc. 32(a)(4) (providing that depositions may be used to present testimony if "the witness is more than 100 miles from the place of hearing or trial").  In addition to the use of depositions at trial being expressly authorized by the Rules of Evidence and Rule 32 of the Federal Rules of Civil Procedure, this Court has also recognized that the use of deposition testimony at trial "is a fallback that, in almost all instances, will prevent a miscarriage of justice." *Graphics Props. Holdings v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 329 (D. Del. Jun. 28, 2013) (citation omitted) (denying motion to transfer based on alleged unavailability of witnesses at trial).  Here, the parties have stipulated to conduct depositions and discovery at a location convenient for witnesses, which ensures that no testimony would be unavailable at trial, even if a witness were to be actually unavailable to appear in person.

(D.I. 32 at Section 6(e)(2).)   GameStop's speculation that certain witnesses "might not" be available to appear in Delaware is inadequate to support the requested transfer.

### 4.   The Location of Books and Records Does Not Favor Transfer

GameStop also argues that the location of books and records in this case will likely be in Texas and therefore transfer is appropriate.  (D.I. 19 at 11.)  Not so.  The Court considers the location of books and records only "to the extent that the files could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879.  As a result, electronic discovery advances have "reduced the weight of this factor to virtually nothing." *Human Genome Scis., Inc. v. Genentech, Inc.*, 2011 U.S. Dist. LEXIS 77740 at *9 (D. Del. Jul. 18, 2011.); *see also Genedics LLC*, 2018 WL 417950 at *8 (rejecting transfer even though "[n]o relevant evidence will likely be found in Delaware.").  The parties here have already stipulated that the relevant files in this action can and will be produced electronically pursuant to the Court's extensive ESI Order.  (*See* D.I. 30 at 2.)  Thus, this factor is neutral.  *See, e.g., David & Lily Penn, Inc. v. TruckPro, LLC*, 2019 U.S. Dist. LEXIS 163785, *12 (D. Del. Sept. 25, 2019) ("even though all of TruckPro's documents are located in the Western District of Tennessee, the lack of evidence that these files could not also be produced in Delaware renders this factor neutral.").

### 5.   BCG's Claims Did Not Arise in Texas Such that Litigation Would Be More Appropriate There

GameStop argues that case should be transferred to Texas because the "alleged wrongdoing" occurred there, but this misstates the facts.  This case is a contract dispute between two multi-national parties, involving work and business operations that occurred not only all over the United States, but across the globe with key principals in Paris and London.  (Harris Decl. at ¶¶6-9.)  The SOW is governed by Delaware law, was performed by BCG consultants in multiple locations, was to be paid in Boston, and is subject to enforcement anywhere.  (D.I. 26 at Terms, Section 9.6, 9.3; Harris Decl. at ¶¶6-9).  While meetings and work between the parties did take place in Texas, it is not the only relevant location.

Trying to tie the dispute to Texas, GameStop argues Jim Bell, its former Chief Financial Officer who is no longer with the company but is, "on information and belief," still located in Texas, is the source of the parties' dispute.  (D.I. 19 at 8.)  This, too, misconstrues the claims at issue and the relative importance of witnesses.  While Mr. Bell may have at some level effectuated GameStop's breaches, the fact that GameStop has not paid BCG's fees and did not attend Thermometer Meetings are not in dispute.  Rather, the primary dispute in this action is one of contract interpretation, to determine what the SOW requires, and the extent of BCG's performance, to determine what it is owed.  BCG asserts that GameStop failed to pay fees due under the SOW, and GameStop contends that no additional payments are required under the SOW.  Determining which party is correct requires evidence about the SOW's formation and intent and the witnesses best equipped to speak to these issues are mostly located on the East Coast, within the subpoena power of this Court, or otherwise near Delaware.

Contrary to GameStop's unsupported assertion that the SOW "was negotiated in Texas," the SOW was in fact negotiated at least in part by Brian Harris and David Welch in Washington D.C. and Frank Petruzielo in Philadelphia on behalf of BCG, as well as Dan Kaufman and Michael Friedman, who were also both in Philadelphia, on behalf of GameStop.  (D.I. 19 at 10; Harris Decl. at ¶¶3-4.)  Unlike Mr. Bell, who was not involved in the project until well after work had begun and left before the work was completed, Mr. Harris, Mr. Petruzielo, Mr. Welch, Mr. Kaufman and Mr. Friedman, were all directly involved in the project from the beginning including with the SOW's drafting and formation.  (*Id*.)  Mr. Kaufman also oversaw the SOW's performance for GameStop, serving as its Chief Transformation Officer.  (*Id*.)  These key witnesses are all either party witnesses or within the subpoena power of this Court.[8]  As such, this factor does not favor transfer.

---

[8] According to Google Maps, Philadelphia (where Mr. Kaufman, Mr. Friedman and Mr. Petruzielo are located) is approximately 32 miles from this Courthouse in Wilmington; Bethesda, Maryland (where key BCG witnesses are located) is approximately 108 miles from this Courthouse.

