## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE BOSTON CONSULTING GROUP, INC.,
a Massachusetts corporation,

        Plaintiff,

    v.

GAMESTOP CORP., a Delaware corporation,

        Defendant.

C.A. No. 1:22-00363-CJB

## DEFENDANT GAMESTOP CORP.'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Trey Cox
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Tel: (214) 698-3256
tcox@gibsondunn.com

Dated: August 15, 2022

ABRAMS & BAYLISS LLP
John M. Seaman (#3868)
E. Wade Houston (#6289)
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
Tel: (302) 778-1000
seaman@abramsbayliss.com
houston@abramsbayliss.com

*Attorneys for Defendant GameStop Corp.*

## TABLE OF CONTENTS

**PAGE**

I.  NATURE AND STAGE OF PROCEEDINGS ........................................................ 1

II. SUMMARY OF ARGUMENT ......................................................................... 3

III. STATEMENT OF FACTS .............................................................................. 4

    A.    BCG and GameStop execute a Statement of Work. ............................... 4

    B.    The SOW leaves open to future agreements determinations of how much GameStop's profits would improve as a result of BCG's work. .......................... 5

    C.    BCG demands variable fees even where the parties never agreed on corresponding profit improvements. ...................................................... 5

IV. ARGUMENT ................................................................................................ 6

    A.    BCG fails to sufficiently plead a claim for breach of contract. ........................... 6

        1.    BCG fails to allege facts showing breach of the SOW. .............................. 7

            *a.*    BCG seeks fees that depend on "agreed-upon projected profits," yet BCG admits that for certain workstreams the parties never agreed on any projected profits. ..................................................... 7

            *b.*    Insofar as BCG claims the SOW required GameStop to agree on projected profits, BCG relies on an unenforceable obligation. ..... 7

            *c.*    BCG's vague allegations about other, unidentified workstreams for which the parties supposedly agreed on profit projections fail to provide fair notice of the grounds for its claim that GameStop failed to pay fees. ........................................................... 9

            *d.*    BCG relies on inapposite contractual provisions for its claim that GameStop made unsupported fee-reduction requests. ................. 11

            *e.*    BCG's allegation that GameStop refused to provide necessary data and access is vague and conclusory. ........................................... 12

        2.    BCG fails to adequately allege damages for its claims based on cancelled meetings or late payments. ....................................................... 13

            *a.*    BCG fails to allege facts showing that cancelled meetings caused its purported damages. ............................................................... 13

       *b.*     BCG fails to allege that purported late payments caused any damages..........................................................................................14

B.     BCG fails to sufficiently plead a claim for breach of the implied covenant of good faith and fair dealing. ......................................................................15

     1.     BCG's implied-covenant claim fails because the SOW governs GameStop's alleged conduct. ..................................................................15

     2.     BCG fails to identify any implied obligation that the law recognizes. .....17

     3.     BCG fails to allege facts showing breach of any implied obligations. .....19

V.  CONCLUSION ....................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Anderson v. Wachovia Mortg. Corp.*,
    497 F. Supp. 2d 572 (D. Del. 2007)......................................................................12

*Annuity Plan of Int'l Union of Operating Eng'rs Local No. 649 v. DEM/EX Grp. Inc.*,
    2008 WL 4723722 (C.D. Ill. Oct. 24, 2008)..................................................9, 11

*Arunachalam v. Pazuniak*,
    2016 WL 748005 (D. Del. Feb. 24, 2016).....................................................9, 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................6

*Aspen Advisors LLC v. United Artists Theatre Co.*,
    843 A.2d 697, 707 (Del. Ch. 2004)......................................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................*passim*

*Blaustein v. Lord Baltimore Cap. Corp.*,
    2012 WL 2126111 (Del. Ch. May 31, 2012).......................................................18

*Buck v. Viking Holding Mgmt. Co. LLC*,
    2021 WL 673459 (Del. Super. Feb. 22, 2021).....................................................17

*Cartel Media Grp. LLC v. Barone*,
    2021 WL 3673215 (Del. Super. Aug. 16, 2021)...................................................19

*Centreville Veterinary Hosp., Inc. v. Butler-Baird*,
    2007 WL 1965538 (Del. Ch. July 6, 2007)............................................................8

*Conley v. Gibson*,
    355 U.S. 41 (1957).................................................................................................6

*Cornell Univ. v. Illumina, Inc.*,
    2012 WL 1885129 (D. Del. May 23, 2012).............................................11, 12, 14

*Doe v. Univ. of Del.*,
    2020 WL 6060476 (D. Del. Oct. 14, 2020)..........................................................18

*FinancialApps, LLC v. Envestnet, Inc.*,
    2020 WL 4569466 (D. Del. July 30, 2020)....................................................11, 12

*French v. Idaho State AFL-CIO*,
    164 F. Supp. 3d 1205 (D. Idaho 2016)..........................................................9, 11

*Haney v. Blackhawk Network Holdings, Inc.*,
    2016 WL 769595 (Del. Ch. Feb. 26, 2016) ...................................................15, 16

*Hydrogen Master Rights, Ltd. v. Weston*,
    228 F. Supp. 3d 320 (D. Del. 2017)..........................................................6, 15

*Icard Stored Value Sols., L.L.C. v. W. Suburban Bank*,
    2008 WL 619236 (E.D. Mo. Mar. 3, 2008) ...................................................9, 11

*Kuroda v. SPJS Holdings, L.L.C.*,
    971 A.2d 872 (Del. Ch. 2009)........................................................16, 18

*Midwest Railcar Corp. v. Everest Railcar Servs., Inc.*,
    2017 WL 1383765 (S.D.N.Y. Apr. 13, 2017).................................................19, 20

*Midwest Special Surgery, P.C. v. Anthem Ins. Cos.*,
    2010 WL 716105 (E.D. Mo. Feb. 24, 2010).....................................................9, 11

