## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE BOSTON CONSULTING GROUP, INC., a Massachusetts corporation,<br><br>Plaintiff,<br><br>v.<br><br>GAMESTOP CORP., a Delaware corporation,<br><br>Defendant. | C.A. No. 1:22-00363-CJB |

### DEFENDANT GAMESTOP'S REPLY BRIEF
### IN SUPPORT OF ITS MOTION TO TRANSFER VENUE

OF COUNSEL:

Trey Cox
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Tel: (214) 698-3256
tcox@gibsondunn.com

Dated:  August 16, 2022

John M. Seaman (#3868)
E. Wade Houston (#6289)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
Tel: (302) 778-1000
seaman@abramsbayliss.com
houston@abramsbayliss.com

*Attorneys for Defendant GameStop Corp.*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    A.    GameStop's consent to a Magistrate Judge does not preclude transfer to the Northern District of Texas. ........................................................................................ 2

    B.    The balance of interests strongly favors transferring this case to the Northern District of Texas. ................................................................................................. 2

CONCLUSION............................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Affymetrix, Inc. v. Synteni, Inc.*,
  28 F. Supp. 2d 192 (D. Del. 1998)........................................................................................4

*Applied Predictive Techs., Inc. v. MarketDial, Inc.*,
  2019 WL 2745724 (D. Del. July 1, 2019) ............................................................................8

*Ceradyne, Inc. v. RLI Ins. Co.*,
  2021 WL 3145171 (D. Del. July 26, 2021) ..................................................................7, 8, 9

*Express Mobile, Inc. v. Web.com Grp., Inc.*,
  2020 WL 3971776 (D. Del. July 14, 2020) ........................................................................10

*Harris v. Lord & Taylor LLC*,
  2019 WL 1854562 (D. Del. Apr. 25, 2019).......................................................................6, 9

*Illumina, Inc. v. Complete Genomics, Inc.*,
  2010 WL 4818083 (D. Del. Nov. 9, 2010) ...........................................................................8

*Ioannides v. Marika Maritime Corp.*,
  928 F. Supp. 374 (S.D.N.Y. 1996).......................................................................................5

*Jaramillo v. DineEquity, Inc.*,
  664 F. Supp. 2d 908 (N.D. Ill. 2009) ...................................................................................2

*Jones Real Estate, Inc. v. Avatel Techs., Inc.*,
  2018 WL 1121537 (S.D. Fla. Mar. 1, 2018).........................................................................2

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)...................................................................................................1

*MEC Res., LLC v. Apple, Inc.*,
  269 F. Supp. 3d 218 (D. Del. 2017)..................................................................................6, 8

*Memory Integrity, LLC v. Intel Corp.*,
  2015 WL 632026 (D. Del. Feb. 13, 2015) ...........................................................................6

*Micron Tech., Inc. v. Rambus Inc.*,
  2007 WL 9771144 (D. Del. Aug. 29, 2007) ........................................................................5

*MoneyCat Ltd v. PayPal Inc.*,
  2014 WL 2042699 (D. Del. May 15, 2014) .....................................................................6, 8

*Nilssen v. Everbrite*,
  2001 WL 34368396 (D. Del. Feb. 16, 2001) .......................................................................4

*NST Glob., LLC v. Sig Sauer, Inc.*,
   2019 WL 2994696 (D. Del. July 9, 2019) ...............................................................................9

*Pennwalt Corp. v. Purex Indus., Inc.*,
   659 F. Supp. 287 (D. Del. 1986) ..........................................................................................10

*Salamone v. Gorman*,
   106 A.3d 354 (Del. 2014) ....................................................................................................10

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (3d Cir. 1970) ....................................................................................................9

*Signal Tech, LLC v. Analog Devices, Inc.*,
   2012 WL 1134723 (D. Del. Apr. 3, 2012) ...........................................................................10

*United States v. Swift & Co.*,
   158 F. Supp. 551 (D.D.C. 1958) ............................................................................................8

*Young & Assoc. Public Relations v. Delta Air Lines*,
   216 F.R.D. 521 (D. Utah 2003) .............................................................................................5

**OTHER AUTHORITIES**

Marcel Kahan & Ehud Kamar, *Price Discrimination in the Market for Corporate Law*,
   86 Cornell L. Rev. 1205 (2001) .............................................................................................7

## INTRODUCTION

Defendant GameStop Corp. ("GameStop") is headquartered in Texas. The statement of work ("SOW") that is the core of this dispute was negotiated in Texas, executed in Texas, and the majority of the tens of thousands of hours that Boston Consulting Group ("BCG") performed under the SOW were performed onsite at the GameStop Store Support Center in Texas. All of GameStop's current employees who were involved in the negotiation and performance of the SOW reside in Texas. BCG, for its part, is incorporated in and has its principal place of business in Massachusetts. BCG employees who were involved in the negotiation and performance of the SOW reside all over the world, including several in Texas. The only relevant ties to this forum are two third-party witnesses who are within the subpoena power of this Court and the fact that the SOW is governed by Delaware law. But, as more fully set forth below and in GameStop's Opening Brief, these ties are outweighed by the balance of the *Jumara* factors that weigh in favor of transfer of this case to the Northern District of Texas.

