1       IN THE UNITED STATES DISTRICT COURT

2       IN AND FOR THE DISTRICT OF DELAWARE

3

BOSTON CONSULTING GROUP, INC.,      )
4                                           )
        --------------------Plaintiff,      )
5                                           ) Case No.
        vs.                                 ) 22-CV-363-CJB
6                                           )
        GAMESTOP CORPORATION,               )
7                                           )
        --------------------Defendant.      )
8
                TRANSCRIPT OF STATUS CONFERENCE
9

10      STATUS CONFERENCE had before the Honorable

11   Christopher J. Burke, U.S.M.J., via Microsoft Teams on the

12   5th of April, 2024.

13                      APPEARANCES

14      FARNAN LLP
             BY:  BRIAN FARNAN, ESQ.
15
                       -and-
16
        BAKER MCKENZIE
17           BY:  EDWARD TOTINO, ESQ.
                  NANCY SIMS, ESQ.
18                MICHAEL BOARDMAN, ESQ.

19                       Counsel for Plaintiff

20

        ABRAMS & BAYLISS LLP
21           BY:  CHRIS CANNATARO, ESQ.
                  WADE HOUSTON, ESQ.
22
                       -and-
23

        GIBSON DUNN & CRUTCHER
24           BY:  TREY COX, ESQ.
                  JOHN ADAMS, ESQ.
25
                       Counsel for Defendant

1          THE COURT:  As we're on the record here today,

2    let me first say we're here for the matter of Boston

3    Consulting Group, Inc., versus GameStop Corp.  This is Civil

4    Action Number 22-363-CJB here in our court.  We're here

5    today for a status videoconference to discuss trial-related

6    issues with the parties.  Before we go further, let's have

7    counsel for each side identify themselves for the record.

8    We'll start first with counsel for the plaintiff's side, and

9    we'll begin there with Delaware counsel.

10          MR. FARNAN:  Good morning, Your Honor.  Brian

11   Farnan on behalf of the plaintiff.  With me is Edward

12   Totino, Nancy Sims, and Michael Boardman, all from Baker

13   McKenzie.

14          THE COURT:  Welcome, and thank you.  We'll do

15   the same for counsel for Defendant's side, again beginning

16   with Delaware counsel.

17          MR. HOUSTON:  Good morning, Your Honor.  For

18   GameStop it's Wade Houston and Chris Cannataro of Abrams &

19   Bayliss and Trey Cox and John Adams of Gibson, Dunn &

20   Crutcher.  With Your Honor's permission, Mr. Cox and

21   Mr. Adams will handle this presentation for us today.

22          THE COURT:  Okay.  Great.  Thank you.

23          So, counsel, I noted on today's status

24   conference what I really wanted to be able to discuss and

25   talk with you about is just discussing a couple of things

1    related to the trial in the case, including the trial date

2    itself, the setting of pretrial conference date, and hearing

3    a bit from the parties just about the issue of length of

4    trial and, obviously, at this stage we're talking about

5    length of trial assuming the entire case as it currently

6    stands is in and going to trial, so I thought we would

7    discuss those issues.

8            Let me first say a couple of things to give you

9    info from my perspective and then I'll hear from each side

10    to talk more about these questions.

11            The first is in the letter that the parties sent

12    me back on February 20th -- and I apologize for having to do

13    so, but my schedule is crazy -- to move the previously

14    scheduled trial date.  I indicated to the parties that I was

15    sorry to have to do that and I had availability and would

16    work to be able to try to reschedule the trial for some

17    point in the spring or summer, but I understand from the

18    parties' letter that, understandably, counsel and clients

19    and witnesses had other commitments, and the first jointly

20    available week of trial they had available was the week of

21    September 16, 2024, so the Court asked the parties to hold a

22    week of trial starting on the 16th.  And having thought

23    through it -- and we've been doing the same on my

24    calendar -- my instinct now is to say let's use that date.

25    It's a for me a double-booked trial week but because your

1    trial was moved, I would give you first priority for the

2    state date on the 16th.  So my current inclination is to say

3    let's put that in stone and go with it.

4              Now, let me tell you about one wrinkle, which is

5    that in an ideal world, we'd go Monday through Friday --

6    and, again, we're going to discuss whether we go further in

7    terms of the number of days related for trial.  The problem

8    is that week, on Friday, which is Friday, September 20th,

9    I'm overseeing a patent law conference here in the district

10   being put on by our district's Federal Bar Association

11   chapter and the Federal Circuit Bar Association.  It's a

12   prior commitment before knowing about this new trial week.

13   So if we're going with the 16th as a start date, what that

14   would mean is that we would be having trial on the 16th,

15   17th, 18th, 19th, and to the extent we need more trial days,

16   those days would pick up on the 23rd and 24th, which is the

17   next week.

18             We would have the ability potentially, if you

19   wanted to or needed to, to pick a jury the Friday before,

20   the 13th, depending how we wanted to focus trial

21   presentations beginning on the 16th.  In any event, I wanted

22   to let you know that.

23             I guess for our first order of business then,

24   I'll hear from either side, understanding the Court's

25   inclination at this point is to say let's lock in a trial

1    start date, let's make it September 16th, we know you won't

2    be able to use the Friday but we would go into the next week

3    if we needed to, but that would be my plan.  Let me hear if

4    there's any thoughts or objections to that plan from either

5    side before going forward.  I'll hear first from Plaintiff's

6    counsel.

7                 MR. TOTINO:  Your Honor, Ed Totino for

8    Plaintiff.  I think that sounds fine with us.

9                 THE COURT:  Okay.  And on Defendant's side.

10                MR. COX:  Thank you.  Trey Cox on behalf of the

11   defendants.  My only thing is would it be possible, then, to

12   move it into October and start, you know, start either on

13   September 30th or October 7th or something like that to

14   avoid that complication in its entirety?

15                THE COURT:  I think that's probably more trouble

16   than it's worth.  Certainly, some of the weeks you're

17   mentioning, just looking at my calendar, I've either got

18   four or five hearings scheduled for those weeks or other

19   trial dates scheduled.  The 14th and -- the 16th of

20   September and the week after because the parties had

21   identified that for me, we've been keeping that clear.  So I

22   guess unless there is some issue with regard to your side,

23   your witnesses, your ability to go on the 16th and the

24   beginning of the week after, I think we would be keeping

25   that.  Is there any issue on your end?

1          MR. COX:  No, Your Honor.  That's fine.

2          THE COURT:  Okay.  And again, if, ultimately, --

3     one of the things I think Mr. Cox is getting at is if the

4     Court decides that this should, essentially, be a five-day

5     trial -- and just by the way, in our court, a five-day trial

6     essentially means somewhere between 11 or 12 hours per side

7     to present their case -- one way, even if you could not use

8     Friday that week, if you were to do jury selection the

9     Friday before, very possibly you could get in that length of

10    trial in four days.  With deliberations, of course, they

11    could take however long they take.

12          In any event, all right.  What we'll do is the

13    plan will be we're going to go forward with September 16th

14    as our trial start date.  And if we're doing that then what

15    I would plan to do, unless counsel tells me that they're

16    unavailable, I would typically be planning to have the

17    pretrial conference on Friday, September 6th, and I'd be

18    intending to schedule that at 2:00 p.m.  So 2:00 p.m. on

19    Friday, September 6th.  Any objection if we were to set that

20    as our pretrial conference date on Plaintiff's side?

21          MR. TOTINO:  No, Your Honor.

22          THE COURT:  Okay.  And on Defendant's side?

23          MR. COX:  No, Your Honor.

24          THE COURT:  Okay.  All right.  So we'll put up

25    on order that confirms the trial date beginning on

1    September 16th and the pretrial conference being at

2    2:00 p.m. in my courtroom on Friday, September 6th.

3              Okay.  Next from there, let's talk about length

4    of trial.  And as I had noted in a prior order, the parties

5    had, in their original scheduling order, included reference

6    to the trial being a seven-day trial, and I'll just tell you

7    generally seven-day trials are unusual in our court, and

8    this is a court that handles a really large, significant

9    amount of complex federal litigation.