**B.      The Public Interest Factors Either Do Not Favor Transfer or Are Neutral and Should Be Disregarded**

**1.      This Court Can Enter an Enforceable Judgment**

There is no dispute that a judgment entered in this Court would be enforceable.  This factor does not support transfer.

**2.      The Northern District of Texas Is Not Better Equipped to Apply Delaware Law**

GameStop acknowledges that there would be no advantage to a Texas court interpreting Delaware law in place of a Delaware court.  In fact, GameStop even concedes that this factor weighs against transfer though incorrectly calling its importance minimal.  (D.I. 19 at 13 (claiming that this factor weighs "minimally against transfer").)  BCG agrees that this Court would be better equipped to interpret the SOW by applying Delaware law.

**3.      Litigating in Texas Would Not Make Trial Easy, Expeditious, or Inexpensive.**

There are no practical considerations that favor transfer to Texas.  As explained above, documents will be produced electronically, witnesses will be deposed near their residences, most relevant witnesses could be compelled to travel to Delaware (and for those that cannot, there is no indication that they will not voluntarily appear at trial), and deposition testimony could be used at trial in Delaware pursuant to Federal Rule of Civil Procedure 32(a) if any witness is actually unavailable.  There is nothing that would tip the scale toward Texas in terms of making trial easier, faster or less expensive.  In fact, transfer to Texas would only cause further delay and increase costs, since the Court has already set a trial date and entered a Scheduling Order and Protective Order, processes which would have to be restarted if the case were transferred to another court.

**4.      Judicial Economy Does not Support Transfer**

There would be no benefit to judicial economy by transferring this action to the Northern District of Texas.  Both this Court and the Northern District of Texas have busy dockets.  This case is already moving forward toward trial, with discovery underway.  Transferring the action to

Texas would upend that progress and would likely result in a later trial date than this Court has already set.

### 5.     There Is No Local Interest in Deciding This Action in Texas

Texas does not have any greater interest than Delaware in litigating the issues presented in this case.  The SOW is governed by Delaware law and GameStop is a Delaware corporation.  There are no questions of Texas law, or any allegations of injuries in Texas.  Although GameStop's headquarters may be in Texas, it is a global company, with users and investors located all across the world.  This factor is neutral.

### 6.     There Are No Public Policies Favoring Resolution in Texas

GameStop does not argue that any public policies exist that would favor adjudication of this dispute in Texas versus Delaware.  There are none.

### <u>CONCLUSION</u>

The law is clear that GameStop's burden to establish that transfer of this action for convenience is high.  Even when "more of the factors tilt Defendant's way than Plaintiff's way," transfer is still not appropriate unless the Court can definitively "conclude that the balance of convenience 'is *strongly* in favor of' Defendant."  *Genedics LLC*, 2018 WL 417950 at \*10 (*quoting Shutte v. Armco Steel Corp*., 431 F.2d 22, 25 (3d Cir. 1970) (emphasis in original).)

GameStop has not come close to meeting its burden here.  Of the twelve *Jumara* factors, only **one** secondary factor favors transfer—that the Northern District of Texas is GameStop's preferred forum.  At least five factors weigh against transfer including the primary factor of plaintiff's choice of forum.  The remaining factors are neutral.  GameStop has pointed to no evidence that any witnesses would refuse to participate in this case in Delaware or otherwise be actually unavailable, and ignored numerous material facts, including that (i) critical witnesses in fact reside within the Court's subpoena power, (ii) the SOW is governed by Delaware law, (iii) the realities of e-discovery and modern litigation make the location of books, records and witnesses essentially irrelevant, and (iv) GameStop has already expressly consented to conducting trial in

this District and has further stipulated to a scheduling order, which the Court has signed, and that includes a trial date.  The Court should deny GameStop's Motion and the case should proceed without further delay.

Dated: July 26, 2022

Respectfully submitted,

*/s/ Joseph L. Christensen*
Thomas A. Uebler (#5074)
Joseph L. Christensen (#5146)

McCollom D'Emilio Smith Uebler LLC
2751 Centerville Road, Suite 401
Wilmington, Delaware 19808
Tel: (302) 468-5960
tuebler@mdsulaw.com
jchristensen@mdsulaw.com

Edward Totino (*pro hac vice*)
Nancy Nguyen Sims (*pro hac vice*)
Michael T. Boardman (*pro hac vice*)
Baker & McKenzie LLP
10250 Constellation Blvd., Suite 1850
Los Angeles, California 90067
Tel: (310) 201-4728
Fax: (310) 201-4721
edward.totino@bakermckenzie.com
nancy.sims@bakermckenzie.com
michael.boardman@bakermckenzie.com

*Attorneys for Plaintiff*
*The Boston Consulting Group, Inc.*