*Miller v. Pa.*,
    588 F. App'x 96 (3d Cir. 2014) ..........................................................20

*Modular Steel Sys. Inc. v. Westfield Ins.*,
    2022 WL 832048 (3d Cir. Mar. 21, 2022)...................................................7

*Omega Cap. Mgmt. Partners, LLC v. Schrage*,
    2021 WL 2036672 (D. Del. May 21, 2021).................................................8, 13, 20

*Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*,
    202 A.3d 482 (Del. 2019) ..........................................................15

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993)..........................................................5

*Penton v. B E & K, Inc.*,
    1995 WL 135543 (E.D. La. Mar. 28, 1995) ...................................................11, 12

*Redden v. Smith & Nephew, Inc. C.A.*,
    2010 WL 2944598 (N.D. Tex. July 26, 2010) ...................................................14

*S. Track & Pump, Inc. v. Terex Corp.*,
    623 F. Supp. 2d 558 (D. Del. 2009)..........................................................15, 17, 18

*Sharma v. Trizetto Corp.*,
    2016 WL 4764821 (D. Del. Sept. 12, 2016) ...................................................19, 20

*Starling v. JPMorgan Chase Bank, N.A.*,
    2013 WL 4494525 (N.D. Tex. Aug. 22, 2013)..........................................................5

*Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*,
    738 F. Supp. 2d 505 (D. Del. 2010) .......................................................................14

*Talley v. Christiana Care Health Sys.*,
    2018 WL 4938566 (D. Del. Oct. 11, 2018) ...........................................................10

*Truinject Corp. v. Nestle Skin Health, S.A.*,
    2020 WL 70981 (D. Del. Jan. 7, 2020) ............................................................ *passim*

*United Med., LLC v. Aetna Life Ins. Co.*,
    2021 WL 2915050 (D. Del. July 12, 2021) .............................................................8

*vMedex, Inc. v. TDS Operating, Inc.*,
    2020 WL 4925512 (D. Del. Aug. 21, 2020) ...........................................15, 17, 19

*Williams v. Potter*,
    384 F. Supp. 2d 730 (D. Del. 2005) ...................................................................9, 13

**Other Authorities**

Charles A. Wright, Arthur R. Miller et al., FEDERAL PRACTICE AND PROC. § 1363
    (3d ed. & Supp. Apr. 2021) .................................................................................10

## I.   NATURE AND STAGE OF PROCEEDINGS

Boston Consulting Group, Inc. ("BCG") has sued GameStop Corp. ("GameStop") on mistaken premises and fails to plead any viable claims.  The parties agreed in a statement of work (the "SOW") that GameStop would pay a fixed fee for BCG to perform consulting services on various "workstreams."  The SOW also provided for potential "variable," performance-based fees; any calculation or payment of such fees required further agreement between the parties.

The crux of BCG's lawsuit is that GameStop owes millions more in variable fees because BCG determined—by itself—that BCG "overachieved" on developing strategies to improve profits for GameStop.  Am. Compl. ¶ 11.  For some workstreams, BCG admits the parties never agreed on how much, if anything, GameStop would ultimately pay in performance-based fees; boiled down, its complaint is that the parties were supposed to agree but never did.  *Id.* ¶¶ 29, 36.  For other, unidentified workstreams, BCG alleges in vague and conclusory fashion that the parties agreed to metrics that would determine its performance-based fees—but BCG alleges no supporting facts and thus fails to give fair notice of the grounds upon which its claim rests.  *Id.* ¶ 33.  Nonetheless, BCG seeks to extract at least another $30 million from GameStop.  That's nearly twice the $16.5 million actually required under the contract and which GameStop has already paid.[1]

BCG's hodgepodge of other complaints fares no better.  Its allegation that GameStop improperly demanded discounts without supporting data is untethered to any contractual obligation requiring GameStop to accept BCG's fee proposals as binding or to marshal data when objecting to BCG's fee proposals.  Am. Compl. ¶¶ 14, 46.  BCG's argument about GameStop cancelling

---

[1] GameStop has already paid BCG approximately $22.5 million in fees, including $16.5 million in fixed fees agreed to in the contract plus $6 million in discretionary, performance-based variable fees.

meetings has a similar problem.  The cancellations allegedly prevented the parties from agreeing on fees.  But the contract language BCG quotes doesn't require GameStop to agree on fees at such meetings.  And BCG doesn't allege any other facts showing GameStop would have agreed to the fees that BCG seeks if only those allegedly cancelled meetings had occurred.  Nor does BCG offer any factual support for its vague conclusion that GameStop refused to provide necessary data and access.  That leaves BCG's claim that GameStop made late payments; BCG pleads zero facts about how any late payments caused its claimed damages.

BCG's fallback position is that GameStop breached the implied covenant of good faith and fair dealing, but that too fails because it simply duplicates BCG's breach-of-contract claim. Written contract terms govern each issue BCG complains about.  And BCG doesn't identify any gap in the contract necessitating the extraordinary remedy of implying obligations that don't appear anywhere in the contract.  These defects are fatal.  Moreover, the types of terms BCG might argue are implied—for example, requiring GameStop to accept BCG's unilateral fee proposals or forbidding discount requests—would simply rewrite the contract to impose one-sided terms BCG could have bargained for, but didn't.  That's not how the implied covenant works.  Even if BCG could somehow overcome these defects, its generalized allegations about GameStop being "unreasonable" and cancelling meetings don't raise any inference of bad-faith negotiations.

Thus, BCG doesn't plead plausible claims.  There is no plausible breach of contract for workstreams where the parties never agreed on the amount of fees BCG seeks, BCG relies on mere accusations bereft of factual support for other unidentified workstreams, GameStop had no obligation to refrain from seeking lower fees, GameStop had no obligation to agree to the fees at any meetings allegedly cancelled, and BCG wasn't damaged by any purported late payments.  Nor is there a plausible breach of the implied covenant where the contract's written terms plainly

2

govern these issues, and BCG doesn't even try to allege implicit obligations that *both* parties would have put in the contract if only they had the foresight.  For these reasons and as further outlined below, the Complaint should be dismissed in its entirety.