## ARGUMENT

The convenience of the parties, the convenience of third-party witnesses, and the interests of justice all counsel in favor of transfer to the Northern District of Texas. Contrary to BCG's assertion, GameStop's consent to this Court's jurisdiction does not affect, let alone preclude, GameStop's motion to transfer under 28 U.S.C. § 1404(a). Further, the balance of private and public interests under *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) favor transfer. The core events in this matter arose within the Northern District of Texas, and that venue is more convenient for the parties and witnesses, especially third-party witnesses, most of whom are within the subpoena power of the Northern District of Texas. Accordingly, the Court should transfer this action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

### A. GameStop's consent to a Magistrate Judge does not preclude transfer to the Northern District of Texas.

BCG improperly seeks to punish GameStop for consenting to the jurisdiction of this Court. On May 27, 2022, the parties submitted a Notice of Consent to Proceed in this Court. D.I. 10. BCG argues that because "GameStop has already expressly consented to conducting trial in this District[,]" "[n]othing in GameStop's motion supports transferring this case and revisiting GameStop's consent to jurisdiction." Opp'n at 7, 21–22. But BCG's argument conflates two separate and distinct legal principles: (1) whether GameStop is subject to this Court's jurisdiction—which GameStop does not dispute; and (2) whether transfer to a different forum for convenience is appropriate under 28 U.S.C. § 1404(a). A "defendant does not waive the right to request a transfer of venue under 28 U.S.C. § 1404(a) by consenting to the jurisdiction of a magistrate judge to decide the case." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 917 (N.D. Ill. 2009); *see also Jones Real Estate, Inc. v. Avatel Techs., Inc.*, 2018 WL 1121537, at *7 (S.D. Fla. Mar. 1, 2018). BCG "misunderstand[s] the effect of consenting to this Court's jurisdiction under 28 U.S.C. § 636(c)(1)." *Jaramillo*, 664 F. Supp. 2d at 917. GameStop has agreed only that the court "will decide all motions brought before the court— including this motion to transfer venue. The consent to a magistrate judge does not prevent [GameStop] from seeking to transfer this case to [the Northern District of Texas]." *Id.*

### B. The balance of interests strongly favors transferring this case to the Northern District of Texas.

On balance, the public and private interests recognized in *Jumara* warrant transfer. The following seven factors support transfer:

**Convenience for Witnesses:** The Northern District of Texas would be a more convenient forum for third-party witnesses. Of the eight relevant third parties that GameStop has

identified, only one is likely subject to this Court's subpoena power while the remainder are located in Texas:

| Relevant Third Parties | | |
|---|---|---|
| **Name** | **Location** | **Relevance** |
| Jim Bell | Dallas-Fort Worth Metropolitan Area, Texas (upon information and belief) | GameStop's former CFO who BCG alleges, among other things, "often demanded various unsupported reductions to BCG's fees . . . and often refused to pay at all." Compl. ¶ 29. |
| Frank Hamlin | Dallas-Fort Worth Metropolitan Area, Texas (upon information and belief) | GameStop's former Chief Customer Officer involved in the GameStop loyalty program workstream performed under the SOW. |
| Chris Homeister | Dallas-Fort Worth Metropolitan Area, Texas (upon information and belief) | GameStop's former Executive Vice President and Chief Merchandising Officer involved in multiple SOW workstreams. |
| Amir Yeganehjoo | Dallas-Fort Worth Metropolitan Area, Texas (upon information and belief) | GameStop's former Senior Director of Corporate Finance who participated in negotiating the SOW. |
| Dan Kaufman | Philadelphia, Pennsylvania (upon information and belief) | GameStop's former General Counsel and Chief Transformational Officer who allegedly negotiated the SOW and served until June 2020 "as the primary point of contact for GameStop and worked closely with BCG to manage the project." Compl. ¶¶ 6, 12. |
| George Sherman | Dallas-Fort Worth Metropolitan Area, Texas (upon information and belief) | GameStop's former CEO who signed the SOW. |
| Todd Gathings | Dallas-Fort Worth Metropolitan Area, Texas (upon information and belief) | GameStop's former Vice President of Strategic Program Management involved in SOW workstreams. |
| Joe DePinto | Dallas-Fort Worth Metropolitan Area, Texas (upon information and belief) | Former BCG Consultant engaged on SOW workstreams. |