10             To give you an example, obviously, we handle

11   many, many complex pieces of federal patent litigation in

12   our court, and as a rule of thumb, it's very rare for a

13   litigation like that to have more than five days allocated

14   for trial.  That is, more than 11 to 12 hours per side to

15   try the case.  Indeed, some of our judges, it has been years

16   and years, and those are often very complex matters of

17   federal litigation involving multiple patents, significant

18   numbers of different defenses, and disputes involving things

19   like infringement, invalidity, damages that are very complex

20   to present, and yet those cases are routinely tried, as

21   Delaware counsel knows, in five days.

22             And, you know, some of those requirements are

23   important at times and helpful to be able to have a

24   manageable case for a jury to understand and to be able to

25   do good work on in our court.  It requires parties to make

1    choices about what kinds of evidence they put on and which

2    witnesses that they highlight and which documents they

3    introduce, et cetera.  And in the main, that's a good thing

4    because it requires parties to focus on the most important

5    evidence, the most important claims, the most important

6    issues to bring.

7              That said, of course, some cases are more

8    complicated than that.  Some cases require more than what

9    I'm calling a five-day trial depending on the nature of the

10   case, the size of the issues, and the witnesses and

11   complexity, et cetera.  That's the backdrop as to one of my

12   prior questions I wondered about and questioned whether a

13   seven-day trial was needed here and whether this case

14   shouldn't be -- which is a complex but contract dispute.

15   It's at heart a breach of contract dispute between two

16   corporate entities -- whether this wouldn't be more like a

17   five-day trial.

18             And in the parties' letter from February 20th,

19   the defendant said we think it could be a five-day trial,

20   but the plaintiffs said, no, we think that the complexity

21   involved means something closer to seven days.  What would

22   that mean, seven days?  It would probably mean hours

23   allocated to trial something like 17 or 18 hours.  Again, it

24   is rare.  It happens, but it's rare that we have trials

25   where parties are given that much trial time in our court

1    even for very complex cases.

2              With all that as prelude, I wanted to get the

3    parties and give them a chance to address for me their views

4    about what number of days or hours should be allocated for

5    trial in light of what, again, assuming that none of the

6    case was dismissed at summary judgment, what we would be

7    looking at at a trial here.

8              Let's start with Plaintiff's counsel, give them

9    a chance to tell me more about what they'd like to add, and

10   then I'll give Defendant's counsel the chance to do the

11   same.

12             MR. TOTINO:  Thank you, Your Honor.  Ed Totino

13   for the plaintiff.

14             As we said in the letter to the Court, even

15   though it's a breach of contract and there's one contract,

16   it involves 25 separate initiatives, so each of those

17   initiatives are going to have to be explained to the jury,

18   which is why it will take that long.  Each initiative is

19   somewhat complex.  It's going to take time to explain what

20   happened, the positions, and why BCG is entitled to the fees

21   on the initiative.

22             I think if this was a Court trial, if the

23   parties were to proceed by way of Court trial as opposed to

24   jury trial, I think we could certainly probably get it done

25   in the five days, but with a jury trial, given the 25

1    initiatives in dispute, seven days seems more appropriate.

2            THE COURT:  Mr. Totino, no pressure from me, but

3    just because you mentioned it, has there been discussion

4    between the parties about this case being a bench trial?

5    You raised it, so I wanted to ask.

6            MR. TOTINO:  I have not had discussions, Your

7    Honor.  I believe there were other discussions we were not

8    involved in.  We're certainly willing to discuss it with the

9    defendants.

10            THE COURT:  Maybe before we end today, I'll

11    just -- and I'll hear from the defendant's side too.  One

12    thing I may do is ask the parties to meet-and-confer about

13    whether there is joint interest in the trial being a bench

14    trial as opposed to a jury trial.  Obviously, only if there

15    was would we do that.  As Mr. Totino says, one of the

16    benefits of that route is the Court has greater flexibility,

17    for example, to be able to stay later on certain days and

18    there are mechanics of the trial process that, if a jury is

19    not involved, that aren't necessary which take time.

20            Mr. Totino, back to your points.  Talking about

21    the 25 different initiatives, I guess maybe one question

22    that jumps out to me is, are we expecting that the same or

23    similar witnesses will be discussing each of the initiatives

24    that are at issue?  Or are we expecting that, no, if there's

25    25 initiatives that we're going to be talking about we might

1  have to bring in as many as, you know, five, six, seven,

2  eight, nine, ten different people to talk about them?  Can

3  you give me more sense of that?

4          MR. TOTINO:  Sure.  Some of the witnesses will

5  be discussing, probably, all or most initiatives.  Others

6  will be more cabined to one initiative or another.  So I

7  think it does require more witnesses than otherwise because

8  there's 25 initiatives in dispute, but it's not going to be

9  entirely separate for each initiative.

10          THE COURT:  And then the number of initiatives

11 at issue.  I know what I know about the case, which is

12 largely the various motions and disputes that I've had to

13 resolve as we've gone forward.  And of course, that's always

14 just a slice, not the entirety of what the parties have been

15 dealing with and expect to bring to trial.  I don't remember

16 reading about 25 different initiatives, necessarily, in the

17 complaint or motion to dismiss stages or the parties'

18 letters.  Is there any dispute about how many initiatives we

19 have here that we're going to be trying and what the parties

20 addressed in discovery in that?

21          MR. TOTINO:  I think it may be a little unclear

22 because there were work streams where -- there was less work

23 stream than initiatives.  Each work stream had multiple

24 initiatives, and that's why you get to 25.  Your Honor may

25 be thinking about the work streams.  Mr. Boardman is more

1    familiar with the specifically various initiatives if you

2    want more details on that, but I think that's why maybe Your

3    Honor didn't -- at first blush doesn't think there's 25

4    initiatives in dispute and there may not be.

5                    THE COURT:  Mr. Boardman, anything you want to

6    add in that respect?

7                    MR. BOARDMAN:  Only if Your Honor wants more

8    detail in any particular thing.  It is true there are ten

9    work streams under the SOW that are enumerated that Your

10   Honor may be familiar with, and each one of them separately

11   breaks down into sub initiatives on each one of those.

12   That's how we get to 25.  The parties stipulated to that

13   number -- I can't remember the exact date but there's a

14   filing in the context of a discovery dispute that enumerates

15   them for Your Honor.  I can point to them if I need to.

16                   THE COURT:  Okay.  Because I heard about certain

17   initiatives, for example, that were discussed from my prior

18   opinions, CompuCon or price increases in Europe or PO tech

19   rollout, et cetera.  I think those were initiative names,

20   not work stream names.  Am I right, Mr. Boardman?

21                   MR. BOARDMAN:  Yes, that's correct.

22                   THE COURT:  By the way, Mr. Boardman, your

23   screen is frozen, at least on my end.  I can hear you just

24   fine.  Can't see your face, but otherwise you're good to go.

25                   Bottom line, Mr. Totino, I think what you're

1    saying is we think it's pretty well understand that this

2    trial, assuming summary judgment goes -- doesn't take out

3    any of the case, is going to involve discussion of 25

4    different initiatives, and not -- it's not like we have 25

5    different witnesses talking about them, there will be

6    overlap, but there will be some need for different

7    witnesses.  That's a lot of specifics, and we think that's

8    more than 11 or 12 hours of trial time.  Does that summarize

9    your position.

10              MR. TOTINO:  That does, Your Honor.

11              MS. SIMS:  Your Honor, may I add one point?

12              THE COURT:  Sure.  I think this is Ms. Sims.

13              MS. SIMS:  Yes, Your Honor.  Nancy Sims on

14   behalf of Plaintiff.

15              As Mr. Totino mentioned earlier about the bench

16   trial versus jury trial, I was involved in a discussion he

17   was not involved in, and I noted there's concern about

18   ensuring that we have enough time to put on the evidence in

19   our case, so our client would be willing to proceed with a

20   bench trial in order to gain the benefit of the additional

21   time with the Court and the flexibility.

22              THE COURT:  And I will say, though, and I want

23   you to know and I want to say for the record that it is not

24   as if the parties will forced -- of course, regardless

25   whether there's a bench trial or jury trial, it will be a

1    timed trial.  And I want you to know it's not like the

2    parties are forced or I'm going to be saying if you agree to

3    a bench trial you'll get more hours or more time than you

4    would in a jury trial because I would never put a thumb on

5    the scale of the parties' right to a jury trial in that way.

6                And so I think the main question for the

7    parties, if they were to agree that a bench trial is

8    appropriate, would be, look, do we think this is the best,

9    most efficient way to try the case for our client and our

10   interests?  And it is probably true that in terms of the

11   logistics and scheduling, that kind of a trial would be much

12   easier to fit into one week, even a week where we had Friday

13   off, and there may be benefits to that for the parties.  I

14   want to say on the record that it's not as if the sides will

15   be pressured or forced to pick a bench trial or jury trial

16   in order to get more trial time.