## II.  SUMMARY OF ARGUMENT

1.     For some workstreams, BCG complains GameStop owes fees that depend on profit projections the parties were supposed to agree on, but never did.  Taking BCG's allegations as true, GameStop didn't breach any obligation to pay such fees.  GameStop only owes the fees if both parties agree on corresponding profit projections, and the parties didn't so agree for those workstreams.

2.     Insofar as BCG contends GameStop breached an agreement to agree on the profit projections, it relies on a legally unenforceable obligation.

3.     BCG complains that GameStop failed to pay fees for "certain," unidentified workstreams for which the parties purportedly agreed on the underlying profit projections.  But BCG provides no factual support, and its vague and conclusory assertions fail to provide fair notice of the grounds for BCG's claim.

4.     BCG the SOW required GameStop to marshal "supporting data" if GameStop wished to object to BCG's fee calculations.  But the SOW contains no such requirement, and the provisions BCG cites are inapposite.

5.     BCG fails to provide fair notice of the grounds for its claim that GameStop refused to provide necessary data and access, instead relying on vague and conclusory allegations without any factual support showing that any allegedly withheld data was necessary.

6.      BCG can't recover based on GameStop's alleged cancellation of meetings because BCG pleads no facts showing that, but for GameStop's purported cancellations, the parties would have agreed on the fees BCG seeks or on the profit projections required to determine those fees.

7.      BCG complains GameStop made late payments, but it doesn't allege any facts showing damages from such late payments.

8.      BCG's claim for breach of the implied covenant of good faith and fair dealing fails because BCG merely recycles its breach-of-contract allegations.  Written contract terms govern each issue BCG complains about, and implied terms can't override express terms.

9.      BCG repeatedly fails to allege any implied obligation that GameStop allegedly breached.  And any implied obligations BCG could theoretically assert would simply rewrite the contract to impose one-sided terms BCG could have bargained for but didn't.

10.     Even if BCG could overcome its failure to properly allege implied obligations, its implied-covenant claim still fails because BCG hasn't adequately alleged any breach.  Its reliance on generalized allegations and vague grievances doesn't suffice.

### III. STATEMENT OF FACTS

**A.      BCG and GameStop execute a Statement of Work.**

In 2019, GameStop began working with BCG to develop ways to improve its business. Am. Compl. ¶ 5.  After working together for several months, the parties memorialized their relationship by executing the SOW on August 20, 2019.  *Id.* ¶¶ 5, 7, 19.  The SOW's express purpose was to "define a *framework* regarding the services to be provided by BCG to GameStop .

. . as well as the fees to be paid by GameStop to BCG for those services."  D.I. 26 Ex. 1 ("Ex. 1"), at 1 (SOW introductory paragraphs) (emphasis added); *see also* Am. Compl. ¶¶ 7–9.[2]

### B.     The SOW leaves open to future agreements determinations of how much GameStop's profits would improve as a result of BCG's work.

For BCG's services, the SOW provided that BCG would receive a "fixed fee" of $16.5 million, unless it earned more in "variable fee[s] based upon the projected profit improvement." Am. Compl. ¶¶ 9, 24; *see also* Ex. 1, §§ 2.3, 3.2.  "BCG's variable fee was not predetermined . . . ."  Am. Compl. ¶ 9.  Rather, the variable fees—"if any"—that BCG would receive were "tied . . . to the anticipated profit improvements resulting from its work."  *Id.*; Ex. 1, § 3.3; *see also* Am. Compl. ¶ 24; Ex. 1, § 2.3.

Importantly, the anticipated profit improvements resulting from BCG's work were to be "agreed[] upon" by the parties before BCG could receive any variable fees.  Am. Compl. ¶¶ 29, 33, 35; Ex. 1, §§ 2.3, 4.1.  The parties set a framework for estimating profit improvements.  Am. Compl. ¶¶ 26–27; Ex. 1, §§ 4.2.5–4.2.6.  But they expressly left open to future agreements the actual amounts by which GameStop's profits were expected to improve as a result of BCG's work. Am. Compl. ¶ 29; *see also* Ex. 1, §§ 3.3, 4.2.1–4.2.3, 4.2.7, 4.2.13.  Indeed, the SOW required that any "predictions of the dollar amount of contributions of a proposed initiative or profit improvement lever . . . culminate[] in [a] written agreement."  Ex. 1, § 4.2.13.

### C.     BCG demands variable fees even where the parties never agreed on corresponding profit improvements.

BCG admits the parties never agreed on some of the relevant "profit improvement estimates and BCG's resulting fees."  Am. Compl. ¶ 14; *see also id.* ¶¶ 42(e), 46.  Nonetheless,

---

[2]  GameStop has attached the SOW to its motion to dismiss given the SOW's centrality to BCG's claims.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Starling v. JPMorgan Chase Bank, N.A.*, 2013 WL 4494525, at *2 (N.D. Tex. Aug. 22, 2013)*.

BCG claims entitlement to not only the $16.5 million in fixed fees GameStop has already paid under the contract. Am. Compl. ¶¶ 14, 24; Ex. 1, § 3.2. BCG also claims it's entitled to millions more in variable fees that were never guaranteed under the SOW and that are based solely on BCG's own unilateral determinations about the value of its work. Am. Compl. ¶¶ 14, 37; Ex. 1, §§ 2.3, 3.2, 3.3.

For other workstreams, BCG asserts that the parties reached "specific agreement as to the underlying projected profit improvements," but that "GameStop . . . failed to pay all fees due and owing." Am. Compl. ¶ 33. Yet BCG fails to identify any of the supposedly agreed-upon projected profit improvements, the fees allegedly owed, or even the workstreams involved.