BCG implies that it was incumbent on GameStop to locate and communicate with each of its former employees who might have relevant information in this case and obtain assurances that each of the former employees would not "actually" be available for a trial set nearly two years

3

away.  But "[a] party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power."  *Nilssen v. Everbrite*, 2001 WL 34368396, at *2 (D. Del. Feb. 16, 2001); *see also Affymetrix, Inc. v. Synteni, Inc.,* 28 F. Supp. 2d 192, 205 (D. Del. 1998) ("[T]he mere assurance that these individuals will 'appear at trial is not the same thing as having them amenable to the subpoena power of the trial court.'").  For "even previously cooperative witnesses may become reluctant participants where a trial in a distant state such as Delaware promises the incurrence of substantial, prolonged inconvenience."  *Affymetrix*, 28 F. Supp. 2d at 205.  Because the third-party witnesses GameStop has identified are not located within the subpoena power of this Court, their availability at trial is not guaranteed regardless of any assurances they might now provide.

BCG points to Dan Kaufman and two additional witnesses who are within the scope of the Court's subpoena power because they are located in Philadelphia:  Frank Petruzielo and Michael Friedman.  Opp'n at 15; Harris Decl. ¶¶ 3–4.  But Mr. Petruzielo is a *current* Director at BCG, and therefore his location is not relevant to the convenience-of-the-witnesses inquiry.  *Affymetrix*, 28 F. Supp. 2d at 203 ("[W]itnesses who are employed by a party carry no weight" because "each party is able, indeed obligated to produce the attendance of its own employees for trial.").  Mr. Friedman was GameStop's outside counsel.  Opp'n at 9, 13.  But the fact that Mr. Kaufman and Mr. Friedman are within the subpoena power of this Court is far outweighed by the *seven* key witnesses that GameStop identified above who would be subject to the Northern District of Texas's subpoena power.

BCG downplays the significance of the many third-party witnesses who live beyond the subpoena power of this Court by arguing that the parties could present the testimony of these

witnesses by deposition video at trial. Opp'n at 17. However, "[c]ourts have consistently recognized . . . that live testimony is preferable to deposition . . . ." *Micron Tech., Inc. v. Rambus Inc.*, 2007 WL 9771144, at *2 (D. Del. Aug. 29, 2007); *see also Ioannides v. Marika Maritime Corp.*, 928 F. Supp. 374, 378–79 (S.D.N.Y. 1996) (noting that "depositions are not an adequate substitute where live testimony is reasonably available"); *Young & Assoc. Public Relations v. Delta Air Lines*, 216 F.R.D. 521, 522 (D. Utah 2003) (noting that "[t]he preference for live testimony at trial rather than deposition testimony as a substitute is uniformly stressed in case law"). This factor weighs strongly in favor of transfer.

**Defendant's Venue Preference**: BCG barely acknowledges GameStop's venue preference, simply asserting that it "deserves little or no weight." Opp'n at 6. But GameStop's preferred forum is the most logical place to litigate this dispute because the Northern District of Texas is where the operative events giving rise to this action arose. Moreover, key potential witnesses are located in Texas, and none are located in Delaware. GameStop's preference also favors transfer because it is headquartered in the Northern District of Texas.

**Where the Claim Arose**: BCG concedes that "meetings and work between the parties did take place in Texas." Opp'n at 18. BCG argues, however, that Texas "is not the only relevant location" and emphasizes that it performed work in Paris, London, Washington D.C., and Philadelphia. Opp'n at 18–19. BCG misses the point. GameStop acknowledges that *some* of the tens of thousands of hours of work performed related to the SOW may have been performed outside of Texas. But BCG does not dispute GameStop's contention that the *majority* of the tens of thousands of hours BCG performed under the SOW were performed onsite at the GameStop SSC in Texas and that the "Thermometer Meetings" that are central to this dispute occurred at the GameStop SSC in Texas. *See* GameStop's Opening Br. in Supp. of Mot. to

5

Transfer ("GameStop Br.") at 10.  Critically, "[t]here is no indication that any of the claims arose in Delaware." *Harris v. Lord & Taylor LLC*, 2019 WL 1854562, at *3 (D. Del. Apr. 25, 2019).