17               Does that make sense?

18               MS. SIMS:  Yes, Your Honor.  Right.  I just want

19   to be clear we don't feel that way and that's not the

20   reasons, but we do feel the flexibility and ability to fit

21   it in that time frame is beneficial, so it's -- on our side,

22   we're fine with proceeding with a bench trial.

23               THE COURT:  Okay.  All right.  Thanks.  Well,

24   then, let me turn to Defendant's counsel to get their take

25   both on the nature of this trial in terms of the amount of

1    days or hours that the Court should allocate, and to the

2    extent they wish to say, although, again, I'll give the

3    parties to talk further after our videoconference if they

4    might have amenability to a bench trial.

5                    Who's going to speak on behalf of the

6    defendant's side?

7                    MR. ADAMS:  Your Honor, John Adams on behalf of

8    the defendant.

9                    Your Honor, I absolutely think that we could

10   spend as many days as we were given talking about the

11   nuances of this case.  There's a lot that could be said, but

12   in light of Your Honor's question of how much time is

13   necessary to get to the issues, we agree that this case

14   could be tried in five days.  We could have witnesses from

15   all levels of the organization getting into details of

16   various initiatives, but, ultimately, there were a few

17   people in charge that would be able to speak to these from

18   our perspective.  And whether it's a bench trial or jury

19   trial, kind of putting this in the crucible or distilling it

20   down in that way would be helpful to really get to the core

21   issues in this case, which do not, in our view, depend on

22   all the details of the various initiatives and really get to

23   the core of was there a breach of the contract or did the

24   parties engage in good faith negotiations, which frankly, I

25   think, cut across whatever the number of initiatives, when

1    you look at it on what the claims are and what the elements

2    are, those issues are much -- there's far fewer of them, and

3    so this case could be tried in a shorter period of time.

4            As to the number of initiatives, that is

5    certainly something that is in dispute.  Mr. Boardman is

6    correct.  For purposes of discovery, we agreed there was a

7    dispute over whether it was everything that was on an

8    invoice or in their discovery requests, and discovery was

9    conducted on approximately 25 initiatives.  However, as a

10   legal matter, there's the question that is before the Court

11   of if something can be an initiative if it wasn't approved

12   in writing.  So I don't want to get into -- I know the

13   question was assuming something is not summary judgment --

14   granted on summary judgment, but that, again, gets to what

15   is the core issue, and what's actually going to be tried

16   here is this -- there are fundamental issues that are, I

17   think, easier to address and don't require going to each of

18   the 25 that are likely to make this, I think, shorter and

19   more concise.

20           As far as the bench trial, I think it's very

21   appealing, certainly to the attorneys here today.  Your

22   Honor has shown great attention to this.  It's just

23   something we'd need to discuss with our clients.  Haven't

24   done so yet and be happy to discuss with Plaintiff's counsel

25   and confer about that going forward.

1          THE COURT:  Okay.  That makes sense.  And I
2    guess, Mr. Adams, in terms of hours for trial, you talked
3    about -- again, obviously, what happens with summary
4    judgment -- it should be clear that what I'm going to plan
5    to do is, after I hear back from the parties about what kind
6    of trial we're having, I'll give them a number of hours that
7    will be allocated to try the case.  That will, of course, be
8    subject to the summary judgment process.  Like,
9    theoretically if something happened at summary judgment that
10   cut a significant amount of the case, it wouldn't make sense
11   to utilize the same number we're thinking about for the
12   entire case we're thinking about as it stood here in
13   April 2024, et cetera.
14         But assuming the entire case as we now know it
15   that discovery has been taken on and is still in goes to
16   trial, I'll give the parties a set number of hours here.  I
17   think you're saying you think the number of witnesses who
18   might speak to the various initiatives, although we could
19   have lots of different people speak to X or Y, you think
20   that there are higher level witnesses that will likely be
21   talking about most of those or the key issues.
22         Is that what you're suggesting?
23         MR. ADAMS:  Yes, Your Honor.
24         THE COURT:  Is there any way I could know more
25   about this stage than the generic summaries the parties have

1    given me?  Is there anything more "finer point" you want to

2    put on that, Mr. Adams?

3              MR. ADAMS:  I'm happy to talk about who was

4    involved in the negotiations and discussions.  I'm only

5    hesitant -- I don't want to wage an argument with opposing

6    counsel unless that's what you're looking for.  This is the

7    C level.  We had everybody in partners in one side to the C

8    Suite and counsel involved on the other.  But it was a large

9    deal, and there were lower-level employees that were also

10   involved in the minutia of the initiatives, and from my

11   perspective, there are a few people, mainly the people that

12   participated as corporate representatives for either side,

13   and there's a corporate representative for each side that

14   testified about the majority of issues in this case, so I

15   think that's how it could be handled.

16             THE COURT:  Okay.  All right.  Anything further,

17   Mr. Adams, on these issues?

18             MR. ADAMS:  No, Your Honor.  Thank you.

19             THE COURT:  All right.

20             And, Mr. Totino, anything you wanted to say in

21   response?

22             MR. TOTINO:  Just briefly, Your Honor.  I think

23   what Mr. Adams said may work out to be true, but we really

24   don't know until we see and may object to some of the higher

25   level witnesses if they don't have personal knowledge of

1    what happened and we would have to bring in the lower-level

2    witnesses or have them ready, at least, so that's one of the

3    concerns we have.

4              THE COURT:  Okay.  All right.  Well, this has

5    been helpful.

6              This is what I would plan to do from here, is

7    this:  To give the parties some time to speak with their

8    clients and meet-and-confer with each other and get back to

9    me to confirm whether or not the parties are jointly

10   requesting that the trial be converted to a bench trial,

11   what would be a sufficient amount of time?  Sounds like the

12   plaintiff's side knows their answer, but on the defendant's

13   side, Mr. Adams, how much time would you guys like to be

14   able to talk amongst yourselves and with the other side and

15   get back to me?

16             MR. ADAMS:  Your Honor, my only hesitation is

17   knowing, for example, travel schedules and if my client is

18   available over the next few days.  Would it be too much to

19   ask for two weeks?

20             THE COURT:  No, that's fine.  I don't think

21   we're under crazy time pressure at this stage, knowing that

22   the trial is going to be in September.  Sure.

23             Why don't we say no later than two weeks from

24   today, the parties -- I'll receive a submission from the

25   parties jointly that will advise whether they wish to

1    convert the trial which is currently scheduled to be a jury

2    trial into a bench trial and provide me with whatever

3    confirmation of that that they think they need to.

4              And after I get that response, I'll issue an

5    order that will set, depending on whether it's a bench trial

6    or jury trial, but will set a number of hours for trial for

7    each side in the case, again, assuming no changes for the

8    case between now and trial through the summary judgment

9    process.

10             So that way, we'll have our trial date, know

11   what kind of trial we're having, know when the pretrial

12   conference is going to be, and the parties will have a good

13   expectation of how many hours they have to try the case.

14             To the extent it's a bench trial, we may be able

15   to work out how those hours will be allocated such that we

16   may be able to go later than we otherwise would and could

17   maybe fit that in the four-day span between the 16th and

18   19th, even if the amount of hours that's granted is the

19   equivalent of a seven-day trial.  I think either way, you'd

20   be able to probably fit that in if the trial day went

21   longer, which you have the ability to do if we have a bench

22   trial.  I'll make a call on that after I hear from the

23   parties and we'll go from there.

24             Otherwise, between now and then, we'll be

25   working on resolving the summary judgment and Daubert

1    motion.  At present, I'm not going to schedule or reschedule

2    argument on it, but in going through those, if between now

3    and then I feel we do need argument on those, we will reach

4    out to counsel to schedule and hopefully get you answers

5    well in advance of pretrial conference date.

6              With all that said, is there anything else

7    procedurally either side wants to mention at this stage

8    before we conclude our status video conference today on the

9    plaintiff's side?

10             MR. FARNAN:  Your Honor, there's one issue, and

11   that is mediation.  I know in some of our cases when we get

12   close to trial, the Court is going to order it to be

13   mediated, and I want to know if Your Honor plans on doing

14   that here.  We could get started now or wait and see.  I

15   wanted to raise that.