## IV. ARGUMENT

When reviewing a motion to dismiss for failure to state a claim, courts accept well-pleaded facts as true, disregard any conclusory assertions, and then determine whether the facts alleged are sufficient to show the plaintiff has a "plausible claim for relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). That means a plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). Further, a plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

### A.       BCG fails to sufficiently plead a claim for breach of contract.

To state a claim for breach of contract under Delaware law, plaintiffs must allege facts plausibly demonstrating: "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff." *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 333 (D. Del. 2017) (internal quotation marks omitted).[3]

---

[3] The SOW contains a provision establishing that it is "governed by and construed in accordance with the laws of the State of Delaware." *See* Ex. 1 (BCG Standard Terms), § 9.6.

1.    **BCG fails to allege facts showing breach of the SOW**.

    *a.*    **BCG seeks fees that depend on "agreed-upon projected profits," yet BCG admits that for certain workstreams the parties never agreed on any projected profits.**

BCG alleges that GameStop breached the SOW by not paying "variable fees." Am. Compl. ¶¶ 41, 42(b), 42(c). Such fees "were to be assessed based upon *agreed-upon* projected profits that GameStop was anticipated to achieve against agreed-upon baselines." *Id.* ¶ 29 (emphasis added) (emphasis in original omitted). That means any variable fees BCG is entitled to depend on BCG and GameStop agreeing on how much GameStop's profits would improve because of strategies BCG helped develop. *Id.* ¶¶ 14, 29, 33, 35, 42(a).

Yet, as to the variable fees BCG seeks for certain workstreams, BCG fails to allege any facts showing the parties ever agreed on the "projected profits that GameStop was anticipated to achieve." *Id.* ¶ 29. Instead, BCG affirmatively alleges facts showing just the opposite—that the parties didn't agree. *Id.* ¶¶ 14, 35, 36, 42(b)–(e), 46 (alleging GameStop sought fee reductions, failed to finalize projected achievement rates, deprived BCG of data and feedback, and didn't attend meetings needed to determine projected profits and fees). BCG therefore fails to state a claim based on GameStop's alleged failure to pay owed variable fees on each workstream for which the parties never reached an agreement concerning projected profit improvements. *See Modular Steel Sys. Inc. v. Westfield Ins.*, 2022 WL 832048, at *2 (3d Cir. Mar. 21, 2022) (affirming dismissal of contract claim where "complaint d[id] not indicate that [defendant's] obligations were triggered").

    *b.*    **Insofar as BCG claims the SOW required GameStop to agree on projected profits, BCG relies on an unenforceable obligation.**

BCG also fails to state a claim insofar as its complaint is that GameStop breached the SOW by not ultimately reaching an agreement with BCG on "projected profits that GameStop was

anticipated to achieve." Am. Compl. ¶ 29 (citing Ex. 1, § 4.1) (emphasis in original omitted); *see also* Am. Compl. ¶ 14 (alleging GameStop took "unreasonable positions" and "demand[ed] discounts"); Ex. 1, § 4.1 (positing that the parties "will agree" on profit improvement initiatives). Those complaints claim breach of an unenforceable agreement to agree.

"[A]greement[s] to agree in the future without any reasonably objective controlling standards [are] unenforceable." *Omega Cap. Mgmt. Partners, LLC v. Schrage*, 2021 WL 2036672, at *2–3 (D. Del. May 21, 2021) (quoting *Centreville Veterinary Hosp., Inc. v. Butler-Baird*, 2007 WL 1965538, at *8 (Del. Ch. July 6, 2007)) (dismissing contract claim where "plain language of [contract] indicates . . . negotiations have not concluded"); *cf. United Med., LLC v. Aetna Life Ins. Co.*, 2021 WL 2915050, at *1 (D. Del. July 12, 2021) (dismissing unjust enrichment claim where parties "had not completed their negotiations" regarding price for services (internal quotation marks omitted)).

BCG appears to complain that it and GameStop were supposed to reach an agreement on projected profits to determine BCG's variable fees, but that they never did so. Am. Compl. ¶¶ 29, 35, 36, 42(b), 42(c), 42(e). Thus, BCG's own allegations show GameStop "had not . . . committed to," any profit projections that could be used to calculate variable fees that BCG seeks for certain workstreams. *Omega*, 2021 WL 2036672, at *3; *see also* Ex. 1, § 4.1 ("Parties will agree . . . on the predicted dollar amount of contributions of a proposed initiative . . . at the time the Parties agree to execute on such proposed initiative . . . ."); Ex. 1, §§ 3.3, 4.2.13, 4.3.9. Accordingly, BCG fails to state a breach-of-contract claim based on GameStop not ultimately agreeing with BCG on projected profit improvements or the amount of variable fees BCG would receive. *See Omega*, 2021 WL 2036672, at *3.

8

> ### c.   BCG's vague allegations about other, unidentified workstreams for which the parties supposedly agreed on profit projections fail to provide fair notice of the grounds for its claim that GameStop failed to pay fees.

Although a complaint need not contain "detailed factual allegations," it still must articulate the grounds for relief with something "more than labels and conclusions." *Twombly*, 550 U.S. at 545. "Vague and conclusory factual allegations do not provide fair notice to a defendant." *Williams v. Potter*, 384 F. Supp. 2d 730, 733 (D. Del. 2005).

Specifically, where a plaintiff alleges that it is owed fees, it must articulate, in a non-conclusory manner, "the amounts that were due" and "why they were due." *Arunachalam v. Pazuniak*, 2016 WL 748005, at *7 (D. Del. Feb. 24, 2016). Vague allegations that a plaintiff is owed "certain" fees based on "certain," unspecified metrics do not provide fair notice. *See, e.g.*, *Icard Stored Value Sols., L.L.C. v. W. Suburban Bank*, 2008 WL 619236, at *2 (E.D. Mo. Mar. 3, 2008); *Midwest Special Surgery, P.C. v. Anthem Ins. Cos.*, 2010 WL 716105, at *6 (E.D. Mo. Feb. 24, 2010); *Annuity Plan of Int'l Union of Operating Eng'rs Local No. 649 v. DEM/EX Grp. Inc.*, 2008 WL 4723722, at *2 (C.D. Ill. Oct. 24, 2008); *French v. Idaho State AFL-CIO*, 164 F. Supp. 3d 1205, 1218 (D. Idaho 2016).