**Convenience of the Parties**:  In analyzing this factor, BCG focuses on the costs of discovery, which "will be done from the parties' respective repositories and produced electronically." Opp'n at 14.  But the "convenience of the parties" factor does not look to the costs of discovery.  Instead, the Court should consider "(1) the parties' physical location; (2) *the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes*; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *See MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017) (emphasis added) (quoting *Memory Integrity, LLC v. Intel Corp.*, 2015 WL 632026, at *4 (D. Del. Feb. 13, 2015)).  GameStop is headquartered in Grapevine, Texas, and many of its key witnesses and the potential third-party witnesses are there too.  "[T]here is clearly a convenience advantage in allowing [GameStop] to litigate nearer its headquarters." *MoneyCat Ltd v. PayPal Inc.*, 2014 WL 2042699, at *5 (D. Del. May 15, 2014).  By contrast, the District of Delaware is near neither GameStop's nor BCG's headquarters.  "Overall, this factor weighs in favor of transfer because the parties' physical locations are not convenient to Delaware and [BCG's] litigation costs will likely remain the same because its . . . employees must travel even if we do not transfer venue." *MEC Res.*, 269 F. Supp. 3d at 226.

BCG asserts that GameStop's Bylaws somehow prove that "GameStop prefers to litigate in Delaware," Opp'n at 7.  GameStop's Bylaws, however, provide only that Delaware shall be the exclusive jurisdiction for "(a) any derivative action or proceeding brought by or in the name of the Corporation, (b) any action asserting a claim of breach of a fiduciary duty owed by any

6

director, officer or other employee of the Corporation to the Corporation or to the Corporation's stockholders, (c) any action arising pursuant to any provision of the Delaware General Corporation Law or the Certificate of Incorporation or these By-Laws, or (d) any action asserting a claim against the Corporation governed by the internal affairs doctrine." Opp'n, Ex. B at 31. The Bylaws' forum-selection clause concerns disputes involving the internal affairs of a Delaware corporation; it says nothing about favoring Delaware courts for a third-party breach-of-contract dispute like the claim BCG asserts in this case. And this makes sense. The Delaware Court of Chancery specializes in Delaware corporate law. *See, e.g.*, Marcel Kahan & Ehud Kamar, *Price Discrimination in the Market for Corporate Law*, 86 CORNELL L. REV. 1205, 1212 (2001) (observing that "[m]embers of the [Chancery] court . . . have ample opportunity to develop expertise on matters of Delaware corporate law and have developed a national reputation for handling cases expeditiously"). It follows that GameStop would want to avail itself of the Court of Chancery's expertise in resolving the stockholder litigation itemized in its Bylaws. By contrast, the Bylaws do not render Delaware a convenient venue for run-of-the-mill contract actions.

**Local Interest in Deciding Controversies at Home**: BCG incorrectly argues that Delaware and Texas have an equal interest in deciding this action. BCG points to the fact that GameStop is a Delaware corporation. Opp'n at 21. But BCG is a Massachusetts corporation, and Delaware's "interest is not necessarily as strong as it would be in litigation solely among Delaware corporations." *Ceradyne, Inc. v. RLI Ins. Co.*, 2021 WL 3145171, at *8 (D. Del. July 26, 2021) (internal quotation marks omitted). Moreover, BCG incorrectly argues that there are no allegations of injuries in Texas. Opp'n at 21. Contrary to BCG's argument, the operative facts in this case arose primarily in the Northern District of Texas. *See* GameStop Br. at 10.

7

"[W]hen the alleged wrongdoing occurs in another jurisdiction, this Court has recognized that the other jurisdiction has a stronger interest in deciding the dispute." *Ceradyne*, 2021 WL 3145171, at *8.

**Practical Considerations**:  Practical considerations weigh in favor of transfer because "[w]itnesses and evidence are located in [Texas] but not in Delaware." *Applied Predictive Techs., Inc. v. MarketDial, Inc.*, 2019 WL 2745724, at *5 (D. Del. July 1, 2019).  Texas "has subpoena power that it can exercise over a number of important witnesses in this case; as opposed to Delaware which is lacking subpoena power over such witnesses." *Illumina, Inc. v. Complete Genomics, Inc.*, 2010 WL 4818083, at *5–6 (D. Del. Nov. 9, 2010).  Witnesses that are not located in Texas would have to travel regardless of whether the trial is in Delaware or Texas.  BCG emphasizes that the Court has already entered a Scheduling Order and Protective Order, which would have to be restarted after a transfer, but "[t]his case is in its early stages" and transfer will not cause any material delay in this litigation. *MoneyCat Ltd.*, 2014 WL 2042699 at *3 (citing *United States v. Swift & Co.,* 158 F. Supp. 551, 560 (D.D.C. 1958) and noting that the court granted a motion to transfer while a summary judgment motion was pending).  Practical considerations therefore weigh in favor of transfer.