16             THE COURT:  Thank you for raising that,

17   Mr. Farnan, because it's something earlier in the call I

18   thought to ask about.  I forgot.  And without telling me the

19   specifics of what was discussed, have there been any efforts

20   between the parties to mediate the case to date?

21             MS. SIMS:  Your Honor, this is Nancy Sims on

22   behalf of Plaintiff.

23             There have not been.  Mr. Adams and I have been

24   in touch about it conceptually.  I think our client would be

25   willing to, in light of the time now -- I guess recency

1   between now and when trial is, we're a few months away, so

2   we would be willing to participate in a mediation if

3   Defendants would be.

4              THE COURT:  Thank you.

5              Mr. Adams, anything you want to add about ADR

6   and mediation?

7              MR. ADAMS:  I'll give Ms. Sims much more credit.

8   I think we've had very fulsome, good discussions about this.

9   At this point, Your Honor, we view mediation wouldn't be

10  productive.  It's something we're willing to confer with and

11  talk to counsel about, but our position currently is that we

12  wouldn't agree to it.

13             MR. COX:  The only thing I would add to that,

14  Your Honor, is, of course, whatever the Court orders, we

15  will comply with fully.

16             THE COURT:  Understood.  Let me do this.  Since

17  I'm going to hear from you jointly two weeks from now with

18  regard to the trial issue, let me ask you to further

19  meet-and-confer, as Mr. Adams suggested, with each other

20  about whether there might be joint interest in mediating and

21  whether the parties jointly think that mediation could lead

22  to a resolution, and I'll at least hear what the sides have

23  to say as to that in their submission back to me.

24             It may be the case, as Mr. Cox alluded to, that

25  even if I hear from one side we don't think it's useful and

1    the other says they think it could, I might still order the

2    parties to do it, but I'd like to give you the chance to

3    talk to each other and amongst yourselves to let me know

4    your thoughts after a little more deliberation.

5            So today is the 5th of April, Friday the 5th, so

6    I'll ask the parties to submit a joint letter to me by no

7    later than April 19th advising me about whether there's

8    joint agreement to conduct a bench trial and the parties'

9    positions on whether an order to participate in mediation

10   would be fruitful.  I'll look for that.

11           After I receive that letter, I'll issue an order

12   regarding the trial and trial time, and, otherwise, I will

13   look forward to working with you as we go forward to the

14   fall.  Okay.  With all that said, to our folks here today, I

15   wish everybody a good day and good weekend and look forward

16   to being in touch in the future.  With that, the Court will

17   stand adjourned.

18                    **C E R T I F I C A T E**

19           I, Deanna L. Warner, a Registered Professional

20   Reporter, do hereby certify that as such Registered

21   Professional Reporter, I was present at and reported in

22   Stenotype shorthand the above and foregoing proceedings.

23

24   _____

Deanna L. Warner, RPR, CSR
25   Official Court Reporter
U.S. District Court

## 1

**11** [3] - 6:6, 7:14, 13:8
**12** [3] - 6:6, 7:14, 13:8
**13th** [1] - 4:20
**14th** [1] - 5:19
**16** [1] - 3:21
**16th** [11] - 3:22, 4:2, 4:13, 4:14, 4:21, 5:1, 5:19, 5:23, 6:13, 7:1, 20:17
**17** [1] - 8:23
**17th** [1] - 4:15
**18** [1] - 8:23
**18th** [1] - 4:15
**19th** [3] - 4:15, 20:18, 23:7

## 2

**2024** [3] - 1:12, 3:21, 17:13
**20th** [3] - 3:12, 4:8, 8:18
**22-363-CJB** [1] - 2:4
**22-CV-363-CJB** [1] - 1:5
**23rd** [1] - 4:16
**24th** [1] - 4:16
**25** [13] - 9:16, 9:25, 10:21, 10:25, 11:8, 11:16, 11:24, 12:3, 12:12, 13:3, 13:4, 16:9, 16:18
**2:00** [3] - 6:18, 7:2

## 3

**30th** [1] - 5:13

## 5

**5th** [3] - 1:12, 23:5

## 6

**6th** [3] - 6:17, 6:19, 7:2

## 7

**7th** [1] - 5:13

## A

**ability** [4] - 4:18, 5:23,
14:20, 20:21
**able** [11] - 2:24, 3:16, 5:2, 7:23, 7:24, 10:17, 15:17, 19:14, 20:14, 20:16, 20:20
**ABRAMS** [1] - 1:20
**Abrams** [1] - 2:18
**absolutely** [1] - 15:9
**action** [1] - 2:4
**ADAMS** [7] - 1:24, 15:7, 17:23, 18:3, 18:18, 19:16, 22:7
**Adams** [1] - 2:19, 2:21, 15:7, 17:2, 18:2, 18:17, 18:23, 19:13, 21:23, 22:5, 22:19
**add** [5] - 9:9, 12:6, 13:11, 22:5, 22:13
**additional** [1] - 13:20
**address** [2] - 9:3, 16:17
**addressed** [1] - 11:20
**adjourned** [1] - 23:17
**ADR** [1] - 22:5
**advance** [1] - 21:5
**advise** [1] - 19:25
**advising** [1] - 2:3
**agree** [4] - 14:2, 14:7, 15:13, 22:12
**agreed** [1] - 16:6
**agreement** [1] - 23:8
**allocate** [1] - 15:1
**allocated** [5] - 7:13, 8:23, 9:4, 17:7, 20:15
**alluded** [1] - 22:24
**amenability** [1] - 15:4
**amount** [5] - 7:9, 14:25, 17:10, 19:11, 20:18
**AND** [1] - 1:2
**answer** [1] - 19:12
**answers** [1] - 21:4
**apologize** [1] - 3:12
**appealing** [1] - 16:21
**APPEARANCES** [1] - 1:13
**appropriate** [2] - 10:1, 14:8
**approved** [1] - 16:11
**April** [4] - 1:12, 17:13, 23:5, 23:7
**argument** [3] - 18:5, 21:2, 21:3
**association** [2] - 4:10, 4:11
**assuming** [6] - 3:5, 9:5, 13:2, 16:13, 17:14, 20:7

**attention** [1] - 16:22
**attorneys** [1] - 16:21
**availability** [1] - 3:15
**available** [3] - 3:20, 19:18
**avoid** [1] - 5:14

## B

**backdrop** [1] - 8:11
**BAKER** [1] - 1:16
**baker** [1] - 2:12
**bar** [2] - 4:10, 4:11
**BAYLISS** [1] - 1:20
**Bayliss** [1] - 2:19
**BCG** [1] - 9:20
**begin** [1] - 2:9
**beginning** [4] - 2:15, 4:21, 5:24, 6:25
**behalf** [6] - 2:11, 5:10, 13:14, 15:5, 15:7, 21:22
**bench** [18] - 10:4, 10:13, 13:15, 13:20, 13:25, 14:3, 14:7, 14:15, 14:22, 15:4, 15:18, 16:20, 19:10, 20:2, 20:5, 20:14, 20:21, 23:8
**beneficial** [1] - 14:21
**benefit** [1] - 13:20
**benefits** [2] - 10:16, 14:13
**best** [1] - 14:8
**between** [9] - 6:6, 8:15, 10:4, 20:8, 20:17, 20:24, 21:2, 21:20, 22:1
**bit** [1] - 3:3
**blush** [1] - 12:3
**Boardman** [6] - 2:12, 11:25, 12:5, 12:20, 12:22, 16:5
**BOARDMAN** [3] - 1:18, 12:7, 12:21
**booked** [1] - 3:25
**Boston** [1] - 2:2
**BOSTON** [1] - 1:3
**bottom** [1] - 12:25
**breach** [3] - 8:15, 9:15, 15:23
**breaks** [1] - 12:11
**BRIAN** [1] - 1:14
**Brian** [1] - 2:10
**briefly** [1] - 18:22
**bring** [4] - 8:6, 11:1, 11:15, 19:1
**Burke** [1] - 1:11
**business** [1] - 4:23