Apparently recognizing the fatal pleading deficiency of its original Complaint, BCG now contends that the parties did agree on projected profit improvements for *some* workstreams. *See* Compl., D.I. 1; Def.'s Opening Br. in Supp. of Mot. to Dismiss 5–7, D.I. 22. Yet BCG fails to allege any factual support for this newfound claim. Instead, BCG resorts to the vague and conclusory assertion that the parties reached "agreement[s] as to the underlying projected profit improvements for *certain* workstreams." Am. Compl. ¶ 33 (emphasis added). BCG never identifies which workstreams were involved, what was purportedly agreed to or how, or any other

facts providing fair notice of the basis for this claim.  Indeed, its allegations for this claim rest on a single sentence.[4]  *Id.*; *see also id.* ¶ 42(a) (same allegation); *id.* ¶ 42(c) (similar); *id.* ¶ 13 (same).

Nor does BCG identify the variable fees it is supposedly owed on this basis, or distinguish which fees it is supposedly owed for workstreams where the parties agreed on profit projections and workstreams where the parties did not.  Instead, BCG alleges in conclusory fashion only that it "met the threshold to recover . . . *certain* variable fees." Am. Compl. ¶ 32 (emphasis added); *see also id.* ¶ 14 ("GameStop has . . . unilaterally demand[ed] discounts on *certain* workstream fees" (emphasis added)); *id.* ¶ 35 (GameStop did so sans "supporting data" "[f]or *certain* workstreams" (emphasis added)); *id.* ¶ 33 ("GameStop . . . has paid portions of BCG's variable fees.").

BCG's vague reference to its "unequivocal satisfaction of the agreed-upon profit improvements" "[f]or *certain* workstreams" is similarly cryptic and conclusory.  *Id.* ¶ 35 (emphasis added).  And its sweeping assertion that there was "no legitimate dispute over BCG's full performance and the fees coming due," *id.* ¶ 13, is not only conclusory, but also directly contradicted by BCG's allegations that the parties never agreed on projected profits.  *See Talley v. Christiana Care Health Sys.*, 2018 WL 4938566, at *5 n.4 (D. Del. Oct. 11, 2018) ("[T]he Court . . . need not accept allegations . . . contradicted by other allegations in [complaint]."); *see also* 5C Charles A. Wright, Arthur R. Miller et al., FEDERAL PRACTICE AND PROC. § 1363 (3d ed. & Supp. Apr. 2021); *cf.* Ex. 1, § 4.2.13 (recognizing agreed-upon profit projections must be in writing).

In short, even with an opportunity to amend its Complaint, BCG fails to state a claim based on GameStop's alleged failure to pay owed variable fees.  Absent allegations that provide any factual support for its bare assertion that GameStop failed to pay for work which resulted in agreed-

---

[4]  By contrast, BCG boasts in detail about its work on GameStop's customer loyalty program, showing that it knows how to allege more than "labels and conclusions" when it chooses to do so.  *See* Am. Compl. ¶ 31; *Twombly*, 550 U.S. at 545.

upon profit improvement projections, BCG relies on a single vague and conclusory sentence that fails to give fair notice "of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *Arunachalam*, 2016 WL 748005, at *7; *see also W. Suburban Bank*, 2008 WL 619236, at *2; *Midwest Special Surgery*, 2010 WL 716105, at *6; *DEM/EX Grp.*, 2008 WL 4723722, at *2; *French*, 164 F. Supp. 3d at 1218.

### d. BCG relies on inapposite contractual provisions for its claim that GameStop made unsupported fee-reduction requests.

To successfully plead a breach-of-contract claim, a plaintiff must "identify the express contract provision that was breached" and explain "why such a provision was breached." *FinancialApps, LLC v. Envestnet, Inc.*, 2020 WL 4569466, at *3 (D. Del. July 30, 2020). A plaintiff may not merely gesticulate at an apparently inapposite provision and hope the court will fill in the gaps. *See Cornell Univ. v. Illumina, Inc.*, 2012 WL 1885129, at *5 n.67 (D. Del. May 23, 2012) ("[A] court is not to strain to find inferences favorable to the non-moving party." (internal quotation marks omitted)); *Penton v. B E & K, Inc.*, 1995 WL 135543, at *2 (E.D. La. Mar. 28, 1995).

BCG points to several irrelevant provisions to claim that GameStop breached the SOW by objecting to BCG's fee proposals without providing relevant data in support. None of the provisions BCG cites speaks to this issue.

*First*, BCG alleges that GameStop had to support any objection to BCG's profit improvement estimates with "relevant data," or else "breach . . . at least Sections 4.1 and 4.2 of the SOW." Am. Compl. ¶ 29; *accord id.* ¶ 42(b). But BCG doesn't cite any language in sections 4.1 or 4.2 requiring GameStop to marshal "relevant data"—and for good reason, as there is no such language anywhere on the face of those provisions. Rather, sections 4.1 and 4.2 simply establish the framework for arriving at any projected profit improvements. And section 4.1

11

expressly acknowledges an element of "judgment commonly involved in [such] predictions." Nothing in these provisions requires GameStop to support its judgment calls with data, and BCG can't rely on other, unidentified contract provisions for this claim either. *See Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007); Am. Compl. ¶ 29.