**Location of Books and Records**:  Although the parties have already stipulated that the relevant files in this action can and will be produced electronically pursuant to the Court's ESI Order, D.I. 30 at 2, this factor still weighs slightly in favor of transfer.  "While technology reduces the importance of this factor, . . . it is improper to ignore [it] entirely." *MEC Res.*, 269 F. Supp. 3d at 226 (internal quotation marks omitted).  In *Harris*, this Court granted a motion to transfer, holding that this factor weighted in favor of transfer despite the entry of an ESI Order because "the majority of records have been identified as being available in [the transferee

8

forum], albeit not exclusively, and no records have been identified as available in [the District of Delaware]." *Harris*, 2019 WL 1854562, at *5.

Three of the remaining factors are neutral:

**Enforceability of Judgment**: BCG argues that "[t]here is no dispute that a judgment entered in this Court would be enforceable." Opp'n at 20. BCG, however, does not dispute that a "judgment entered in this matter would be equally enforceable in this district as the [Northern District of Texas]." *Ceradyne*, 2021 WL 3145171, at *7. This factor is therefore neutral.

**Relative Difficulty in Two Fora Resulting from Court Congestion:** Both this Court and the Northern District of Texas carry substantial caseloads, so this factor is neutral. BCG offers no substantiation for its bald assertion that transfer "would likely result in a later trial date than this Court has already set," particularly because the trial is not scheduled to begin until April 15, 2024. Opp'n at 21; D.I. 32.

**Public Policies of the Fora:** This factor is neutral because although Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts, that "concern is irrelevant since Plaintiff is not a Delaware corporation, and Defendant, which is a Delaware corporation, does not want to litigate here." *NST Glob., LLC v. Sig Sauer, Inc.*, 2019 WL 2994696, at *3 (D. Del. July 9, 2019). BCG does not offer any public policies favoring resolution in Delaware. *See* Opp'n at 21.

The remaining two factors weigh minimally against transfer:

**Plaintiff's Choice of Forum**: Although "plaintiff's choice of a proper forum is **a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed,**" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (cleaned up) (emphasis added), this factor weighs only minimally against transfer. Numerous courts have

9

recognized that where, as here, the plaintiff "has no connection to Delaware other than its choice to sue here," the plaintiff's choice of forum "will not dominate the balancing to the same extent as it otherwise might." *Express Mobile, Inc. v. Web.com Grp., Inc.*, 2020 WL 3971776, at *2 (D. Del. July 14, 2020); *see also Signal Tech, LLC v. Analog Devices, Inc.,* 2012 WL 1134723 at *2 (D. Del. Apr. 3, 2012); *Pennwalt Corp. v. Purex Indus., Inc.,* 659 F. Supp. 287, 289 (D. Del. 1986). BCG has not offered any other connections to Delaware; it instead focuses improperly on its connections to the areas around Delaware. *See* Opp'n at 10–11.

**Trial Judge's Familiarity with Applicable State Law**: The parties agree that this factor weighs against transfer because this Court is more familiar with Delaware law, which governs the SOW. Although the factor weighs against transfer, it does so only slightly. "Delaware law adheres to the objective theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable third party." *Salamone v. Gorman*, 106 A.3d 354, 367–68 (Del. 2014) (internal quotation marks omitted). The Northern District of Texas is perfectly capable of applying the black-letter contract law of Delaware.

## CONCLUSION

GameStop therefore respectfully requests that this Court transfer this case to the Northern District of Texas to serve the convenience of the parties and witnesses and the interests of justice.

|  |  |
|---|---|
| | /s/ John M. Seaman |
| OF COUNSEL: | John M. Seaman (#3868) |
| | E. Wade Houston (#6289) |
| Trey Cox | ABRAMS & BAYLISS LLP |
| GIBSON, DUNN & CRUTCHER LLP | 20 Montchanin Road, Suite 200 |
| 2001 Ross Avenue, Suite 2100 | Wilmington, Delaware 19807 |
| Dallas, Texas 75201 | Tel: (302) 778-1000 |
| Tel: (214) 698-3256 | |
| | |
| Dated: August 16, 2022 | *Attorneys for Defendant GameStop Corp.* |