**BY** [1] - 1:14

## C

**cabined** [1] - 11:6
**calendar** [2] - 3:24, 5:17
**CANNATARO** [1] - 1:21
**Cannataro** [1] - 2:18
**case** [27] - 3:1, 3:5, 6:7, 7:15, 7:24, 8:10, 8:13, 9:6, 10:4, 11:11, 13:3, 13:19, 14:9, 15:11, 15:13, 15:21, 16:3, 17:7, 17:10, 17:12, 17:14, 18:14, 20:7, 20:8, 20:13, 21:20, 22:24
**Case** [1] - 1:5
**cases** [5] - 7:20, 8:7, 8:8, 9:1, 21:11
**certain** [2] - 10:17, 12:16
**certainly** [5] - 5:16, 9:24, 10:8, 16:5, 16:21
**certify** [1] - 23:20
**cetera** [4] - 8:3, 8:11, 12:19, 17:13
**chance** [4] - 9:3, 9:9, 9:10, 23:2
**changes** [1] - 20:7
**chapter** [1] - 4:11
**charge** [1] - 15:17
**choices** [1] - 8:1
**Chris** [1] - 2:18
**CHRIS** [1] - 1:21
**Christopher** [1] - 1:11
**Circuit** [1] - 4:11
**civil** [1] - 2:3
**claims** [2] - 8:5, 16:1
**clear** [3] - 5:21, 14:19, 17:4
**client** [4] - 13:19, 14:9, 19:17, 21:24
**clients** [3] - 3:18, 16:23, 19:8
**close** [1] - 21:12
**closer** [1] - 8:21
**commitment** [1] - 4:12
**commitments** [1] - 3:19
**complaint** [1] - 11:17
**complex** [7] - 7:9, 7:11, 7:16, 7:19, 8:14, 9:1, 9:19
**complexity** [2] - 8:11, 8:20

**complicated** [1] - 8:8
**complication** [1] - 5:14
**comply** [1] - 22:15
**CompuCon** [1] - 12:18
**conceptually** [1] - 21:24
**concern** [1] - 13:17
**concerns** [1] - 19:3
**concise** [1] - 16:19
**conclude** [1] - 21:8
**conduct** [1] - 23:8
**conducted** [1] - 16:9
**confer** [5] - 10:12, 16:25, 19:8, 22:10, 22:19
**conference** [9] - 2:24, 3:2, 4:9, 6:17, 6:20, 7:1, 20:12, 21:5, 21:8
**CONFERENCE** [2] - 1:8, 1:10
**confirm** [1] - 19:9
**confirmation** [1] - 20:3
**confirms** [1] - 6:25
**consulting** [1] - 2:3
**CONSULTING** [1] - 1:3
**context** [1] - 12:14
**contract** [5] - 8:14, 8:15, 9:15, 15:23
**convert** [1] - 20:1
**converted** [1] - 19:10
**core** [3] - 15:20, 15:23, 16:15
**Corp** [1] - 2:3
**corporate** [3] - 8:16, 18:12, 18:13
**CORPORATION** [1] - 1:6
**correct** [2] - 12:21, 16:6
**counsel** [19] - 1:19, 2:7, 2:8, 2:9, 2:15, 2:16, 2:23, 3:18, 5:6, 6:15, 7:21, 9:8, 9:10, 14:24, 16:24, 18:6, 18:8, 21:4, 22:11
**Counsel** [1] - 1:25
**couple** [2] - 2:25, 3:8
**course** [6] - 6:10, 8:7, 11:13, 13:24, 17:7, 22:14
**court** [8] - 2:4, 6:5, 7:7, 7:8, 7:12, 7:25, 8:25, 9:22
**Court** [13] - 3:21, 6:4, 9:14, 9:23, 10:16, 13:21, 15:1, 16:10,

21:12, 22:14, 23:16, 23:25, 23:25
**COURT** [27] - 1:1, 2:1, 2:14, 2:22, 5:9, 5:15, 6:2, 6:22, 6:24, 10:2, 10:10, 11:10, 12:5, 12:16, 12:22, 13:12, 13:22, 14:23, 17:1, 17:24, 18:16, 18:19, 19:4, 19:20, 21:16, 22:4, 22:16
**Court's** [1] - 4:24
**courtroom** [1] - 7:2
**cox** [5] - 2:19, 2:20, 5:10, 6:3, 22:24
**COX** [5] - 1:24, 5:10, 6:1, 6:23, 22:13
**crazy** [2] - 3:13, 19:21
**credit** [1] - 22:7
**crucible** [1] - 15:19
**Crutcher** [1] - 2:20
**CRUTCHER** [1] - 1:23
**CSR** [1] - 23:24
**current** [1] - 4:2
**cut** [2] - 15:25, 17:10

**D**

**damages** [1] - 7:19
**date** [14] - 3:1, 3:2, 3:14, 3:24, 4:2, 4:13, 5:1, 6:14, 6:20, 6:23, 12:13, 20:10, 21:5, 21:20
**dates** [1] - 5:19
**Daubert** [1] - 20:25
**days** [16] - 4:7, 4:15, 4:16, 6:10, 7:13, 7:21, 8:21, 8:22, 9:4, 9:25, 10:1, 10:17, 15:1, 15:10, 15:14, 19:18
**deal** [1] - 18:9
**dealing** [1] - 11:15
**Deanna** [2] - 23:19, 23:24
**decides** [1] - 6:4
**Defendant** [2] - 1:7, 1:25
**defendant** [2] - 8:19, 15:8
**defendant's** [7] - 5:9, 6:22, 9:10, 10:11, 14:24, 15:6, 19:12
**Defendant's** [1] - 2:15
**defendants** [3] - 5:11, 10:9, 22:3
**defenses** [1] - 7:18
**DELAWARE** [1] - 1:2

**Delaware** [3] - 2:9, 2:16, 7:21
**deliberation** [1] - 23:4
**deliberations** [1] - 6:10
**detail** [1] - 12:8
**details** [3] - 12:2, 15:15, 15:22
**different** [8] - 7:18, 10:21, 11:2, 11:16, 13:4, 13:5, 13:6, 17:19
**discovery** [6] - 11:20, 12:14, 16:6, 16:8, 17:15
**discuss** [7] - 2:5, 2:24, 3:7, 4:6, 10:8, 16:23, 16:24
**discussed** [2] - 12:17, 21:19
**discussing** [3] - 2:25, 10:23, 11:5
**discussion** [3] - 10:3, 13:3, 13:16
**discussions** [4] - 10:6, 10:7, 18:4, 22:8
**dismiss** [1] - 11:17
**dismissed** [1] - 9:6
**dispute** [9] - 8:14, 8:15, 10:1, 11:8, 11:18, 12:4, 12:14, 16:5, 16:7
**disputes** [2] - 7:18, 11:12
**distilling** [1] - 15:19
**District** [1] - 23:25
**district** [1] - 4:9
**DISTRICT** [2] - 1:1, 1:2
**district's** [1] - 4:10
**documents** [1] - 8:2
**done** [2] - 9:24, 16:24
**double** [1] - 3:25
**double-booked** [1] - 3:25
**down** [2] - 12:11, 15:20
**Dunn** [1] - 2:19
**DUNN** [1] - 1:23

**E**

**easier** [2] - 14:12, 16:17
**Ed** [2] - 5:7, 9:12
**EDWARD** [1] - 1:17
**Edward** [2] - 2:11
**efficient** [1] - 14:9
**efforts** [1] - 21:19

**eight** [1] - 11:2
**either** [7] - 4:24, 5:4, 5:12, 5:17, 18:12, 20:19, 21:7
**elements** [1] - 16:1
**employees** [1] - 18:9
**end** [3] - 5:25, 10:10, 12:23
**engage** [1] - 15:24
**ensuring** [1] - 13:18
**entire** [3] - 3:5, 17:12, 17:14
**entirely** [1] - 11:9
**entirety** [2] - 5:14, 11:14
**entities** [1] - 8:16
**entitled** [1] - 9:20
**enumerated** [1] - 12:9
**enumerates** [1] - 12:14
**equivalent** [1] - 20:19
**ESQ** [8] - 1:14, 1:17, 1:17, 1:18, 1:21, 1:21, 1:24, 1:24
**essentially** [2] - 6:4, 6:6
**et** [4] - 8:3, 8:11, 12:19, 17:13
**Europe** [1] - 12:18
**event** [2] - 4:21, 6:12
**evidence** [3] - 8:1, 8:5, 13:18
**exact** [1] - 12:13
**example** [4] - 7:10, 10:17, 12:17, 19:17
**expect** [1] - 11:15
**expectation** [1] - 20:13
**expecting** [2] - 10:22, 10:24
**explain** [1] - 9:19
**explained** [1] - 9:17
**extent** [3] - 4:15, 15:2, 20:14