*Second*, BCG claims that GameStop breached the SOW by "demand[ing] [fee] reductions" without supporting data, "despite the SOW's requirement in at least Section 1.3 of the SOW's Terms that GameStop cooperate in good faith to timely approve goals and projections." Am. Compl. ¶ 35. But that provision contains no such requirement; indeed, it makes no mention whatsoever about approval of project improvement projections. To the extent BCG is referring to section 1.3 of BCG's Standard Terms,[5] that provision governs BCG's "*delivery* of the Services"— not the fees for those services. *See* Ex. 1, (BCG Standard Terms), § 1.3 (emphasis added). And no references to approval of profit projections appear in that provision either.

BCG's failure to identify any relevant contract provisions for its complaint that GameStop objected to BCG's fee proposals without providing supporting data is fatal to its claim that GameStop breached the contract on this basis. *See FinancialApps*, 2020 WL 4569466, at *3; *Cornell*, 2012 WL 1885129, at *5 n.67; *Penton*, 1995 WL 135543, at *2.

### e.   BCG's allegation that GameStop refused to provide necessary data and access is vague and conclusory.

Nor does BCG provide "fair notice of . . . the grounds" for its claim that GameStop refused to provide necessary data and access, instead relying on more vague and conclusory allegations

---

[5] Although BCG fails to specify which provisions it is citing, in the preceding paragraph it cites language purportedly from "[t]he SOW" requiring that GameStop "provide timely . . . approval of goals." Am. Compl. ¶ 28. That language appears to come from section 1.3 of BCG's Standard Terms, which are appended to the SOW.

without any factual support. *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *Williams*, 384 F. Supp. 2d at 733; Am. Compl. ¶¶ 14, 42(d).

BCG provides only a solitary, ambiguous allegation—in the Complaint's introduction—for its claim that GameStop refused to provide necessary data and access. *See* Am. Compl. ¶ 14 (alleging that GameStop "refus[ed] to provide necessary data and access to enable BCG to calculate its fees under the SOW"); *see also id.* ¶ 42(d) (repeating conclusory allegation that GameStop breached the SOW by "refusing to provide necessary data"). The passing assertion that GameStop "refus[ed] to provide necessary data and access," *id.* ¶ 14, constitutes yet another "bald assertion[]"; BCG has not alleged why it would have needed the allegedly withheld information in order to calculate its claimed fees, or otherwise why the allegedly withheld information was necessary, *see Omega*, 2021 WL 2036672, at *2 (internal quotations marks omitted). Accordingly, BCG fails to state any claim for breach on this ground.

### 2. <u>BCG fails to adequately allege damages for its claims based on cancelled meetings or late payments</u>.

#### *a.* **BCG fails to allege facts showing that cancelled meetings caused its purported damages.**

Nor can BCG recover the variable fees it seeks based on GameStop's alleged cancellation of, or refusal to participate in, meetings with BCG. Am. Compl. ¶ 42(e) (averring that GameStop breached the SOW by "refusing to even attend contractually-required thermometer meetings to validate projected profit improvements and BCG's fees"). That is because BCG fails to allege facts showing plausibly that, but for GameStop's purported cancellations, the parties would have agreed on "the anticipated profit improvement[s] . . . which would determine BCG's [variable] fees." *Id.* ¶ 29 (emphasis in original omitted).

13

Although BCG claims the SOW required GameStop to participate in meetings "to confirm profit improvement estimates and BCG's resulting fees," the provision BCG quotes in its Complaint says no such thing. *Id.* ¶ 14; *see also id.* ¶¶ 29, 42(e).

Rather, BCG relies on a provision providing that the parties would "hold regular sessions: '(i) to address validation, approvals, testing and commencement and execution of the various initiatives so that all of the foregoing can be handled in a timely manner and (ii) to address financial target and planning coordination.'" *Id.* ¶ 29 (citing Ex. 1, § 4.2.9). Nothing in that provision's plain text requires GameStop to agree on profit improvement estimates, or corresponding variable fees, during meetings held under that provision. GameStop therefore could have attended such meetings and still not have "confirm[ed] profit improvement estimates and BCG's resulting fees." *Id.* ¶ 14. BCG's conclusory assertion that "GameStop's cancellation of these meetings prevented the parties from engaging in discussions to confirm fees owed to BCG" doesn't suffice. Am. Compl. ¶ 36. The pleading thus raises no reasonable inference that, if only GameStop hadn't supposedly cancelled meetings, GameStop would have agreed to pay the variable fees BCG seeks or to confirm the profit projections required to determine those fees. BCG's complaints about cancelled meetings don't raise a right to relief above the speculative level. *See Cornell*, 2012 WL 1885129, at *5 n.67 ("'[A] court is not to strain to find inferences favorable' to the non-moving party." (quoting *Redden v. Smith & Nephew, Inc. C.A.*, 2010 WL 2944598, at *3 (N.D. Tex. July 26, 2010))); *Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*, 738 F. Supp. 2d 505, 510 (D. Del. 2010).

> ### *b.* **BCG fails to allege that purported late payments caused any damages.**

BCG also complains that GameStop breached the SOW by making late payments. Am. Compl. ¶ 34. "No part of the [C]omplaint, however, alleges any facts plausibly showing damages"

to BCG caused by the alleged late payments.  *Hydrogen Master*, 228 F. Supp. 3d at 333.  Instead,

BCG alleges in conclusory fashion that, "[a]s a . . . result of GameStop's failure to perform its

obligations . . . , BCG has been damaged."  Am. Compl. ¶ 43.  "This is insufficient to state a

claim."  *Hydrogen Master*, 228 F. Supp. 3d at 333.

> **B.     BCG fails to sufficiently plead a claim for breach of the implied
> covenant of good faith and fair dealing.**

To plead breach of implied covenant, a plaintiff must allege (1) "a specific implied

contractual obligation," (2) "breach of that obligation by the defendant," and (3) "resulting damage

to the plaintiff."  *S. Track & Pump, Inc. v. Terex Corp.*, 623 F. Supp. 2d 558, 562 (D. Del. 2009)

(internal quotation marks omitted) (applying Delaware law).