**F**

**face** [1] - 12:24
**faith** [1] - 15:24
**fall** [1] - 23:14
**familiar** [2] - 12:1, 12:10
**far** [2] - 16:2, 16:20
**FARNAN** [4] - 1:14, 1:14, 2:10, 21:10
**Farnan** [2] - 2:11, 21:17
**February** [2] - 3:12, 8:18

**federal** [4] - 4:10, 7:9, 7:11, 7:17
**Federal** [1] - 4:11
**fees** [1] - 9:20
**few** [4] - 15:16, 18:11, 19:18, 22:1
**fewer** [1] - 16:2
**filing** [1] - 12:14
**fine** [5] - 5:8, 6:1, 12:24, 14:22, 19:20
**finer** [1] - 17:1
**first** [9] - 2:2, 2:8, 3:8, 3:11, 3:19, 4:1, 4:23, 5:5, 12:3
**fit** [4] - 14:12, 14:20, 20:17, 20:20
**five** [11] - 5:18, 6:4, 6:5, 7:13, 7:21, 8:9, 8:17, 8:19, 9:25, 11:1, 15:14
**five-day** [5] - 6:4, 6:5, 8:9, 8:17, 8:19
**flexibility** [3] - 10:16, 13:21, 14:20
**focus** [2] - 4:20, 8:4
**folks** [1] - 23:14
**FOR** [1] - 1:2
**forced** [3] - 13:24, 14:2, 14:15
**foregoing** [1] - 23:22
**forgot** [1] - 21:18
**forward** [7] - 5:5, 6:13, 11:13, 16:25, 23:13, 23:15
**four** [3] - 5:18, 6:10, 20:17
**four-day** [1] - 20:17
**frame** [1] - 14:21
**frankly** [1] - 15:24
**Friday** [12] - 4:5, 4:8, 4:19, 5:2, 6:8, 6:9, 6:17, 6:19, 7:2, 14:12, 23:5
**frozen** [1] - 12:23
**fruitful** [1] - 23:10
**fully** [1] - 22:15
**fulsome** [1] - 22:8
**fundamental** [1] - 16:16
**future** [1] - 23:16

**G**

**gain** [1] - 13:20
**GameStop** [2] - 2:3, 2:18
**GAMESTOP** [1] - 1:6
**generally** [1] - 7:7
**generic** [1] - 17:25

**Gibson** [1] - 2:19
**GIBSON** [1] - 1:23
**given** [4] - 8:25, 9:25, 15:10, 18:1
**granted** [2] - 16:14, 20:18
**great** [2] - 2:22, 16:22
**greater** [1] - 10:16
**group** [1] - 2:3
**GROUP** [1] - 1:3
**guess** [5] - 4:23, 5:22, 10:21, 17:2, 21:25
**guys** [1] - 19:13

**H**

**handle** [2] - 2:21, 7:10
**handled** [1] - 18:15
**handles** [1] - 7:8
**happy** [2] - 16:24, 18:3
**hear** [11] - 3:9, 4:24, 5:3, 5:5, 10:11, 12:23, 17:5, 20:22, 22:17, 22:22, 22:25
**heard** [1] - 12:16
**hearing** [1] - 3:2
**hearings** [1] - 5:18
**heart** [1] - 8:15
**helpful** [3] - 7:23, 15:20, 19:5
**hereby** [1] - 23:20
**hesitant** [1] - 18:5
**hesitation** [1] - 19:16
**higher** [2] - 17:20, 18:24
**highlight** [1] - 8:2
**hold** [1] - 3:21
**Honor** [29] - 2:10, 2:17, 5:7, 6:1, 6:21, 6:23, 9:12, 10:7, 11:24, 12:3, 12:7, 12:10, 12:15, 13:10, 13:11, 13:13, 14:18, 15:7, 15:9, 16:22, 17:23, 18:18, 18:22, 19:16, 21:10, 21:13, 21:21, 22:9, 22:14
**Honor's** [2] - 2:20, 15:12
**Honorable** [1] - 1:10
**hopefully** [1] - 21:4
**hours** [15] - 6:6, 7:14, 8:22, 8:23, 9:4, 13:8, 14:3, 15:1, 17:2, 17:6, 17:16, 20:6, 20:13, 20:15, 20:18
**Houston** [1] - 2:18
**HOUSTON** [2] - 1:21, 2:17

**I**

**ideal** [1] - 4:5
**identified** [1] - 5:21
**identify** [1] - 2:7
**important** [4] - 7:23, 8:4, 8:5
**IN** [2] - 1:1, 1:2
**Inc** [1] - 2:3
**INC** [1] - 1:3
**inclination** [2] - 4:2, 4:25
**included** [1] - 7:5
**including** [1] - 3:1
**increases** [1] - 12:18
**indeed** [1] - 7:15
**indicated** [1] - 3:14
**info** [1] - 3:9
**infringement** [1] - 7:19
**initiative** [6] - 9:18, 9:21, 11:6, 11:9, 12:19, 16:11
**initiatives** [25] - 9:16, 9:17, 10:1, 10:21, 10:23, 10:25, 11:5, 11:8, 11:10, 11:16, 11:18, 11:23, 11:24, 12:1, 12:4, 12:11, 12:17, 13:4, 15:16, 15:22, 15:25, 16:4, 16:9, 17:18, 18:10
**instinct** [1] - 3:24
**intending** [1] - 6:18
**interest** [2] - 10:13, 22:20
**interests** [1] - 14:10
**introduce** [1] - 8:3
**invalidity** [1] - 7:19
**invoice** [1] - 16:8
**involve** [1] - 13:3
**involved** [8] - 8:21, 10:8, 10:19, 13:16, 13:17, 18:4, 18:8, 18:10
**involves** [1] - 9:16
**involving** [2] - 7:17, 7:18
**issue** [10] - 3:3, 5:22, 5:25, 10:24, 11:11, 16:15, 20:4, 21:10, 22:18, 23:11
**issues** [11] - 2:6, 3:7, 8:6, 8:10, 15:13, 15:21, 16:2, 16:16, 17:21, 18:14, 18:17
**itself** [1] - 3:2

**J**

**John** [1] - 15:7
**JOHN** [1] - 1:24
**john** [1] - 2:19
**joint** [4] - 10:13, 22:20, 23:6, 23:8
**jointly** [5] - 3:19, 19:9, 19:25, 22:17, 22:21
**judges** [1] - 7:15
**judgment** [9] - 9:6, 13:2, 16:13, 16:14, 17:4, 17:8, 17:9, 20:8, 20:25
**jumps** [1] - 10:22
**jury** [16] - 4:19, 6:8, 7:24, 9:17, 9:24, 9:25, 10:14, 10:18, 13:16, 13:25, 14:4, 14:5, 14:15, 15:18, 20:1, 20:6

**K**

**keeping** [2] - 5:21, 5:24
**key** [1] - 17:21
**kind** [4] - 14:11, 15:19, 17:5, 20:11
**kinds** [1] - 8:1
**knowing** [3] - 4:12, 19:17, 19:21
**knowledge** [1] - 18:25
**knows** [2] - 7:21, 19:12

**L**

**large** [2] - 7:8, 18:8
**largely** [1] - 11:12
**law** [1] - 4:9
**lead** [1] - 22:21
**least** [3] - 12:23, 19:2, 22:22
**legal** [4] - 3:3, 3:5, 6:9, 7:3
**less** [1] - 11:22
**letter** [6] - 3:11, 3:18, 8:18, 9:14, 23:6, 23:11
**letters** [1] - 11:18
**level** [5] - 17:20, 18:7, 18:9, 18:25, 19:1
**levels** [1] - 15:15
**light** [3] - 9:5, 15:12, 21:25
**likely** [2] - 16:18,

17:20
**line** [1] - 12:25
**litigation** [4] - 7:9, 7:11, 7:13, 7:17
**LLP** [2] - 1:14, 1:20
**lock** [1] - 4:25
**logistics** [1] - 14:11
**look** [5] - 14:8, 16:1, 23:10, 23:13, 23:15
**looking** [3] - 5:17, 9:7, 18:6
**lower** [1] - 18:9, 19:1
**lower-level** [2] - 18:9, 19:1