"Delaware's implied duty of good faith and fair dealing is not an equitable remedy for

rebalancing economic interests after events that could have been anticipated, but were not, that

later adversely affected one party to a contract.  Rather, the covenant is a limited and extraordinary

legal remedy."  *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*,

202 A.3d 482, 507 (Del. 2019) (internal quotation marks omitted).  Application of the implied

covenant is thus "rarely invoked successfully," and "only where it is clear that the parties would

have agreed to the [implied] obligation had they considered the issue."  *Truinject Corp. v. Nestle

Skin Health, S.A.*, 2020 WL 70981, at *13–14 (D. Del. Jan. 7, 2020).

> **1.     BCG's implied-covenant claim fails because the SOW governs
> GameStop's alleged conduct**.

BCG's implied-covenant claim fails at the outset because written contract terms govern

each issue BCG complains about.  *See id.* at *13 ("The implied covenant cannot be used when the

contract already speaks to the obligation at issue."); *vMedex, Inc. v. TDS Operating, Inc.*, 2020

WL 4925512, at *8 (D. Del. Aug. 21, 2020) ("The implied covenant 'only applies where a contract

lacks specific language governing an issue' and where the implied term does not override the

15

express terms of a contract." (quoting *Haney v. Blackhawk Network Holdings, Inc.*, 2016 WL 769595, at *8 (Del. Ch. Feb. 26, 2016))).

For instance, BCG claims that GameStop breached the implied covenant by baselessly "demanding . . . deductions" in order to "hold payment of BCGs [*sic*] fees in limbo and prevent final resolution of the project."  Am. Compl. ¶ 46; *see also id.* ¶¶ 36, 37.  Yet BCG also alleges that GameStop's demands for deductions sans "legitimate reasons . . . . would constitute a breach of at least Sections 4.1 and 4.2 of the SOW."  Am. Compl. ¶ 29.  Thus, BCG expressly acknowledges that GameStop's obligation to pay the fees BCG seeks is governed by the SOW as written, not by any provision that should be implied "to deal with unanticipated developments or to fill gaps in [the] contract's provisions."  *Truinject*, 2020 WL 70981, at *13 (internal quotation marks omitted); *see also* Ex. 1, §§ 2.3, 3.2, 3.3 (establishing framework for fees); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).

BCG's complaint about GameStop's allegedly "unsupported" or "spurious" requests for lower fees has the same problem.  Am. Compl. ¶ 46.  As BCG's own allegations make clear, the SOW sets out how BCG's variable fees are "calculated" and "assessed."  *Id.* ¶¶ 24, 29; Ex. 1, §§ 2.3, 3.2, 3.3; *see also id.* §§ 4.1–4.3.9 (describing the framework for determining corresponding predicted profit improvements).  In fact, BCG acknowledges that the SOW describes how "projected profit improvements 'will be determined.'"  Am. Compl. ¶ 26 (citing Ex. 1, § 4.2.5). Further, BCG concedes that "the SOW . . . provided detailed methodologies for calculating projected profit improvements that would determine BCG's resulting variable fee for each workstream."  Am. Compl. ¶ 27 (citing Ex. 1, § 4.3).  The SOW, therefore, governs whether GameStop's alleged requests for lower fees were "unsupported."

No less defective are BCG's claims based on alleged late payments and cancelled meetings. Am. Compl. ¶¶ 14, 29, 32, 34, 36.  As BCG effectively concedes, any payments couldn't be "late" unless the parties' contract set deadlines for them, and indeed it does.[6]  Am. Compl. ¶¶ 32, 34 ("Under Section 3.5 of the SOW, these invoices were required to be paid within 30 days."); *see also* Ex. 1, §§ 3.2, 3.5.  BCG also candidly relies on a contract provision in complaining about GameStop's allegedly cancelling meetings.  Am. Compl. ¶¶ 14, 29, 36; *see also* Ex. 1, § 4.2.9.

Therefore, BCG identifies the contractual provisions that govern GameStop's conduct, and "[t]he implied covenant cannot be used," as "the contract already speaks to the obligation[s] at issue."  *Truinject*, 2020 WL 70981, at *13; *see also, e.g.*, Am. Compl. ¶ 26 (citing SOW § 4.2.5); Am. Compl. ¶ 29 (citing SOW §§ 4.1, 4.2, & 4.2.9).  BCG's attempt to "merely repackage[] [its] breach of contract claim" into an implied-covenant claim can't survive dismissal.  *Buck v. Viking Holding Mgmt. Co. LLC*, 2021 WL 673459, at *5 (Del. Super. Feb. 22, 2021); *see also vMedex*, 2020 WL 4925512, at *8 ("[A] complaint claiming breach of the implied covenant of good faith and fair dealing must allege facts different from those underlying a related breach of contract claim."); Am. Compl. ¶ 14 ("GameStop has breached the SOW and the implied covenant of good faith and fair dealing . . . .").

### 2. <u>BCG fails to identify any implied obligation that the law recognizes</u>.

Since written contract terms govern BCG's complaints, it's unsurprising that BCG fails to allege "a specific *implied* contractual obligation" that GameStop supposedly breached.  *S. Track & Pump*, 623 F. Supp. 2d at 562 (emphasis added).  For example, BCG doesn't allege any implied

---

[6]  BCG also can't recover the variable fees it seeks based on alleged late payments and cancelled meetings because BCG hasn't pled facts showing that GameStop's purported late payments and cancellation of meetings caused such damages.  *S. Track & Pump*, 623 F. Supp. 2d at 562; *supra* pp. 13–14.

obligation to pay a particular amount of variable fees; any implied deadline for payments; any implied standard of conduct for variable fee negotiations, such as an obligation not to ask for lower fees; or any implied obligation to attend meetings or to agree to BCG's fee proposals or profit estimates at those meetings.  Nor can BCG's conclusory allegations about GameStop's alleged "fail[ure] to [act] . . . in good faith" provide an implied obligation.  Am. Compl. ¶ 46; *see Kuroda*, 971 A.2d at 888 ("General allegations of bad faith conduct are not sufficient.").