**M**

**main** [2] - 8:3, 14:6
**majority** [1] - 18:14
**manageable** [1] - 7:24
**matter** [2] - 2:2, 16:10
**matters** [1] - 7:16
**MCKENZIE** [1] - 1:16
**McKenzie** [1] - 2:13
**mean** [3] - 4:14, 8:22
**means** [2] - 6:6, 8:21
**mechanics** [1] - 10:18
**mediate** [1] - 21:20
**mediated** [1] - 21:13
**mediating** [1] - 22:20
**mediation** [6] - 21:11, 22:2, 22:6, 22:9, 22:21, 23:9
**meet** [3] - 10:12, 19:8, 22:19
**meet-and-confer** [3] - 10:12, 19:8, 22:19
**mention** [1] - 21:7
**mentioned** [2] - 10:3, 13:15
**mentioning** [1] - 5:17
**Michael** [1] - 2:12
**MICHAEL** [1] - 1:18
**Microsoft** [1] - 1:11
**might** [5] - 10:25, 15:4, 17:18, 22:20, 23:1
**minutia** [1] - 18:10
**Monday** [1] - 4:5
**months** [2] - 2:10, 2:17
**morning** [2] - 2:10, 2:17
**most** [6] - 8:4, 8:5, 11:5, 14:9, 17:21
**motion** [2] - 11:17, 21:1
**motions** [1] - 11:12
**move** [2] - 3:13, 5:12
**moved** [1] - 4:1

**MR** [23] - 2:10, 2:17, 5:7, 5:10, 6:1, 6:21, 6:23, 9:12, 10:6, 11:4, 11:21, 12:7, 12:21, 13:10, 15:7, 17:23, 18:3, 18:18, 18:22, 19:16, 21:10, 22:7, 22:13
**MS** [4] - 13:11, 13:13, 14:18, 21:21
**multiple** [2] - 7:17, 11:23

**N**

**names** [2] - 12:19, 12:20
**NANCY** [1] - 1:17
**Nancy** [3] - 2:12, 13:13, 21:21
**nature** [2] - 8:9, 14:25
**necessarily** [1] - 11:16
**necessary** [2] - 10:19, 15:13
**need** [6] - 4:15, 12:15, 13:6, 16:23, 20:3, 21:3
**needed** [3] - 4:19, 5:3, 8:13
**negotiations** [2] - 15:24, 18:4
**never** [1] - 14:4
**new** [1] - 4:12
**next** [4] - 4:17, 5:2, 7:3, 19:18
**nine** [1] - 11:2
**none** [1] - 9:5
**noted** [2] - 2:23, 7:4, 13:17
**nuances** [1] - 15:11
**number** [11] - 4:7, 9:4, 11:10, 12:13, 15:25, 16:4, 17:6, 17:11, 17:16, 17:17, 20:6
**Number** [1] - 2:4
**numbers** [1] - 7:18

**O**

**object** [1] - 18:24
**objection** [1] - 6:19
**objections** [1] - 5:4
**obviously** [4] - 3:4, 7:10, 10:14, 17:3
**October** [2] - 5:12, 5:13
**OF** [2] - 1:2, 1:8
**Official** [1] - 23:25

**often** [1] - 7:16
**one** [17] - 4:4, 6:3, 6:7, 8:11, 9:15, 10:11, 10:15, 10:21, 11:6, 12:10, 12:11, 13:11, 14:12, 18:7, 19:2, 21:10, 22:25
**opinions** [1] - 12:18
**opposed** [2] - 9:23, 10:14
**opposing** [1] - 18:5
**order** [11] - 4:23, 6:25, 7:4, 7:5, 13:20, 14:16, 20:5, 21:12, 23:1, 23:9, 23:11
**orders** [1] - 22:14
**organization** [1] - 15:15
**original** [1] - 7:5
**otherwise** [5] - 11:7, 12:24, 20:16, 20:24, 23:12
**overlap** [1] - 13:6
**overseeing** [1] - 4:9

**P**

**p.m** [3] - 6:18, 7:2
**participate** [2] - 22:2, 23:9
**participated** [1] - 18:12
**particular** [1] - 12:8
**parties** [36] - 2:6, 3:3, 3:11, 3:14, 3:21, 5:20, 7:4, 7:25, 8:4, 8:25, 9:3, 9:23, 10:4, 10:12, 11:14, 11:19, 12:12, 13:24, 14:2, 14:7, 14:13, 15:3, 15:24, 17:5, 17:16, 17:25, 19:7, 19:9, 19:24, 19:25, 20:12, 20:23, 21:20, 22:21, 23:2, 23:6
**parties'** [5] - 3:18, 8:18, 11:17, 14:5, 23:8
**partners** [1] - 18:7
**patent** [2] - 4:9, 7:11
**patents** [1] - 7:17
**people** [5] - 11:2, 15:17, 17:19, 18:11
**per** [2] - 6:6, 7:14
**period** [1] - 16:3
**permission** [1] - 2:20
**personal** [1] - 18:25
**perspective** [3] - 3:9, 15:18, 18:11

**pick** [3] - 4:16, 4:19, 14:15
**pieces** [1] - 7:11
**Plaintiff** [2] - 1:4, 1:19
**plaintiff** [5] - 2:11, 5:8, 9:13, 13:14, 21:22
**plaintiff's** [7] - 2:8, 5:5, 6:20, 9:8, 16:24, 19:12, 21:9
**plaintiffs** [1] - 8:20
**plan** [6] - 5:3, 5:4, 6:13, 6:15, 17:4, 19:6
**planning** [1] - 6:16
**plans** [1] - 21:13
**PO** [1] - 12:18
**point** [6] - 3:17, 4:25, 12:15, 13:11, 18:1, 22:9
**points** [1] - 10:20
**position** [2] - 13:9, 22:11
**positions** [2] - 9:20, 23:9
**possible** [1] - 5:11
**possibly** [1] - 6:9
**potentially** [1] - 4:18
**prelude** [1] - 9:2
**present** [4] - 6:7, 7:20, 21:1, 23:21
**presentation** [1] - 2:21
**presentations** [1] - 4:21
**pressure** [2] - 10:2, 19:21
**pressured** [1] - 14:15
**pretrial** [6] - 3:2, 6:17, 6:20, 7:1, 20:11, 21:5
**pretty** [1] - 13:1
**previously** [1] - 3:13
**price** [1] - 12:18
**priority** [1] - 4:1
**problem** [1] - 4:7
**procedurally** [1] - 21:7
**proceed** [2] - 9:23, 13:19
**proceeding** [1] - 14:22
**proceedings** [1] - 23:22
**process** [3] - 10:18, 17:8, 20:9
**productive** [1] - 22:10
**Professional** [2] - 23:19, 23:21
**provide** [1] - 20:2
**purposes** [1] - 16:6
**put** [7] - 4:3, 4:10, 6:24, 8:1, 13:18,

14:4, 18:2
**putting** [1] - 15:19

## Q

**questioned** [1] - 8:12
**questions** [2] - 3:10, 8:12

## R

**raise** [1] - 21:15
**raised** [1] - 10:5
**raising** [1] - 21:16
**rare** [3] - 7:12, 8:24
**reach** [1] - 21:3
**reading** [1] - 11:16
**ready** [1] - 19:2
**really** [5] - 2:24, 7:8, 15:20, 15:22, 18:23
**reasons** [1] - 14:20
**receive** [2] - 19:24, 23:11
**recency** [1] - 21:25
**record** [4] - 2:1, 2:7, 13:23, 14:14
**reference** [1] - 7:5
**regard** [2] - 5:22, 22:18
**regarding** [1] - 23:12
**regardless** [1] - 13:24
**Registered** [2] - 23:19, 23:20
**related** [3] - 2:5, 3:1, 4:7
**remember** [2] - 11:15, 12:13
**reported** [1] - 23:21
**Reporter** [3] - 23:20, 23:21, 23:25
**representative** [1] - 18:13
**representatives** [1] - 18:12
**requesting** [1] - 19:10
**requests** [1] - 16:8
**require** [3] - 8:8, 11:7, 16:17
**requirements** [1] - 7:22
**requires** [2] - 7:25, 8:4
**reschedule** [2] - 3:16, 21:1
**resolution** [1] - 22:22
**resolve** [1] - 11:13
**resolving** [1] - 20:25
**respect** [1] - 12:6
**response** [2] - 18:21,

20:4
**rollout** [1] - 12:19
**route** [1] - 10:16
**routinely** [1] - 7:20
**RPR** [1] - 23:24
**rule** [1] - 7:12