This deficiency is fatal.  *Truinject*, 2020 WL 70981, at *14–15 (dismissing implied covenant claim where pleading didn't allege implied contract term, as "allegation . . . that Defendants failed to act in good faith . . . is not enough"); *Doe v. Univ. of Del.*, 2020 WL 6060476, at *7 (D. Del. Oct. 14, 2020) ("The essence of Plaintiff's allegations are [*sic*] that UD treated him unfairly, but that is insufficient. . . .").

Nor could BCG allege any viable implied obligation.  The types of implied obligations BCG might assert—for example, requiring GameStop to accept BCG's unilateral fee proposals, or forbidding discount requests—would simply rewrite the contract to impose one-sided terms BCG could have bargained for but didn't.  *See, e.g.*, *Blaustein v. Lord Baltimore Cap. Corp.*, 2012 WL 2126111, at *5 (Del. Ch. May 31, 2012) ("Susan's claimed right to put her shares to Lord Baltimore at a specific price would contradict Section 7(d) . . . . [which] provides that Lord Baltimore and any stockholder seeking a repurchase of her Lord Baltimore shares must agree on the purchase price.").  The implied covenant cannot conjure up "contractual protections that [BCG] failed to secure for [itself] at the bargaining table."  *S. Track & Pump*, 623 F. Supp. 2d at 563 (quoting *Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697, 707 (Del. Ch. 2004)); *see also Kuroda*, 971 A.2d at 888 ("The implied covenant cannot be invoked to override the express provisions of a contract.").

Because BCG alleges no specific implied obligation that the Court should read into the SOW—let alone any implied obligation governing "unanticipated event[s] that may not have or could not have been considered prior to executing the contract"—BCG fails to allege facts showing this is the "rare[]" case where the parties "clear[ly] . . . would have agreed" to obligations that don't appear in the contract. *See Truinject*, 2020 WL 70981, at *13–14; *Cartel Media Grp. LLC v. Barone*, 2021 WL 3673215, at *5 (Del. Super. Aug. 16, 2021).

### 3.   <u>BCG fails to allege facts showing breach of any implied</u> <u>obligations</u>.

Even assuming, arguendo, BCG could somehow overcome its failure to allege obligations that "were so fundamental that the parties would not have needed to negotiate or memorialize [them]," *vMedex*, 2020 WL 4925512, at *8, its implied-covenant claim still fails because it hasn't adequately alleged breach of any implied covenant.

BCG doesn't allege any facts to support its conclusory assertion that GameStop's requests for discounts were "unreasonable" or "unsupported." Am. Compl. ¶¶ 14, 46. Likewise, although BCG makes the conclusory allegation that GameStop refused to pay variable fees even after GameStop gave its "specific agreement as to the underlying projected profit improvements," BCG never identifies those allegedly agreed-upon projections or provides any information that would put GameStop on notice of the particular workstreams BCG refers to. Am. Compl. ¶ 33; *see also id.* ¶ 42(a). Nor does BCG offer quantitative benchmarks for gauging any requested discounts. Rather than make "a showing," BCG relies to no avail on "blanket assertion[s] of entitlement to relief." *See Twombly*, 550 U.S. at 555 & n.3; *Sharma v. Trizetto Corp.*, 2016 WL 4764821, at *3 (D. Del. Sept. 12, 2016) (dismissing claim for failure to negotiate in good faith where plaintiff didn't explain why alleged conduct was unreasonable); *Midwest Railcar Corp. v. Everest Railcar Servs., Inc.*, 2017 WL 1383765, at *5 (S.D.N.Y. Apr. 13, 2017) ("[A] plaintiff must allege the

specific instances or acts that amounted to the breach; generalized allegations and grievances will not suffice." (internal quotation marks omitted)).

Equally conclusory is BCG's contention that "GameStop's cancellation of . . . meetings prevented the parties from engaging in discussions to confirm fees owed to BCG." Am. Compl. ¶ 36.  For example, BCG doesn't allege any unrequited attempts to reschedule, or that GameStop stymied all other avenues for discussing BCG's estimated profit improvements or variable fees. Its passing assertion that GameStop refused to "provide necessary data, feedback and approvals of projected profit improvements as required by the SOW," Am. Compl. ¶ 42(d), is yet another "bald assertion[]" because no allegations reveal what data was purportedly withheld or why it was necessary, *Omega*, 2021 WL 2036672, at *2 (internal quotation marks omitted).

Accordingly, BCG fails to sufficiently plead breach of an implied obligation to properly negotiate BCG's variable fees or the profit projections used to calculate them.  *See Sharma*, 2016 WL 4764821, at *3 (recognizing that refusal to disclose requested information didn't show failure to negotiate in good faith where contract didn't require specific disclosures and plaintiff "essentially" alleged defendant "did not, upon first request, turn over all of the information"); *Midwest Railcar*, 2017 WL 1383765, at *4–5 (failure to negotiate for five months didn't raise inference of failure to negotiate in good faith).

## V.  CONCLUSION

For the foregoing reasons, GameStop respectfully requests that the Complaint be dismissed, and that the Court grant such other relief as may be appropriate.  Because permitting further amendment of the Complaint would be futile, GameStop respectfully requests that this Court dismiss this case with prejudice.  *See Miller v. Pa.*, 588 F. App'x 96, 97 (3d Cir. 2014).

/s/ John M. Seaman

John M. Seaman (#3868)
E. Wade Houston (#6289)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
Telephone: (302) 778-1000

OF COUNSEL:

Trey Cox
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3256

Dated:  August 15, 2022

*Attorneys for Defendant GameStop Corp.*