## S

**scale** [1] - 14:5
**schedule** [4] - 3:13, 6:18, 21:1, 21:4
**scheduled** [4] - 3:14, 5:18, 5:19, 20:1
**schedules** [1] - 19:17
**scheduling** [2] - 7:5, 14:11
**screen** [1] - 12:23
**see** [3] - 12:24, 18:24, 21:14
**selection** [1] - 6:8
**sense** [4] - 11:3, 14:17, 17:1, 17:10
**sent** [1] - 3:11
**separate** [2] - 9:16, 11:9
**separately** [1] - 12:10
**September** [11] - 3:21, 4:8, 5:1, 5:13, 5:20, 6:13, 6:17, 6:19, 7:1, 7:2, 19:22
**set** [4] - 6:19, 17:16, 20:5, 20:6
**setting** [1] - 3:2
**seven** [8] - 7:6, 7:7, 8:13, 8:21, 8:22, 10:1, 11:1, 20:19
**seven-day** [4] - 7:6, 7:7, 8:13, 20:19
**shorter** [2] - 16:3, 16:18
**shorthand** [1] - 23:22
**shown** [1] - 16:22
**side** [25] - 2:7, 2:8, 2:15, 3:9, 4:24, 5:5, 5:9, 5:22, 6:6, 6:20, 6:22, 7:14, 10:11, 14:21, 15:6, 18:7, 18:12, 18:13, 19:12, 19:13, 19:14, 20:7, 21:7, 21:9, 22:25
**sides** [2] - 14:14, 22:22
**significant** [3] - 7:8, 7:17, 17:10
**similar** [1] - 10:23
**SIMS** [5] - 1:17, 13:11, 13:13, 14:18, 21:21
**Sims** [5] - 2:12, 13:12,

13:13, 21:21, 22:7
**six** [1] - 11:1
**size** [1] - 8:10
**slice** [1] - 11:14
**somewhat** [1] - 9:19
**somewhere** [1] - 6:6
**sorry** [1] - 3:15
**sounds** [2] - 5:8, 19:11
**SOW** [1] - 12:9
**span** [1] - 20:17
**specifically** [1] - 12:1
**specifics** [2] - 13:7, 21:19
**spend** [1] - 15:10
**spring** [1] - 3:17
**stage** [4] - 3:4, 17:25, 19:21, 21:7
**stages** [1] - 11:17
**stand** [1] - 23:17
**stands** [1] - 3:6
**start** [7] - 2:8, 4:13, 5:1, 5:12, 6:14, 9:8
**started** [1] - 21:14
**starting** [1] - 3:22
**state** [1] - 4:2
**STATES** [1] - 1:1
**status** [3] - 2:5, 2:23, 21:8
**STATUS** [1] - 1:8, 1:10
**stay** [1] - 10:17
**Stenotype** [1] - 23:22
**still** [2] - 17:15, 23:1
**stipulated** [1] - 12:12
**stone** [1] - 4:3
**stood** [1] - 17:12
**stream** [3] - 11:23, 12:20
**streams** [3] - 11:22, 11:25, 12:9
**sub** [1] - 12:11
**subject** [1] - 17:8
**submission** [2] - 19:24, 22:23
**submit** [1] - 23:6
**sufficient** [1] - 19:11
**suggested** [1] - 22:19
**suggesting** [1] - 17:22
**Suite** [1] - 18:8
**summaries** [1] - 17:25
**summarize** [1] - 13:8
**summary** [9] - 9:6, 13:2, 16:13, 16:14, 17:3, 17:8, 17:9, 20:8, 20:25
**summer** [1] - 3:17

## T

**Teams** [1] - 1:11
**tech** [1] - 12:18
**ten** [2] - 11:2, 12:8
**terms** [4] - 4:7, 14:10, 14:25, 17:2
**testified** [1] - 18:14
**THE** [28] - 1:1, 1:2, 2:1, 2:14, 2:22, 5:9, 5:15, 6:2, 6:22, 6:24, 10:2, 10:10, 11:10, 12:5, 12:16, 12:22, 13:12, 13:22, 14:23, 17:1, 17:24, 18:16, 18:19, 19:4, 19:20, 21:16, 22:4, 22:16
**themselves** [1] - 2:7
**theoretically** [1] - 17:9
**thinking** [3] - 11:25, 17:11, 17:12
**thoughts** [2] - 5:4, 23:4
**thumb** [2] - 7:12, 14:4
**timed** [1] - 14:1
**today** [9] - 2:1, 2:5, 2:21, 10:10, 16:21, 19:24, 21:8, 23:5, 23:17
**today's** [1] - 2:23
**Totino** [9] - 2:12, 5:7, 9:12, 10:2, 10:15, 10:20, 12:25, 13:15, 18:20
**TOTINO** [9] - 1:17, 5:7, 6:21, 9:12, 10:6, 11:4, 11:21, 13:10, 18:22
**touch** [2] - 21:24, 23:16
**TRANSCRIPT** [1] - 1:8
**travel** [1] - 19:17
**TREY** [1] - 1:24
**Trey** [2] - 2:19, 5:10
**trial** [93] - 2:5, 3:1, 3:4, 3:5, 3:6, 3:14, 3:16, 3:20, 3:22, 3:25, 4:1, 4:7, 4:12, 4:14, 4:15, 4:20, 4:25, 5:19, 6:5, 6:10, 6:14, 6:25, 7:4, 7:6, 7:14, 8:9, 8:13, 8:17, 8:19, 8:23, 8:25, 9:5, 9:7, 9:22, 9:23, 9:24, 9:25, 10:4, 10:13, 10:14, 10:18, 11:15, 13:2, 13:8, 13:16, 13:20, 13:25, 14:1, 14:3, 14:4, 14:5, 14:7,

14:11, 14:15, 14:16, 14:22, 14:25, 15:4, 15:18, 15:19, 16:20, 17:2, 17:6, 17:16, 19:10, 19:22, 20:1, 20:2, 20:5, 20:6, 20:8, 20:10, 20:11, 20:14, 20:19, 20:20, 20:22, 21:12, 22:1, 22:18, 23:8, 23:12
**trial-related** [1] - 2:5
**trials** [2] - 7:7, 8:24
**tried** [4] - 7:20, 15:14, 16:3, 16:15
**trouble** [1] - 5:15
**true** [3] - 12:8, 14:10, 18:23
**try** [5] - 3:16, 7:15, 14:9, 17:7, 20:13
**trying** [1] - 11:19
**turn** [1] - 14:24
**two** [4] - 8:15, 19:19, 19:23, 22:17
**typically** [1] - 6:16

## U

**U.S** [1] - 23:25
**U.S.M.J** [1] - 1:11
**ultimately** [2] - 6:2, 15:16
**unavailable** [1] - 6:16
**unclear** [1] - 11:21
**under** [2] - 12:9, 19:21
**understandably** [1] - 3:18
**understood** [1] - 22:16
**UNITED** [1] - 1:1
**unless** [3] - 5:22, 6:15, 18:6
**unusual** [1] - 7:7
**up** [2] - 4:16, 6:24
**useful** [1] - 22:25
**utilize** [1] - 17:11

## V

**various** [5] - 11:12, 12:1, 15:16, 15:22, 17:18
**versus** [2] - 2:3, 13:16
**via** [1] - 1:11
**video** [1] - 21:8
**videoconference** [2] - 2:5, 15:3
**view** [2] - 15:21, 22:9
**views** [1] - 9:3

**vs** [1] - 1:5

## W

**Wade** [1] - 2:18
**WADE** [1] - 1:21
**wage** [1] - 18:5
**wait** [1] - 21:14
**wants** [2] - 12:7, 21:7
**Warner** [1] - 23:24
**warner** [1] - 23:19
**week** [13] - 3:20, 3:22, 3:25, 4:8, 4:12, 4:17, 5:2, 5:20, 5:24, 6:8, 14:12
**weekend** [1] - 23:15
**weeks** [5] - 5:16, 5:18, 19:19, 19:23, 22:17
**welcome** [1] - 2:14
**willing** [5] - 10:8, 13:19, 21:25, 22:2, 22:10
**wish** [3] - 15:2, 19:25, 23:15
**witnesses** [14] - 3:19, 5:23, 8:2, 8:10, 10:23, 11:4, 11:7, 13:5, 13:7, 15:14, 17:17, 17:20, 18:25, 19:2
**wondered** [1] - 8:12
**world** [1] - 4:5
**worth** [1] - 5:16
**wrinkle** [1] - 4:4
**writing** [1] - 16:12

## Y

**years** [2] - 7:15, 7:16
**yourselves** [2] - 19:14, 23:3